# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

——————————————————————————

| | |
|---|---|
| ONE COMMUNICATIONS CORP., as successor in interest to CTC Communications Group, Inc. and CTC Communications Acquisition Corp.,<br><br>                             Plaintiff,<br><br>                   vs.<br><br>JP MORGAN SBIC LLC, SIXTY WALL STREET SBIC FUND, L.P., THE MEGUNTICOOK FUND II, L.P., THE MEGUNTICOOK SIDE FUND, II, L.P., KEVIN O'HARE, JEFFERY KOESTER, MELLON INVESTOR SERVICES, LLC, as nominal defendant as escrow agent, and VERIZON NEW ENGLAND INC. as defendant on a declaratory judgment claim,<br><br>                             Defendants. | )<br>)<br>)<br>)<br>)<br>)    07-CV-3905 (LTS)<br>)<br>)    (Document Electronically Filed)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

——————————————————————————

### ANSWER AND COUNTERCLAIMS OF VERIZON NEW ENGLAND INC.

Verizon New England Inc. ("Verizon"), through its undersigned attorneys, hereby answers the Complaint of One Communications Corporation ("One Communications") and asserts counterclaims.  With respect to the allegations made in One Communications' complaint, Verizon states as follows:

1.      To the extent paragraph 1 makes factual allegations, such allegations do not concern Verizon, and therefore no answer is required.  Verizon admits that it is named as a defendant in Count VI of the Complaint, in which One Communications seeks a declaratory judgment.

### **The Parties**

2.      Admitted on information and belief.

3.      The allegations in paragraph 3 do not concern Verizon, and therefore no answer is required.

4.      The allegations in paragraph 4 do not concern Verizon, and therefore no answer is required.

5.      Paragraph 5 does not contain factual allegations, and therefore no answer is required.

6.      The allegations in paragraph 6 do not concern Verizon, and therefore no answer is required.

7.      The allegations in paragraph 7 do not concern Verizon, and therefore no answer is required.

8.      Paragraph 8 does not contain factual allegations, and therefore no answer is required.

9.      The allegations in paragraph 9 do not concern Verizon, and therefore no answer is required.

10.     The allegations in paragraph 10 do not concern Verizon, and therefore no answer is required.

11.     Verizon admits that it is named as a defendant in Count VI of the Complaint, in which One Communications seeks a declaratory judgment.  Verizon admits that it is a New York corporation with a principal place of business at 185 Franklin Street, Boston, Massachusetts 02110.

12.     The allegations in paragraph 12 do not concern Verizon, and therefore no answer is required.

13.     The allegations in paragraph 13 do not concern Verizon, and therefore no answer is required.

## Jurisdiction and Venue

14.     Admitted.

15.     Admitted.

## Regulatory Background

16.     Verizon admits that it is an incumbent local exchange carrier ("ILEC") and that Lightship Telecom LLC ("Lightship") is a competitive local exchange carrier ("CLEC"). Otherwise, paragraph 16 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

17.     Paragraph 17 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

*Reciprocal Compensation and Access Charges*

18.     Paragraph 18 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

19.     Paragraph 19 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

20.     Paragraph 20 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

21.     Paragraph 21 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

*Virtual NXX*

22.    Paragraph 22 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

23.    Sentences one through three of paragraph 23 make general allegations about typical practices in the telecommunications industry as to which no answer is required.  The fourth (and final) sentence of paragraph 23 states a legal conclusion as to which no answer is required.

24.    Sentences one through four of paragraph 24 make general allegations about typical practices in the telecommunications industry as to which no answer is required.  The fifth (and final) sentence of paragraph 24 states a legal conclusion as to which no answer is required.[1]

25.    Paragraph 25 states legal conclusions as to which no answer is required.

### Facts Common to All Counts

26.    Admitted on information and belief.

27.    Verizon admits, on information and belief, that Lightship became a CLEC in Maine, New Hampshire, Vermont, and Massachusetts in or about 1998.  Verizon lacks information sufficient to form a belief as to the remaining allegations in paragraph 27.

*The J.P. Morgan and Megunticook Entities*

28.    The allegations in paragraph 28 do not concern Verizon, and therefore no answer is required.

29.    The allegations in paragraph 29 do not concern Verizon, and therefore no answer is required.

---

[1] In footnote 1, referenced in paragraph 24, the Complaint alleges that Virtual NXX service is different from a "foreign exchange" arrangement.  Although Verizon admits that there are differences between these two arrangements, the differences do not affect intercarrier compensation.

30.     The allegations in paragraph 30 do not concern Verizon, and therefore no answer is required.

31.     The allegations in paragraph 31 do not concern Verizon, and therefore no answer is required.

32.     The allegations in paragraph 32 do not concern Verizon, and therefore no answer is required.

*The Operational Profile Changes*

33.     Admitted.[2]

34.     The allegations in paragraph 34 do not concern Verizon, and therefore no answer is required.

35.     Verizon admits, on information and belief, that Lightship entered into a contract with Great Works Internet ("GWI") – not "Great White Internet," as stated in the complaint. Verizon lacks information sufficient to form a belief as to the remaining allegations in paragraph 35.

36.     The allegations in paragraph 36 do not concern Verizon, and therefore no answer is required.

*Lightship's Deliberate Inflation of EBITDA*

37.     Admitted.

38.     Verizon lacks sufficient information to form a belief as to truth of the allegations in the first and second sentences of paragraph 38.  The remainder of paragraph 38 makes general allegations about typical practices in the telecommunications industry as to which no answer is required.

---

[2] Verizon admits the allegation in footnote 2, the reference to which appears in paragraph 33.

39.    Verizon lacks information sufficient to form a belief as to what Lightship "expected," but admits that on or around October 2004, Lightship's bills to Verizon for access charges increased significantly.

40.    Verizon lacks information sufficient to form a belief as to the specific conversations between individual Lightship employees alleged in paragraph 40.  Verizon admits, on information and belief, that Lightship failed to update its billing system to account for Verizon's actual, tariffed local calling areas as required by the Maine interconnection agreement and that, as a result, Lightship improperly billed Verizon access charges for calls that originated and terminated within the same local calling area, causing Lightship to collect more money from Verizon than Lightship was owed.[3]

41.    Verizon lacks information sufficient to form a belief as to the truth of the allegations in paragraph 41.

42.    Verizon lacks information sufficient to form a belief as to the specific knowledge of particular Lightship employees but admits, on information and belief, that Lightship's use of outdated local calling areas resulted in substantially more access charges and fewer reciprocal compensation billings from Lightship to Verizon than if the correct local calling areas had been used.  The allegations in the final sentence of paragraph 42 do not concern Verizon, and therefore no answer is required.

43.    Verizon lacks information sufficient to form a belief as to the specific knowledge of particular Lightship employees but admits, on information and belief, the allegation in the second sentence of paragraph 43.  The allegations in the final sentence of paragraph 43 do not concern Verizon, and therefore no answer is required.

---

[3] In response to the allegations in footnote 3, Verizon hereby incorporates the allegations in paragraph 17 of its Counterclaims as if set forth in full again.

44.      Verizon lacks information sufficient to form a belief as to the allegations in paragraph 44.

45.      Verizon lacks information sufficient to form a belief as to the allegations in the first and second sentences of paragraph 45.  The allegations in the third and fourth sentences of paragraph 45 do not concern Verizon, and therefore no answer is required.

46.      Verizon lacks information sufficient to form a belief as to the allegations in paragraph 46.

47.      Verizon lacks information sufficient to form a belief as to the truth of the allegations in paragraph 47.

48.      Verizon lacks information sufficient to form a belief as to the specific actions or knowledge of individual Lightship employees.  Verizon admits, on information and belief, that Lightship created smaller local calling areas for purposes of assessing intercarrier compensation in violation of the Maine interconnection agreement.

49.      In response to the allegations in paragraph 49, Verizon incorporates by reference its response to paragraph 48 as if fully set forth here.

50.      In response to the allegations in paragraph 50, Verizon incorporates by reference its response to paragraph 48 as if fully set forth here.  Further answering, Verizon admits that the effect of Lightship's use of smaller local calling areas was to inflate Lightship's access charges to Verizon, in violation of the Maine interconnection agreement, causing Lightship to collect more money from Verizon than Lightship was owed.

51.      In response to the allegations in paragraph 51, Verizon incorporates by reference its response to paragraph 48 as if fully set forth here.

52.     In response to the allegations in paragraph 52, Verizon incorporates by reference its response to paragraph 48 as if fully set forth here.  Further answering, Verizon admits that, in or around early January 2005, Verizon inquired about the large increases in access charges in Lightship's invoices and that the responses it received from Lightship concealed from Verizon the fact that the increases in Lightship's invoices actually resulted from Lightship's improper decision to retain the old, smaller, local calling areas in the wake of Verizon's expansion of its local calling areas.

53.     Admitted on information and belief.

54.     Paragraph 54 does not contain factual allegations, and therefore no answer is required.

*The Marketing of Lightship*

55.     The allegations in paragraph 55 do not concern Verizon, and therefore no answer is required.

56.     The allegations in paragraph 56 do not concern Verizon, and therefore no answer is required.

57.     The allegations in paragraph 57 do not concern Verizon, and therefore no answer is required.

58.     The allegations in paragraph 58 do not concern Verizon, and therefore no answer is required.

59.     Verizon admits that Lightship improperly billed Verizon for charges Lightship was not entitled to collect.  Otherwise, the allegations in paragraph 59 do not concern Verizon, and therefore no answer is required.

60.     The allegations in paragraph 60 do not concern Verizon, and therefore no answer is required.

61.     The allegations in paragraph 61 do not concern Verizon, and therefore no answer is required.

62.     The allegations in paragraph 62 do not concern Verizon, and therefore no answer is required.

63.     The allegations in paragraph 63 do not concern Verizon, and therefore no answer is required.

64.     The allegations in paragraph 64 do not concern Verizon, and therefore no answer is required.

65.     The allegations in paragraph 65 do not concern Verizon, and therefore no answer is required.

66.     Verizon admits that Lightship improperly levied access charges on Verizon based on improperly defined local calling areas and other improper billing practices.  Otherwise, the allegations in paragraph 66 do not concern Verizon, and therefore no answer is required.

67.     The allegations in paragraph 67 do not concern Verizon, and therefore no answer is required.

68.     The allegations in paragraph 68 do not concern Verizon, and therefore no answer is required.

69.     The allegations in paragraph 69 do not concern Verizon, and therefore no answer is required.

*Diligence and Misrepresentation*

70.     The allegations in paragraph 70 do not concern Verizon, and therefore no answer is required.

71.     The allegations in paragraph 71 do not concern Verizon, and therefore no answer is required.

72.     The allegations in paragraph 72 do not concern Verizon, and therefore no answer is required.

73.     The allegations in paragraph 73 do not concern Verizon, and therefore no answer is required.

74.     Verizon admits that, in or around early January 2005, Verizon inquired about the large increases in access charges Lightship levied on Verizon.  Verizon further admits that the responses it received from Lightship concealed from Verizon the fact that those increases in Lightship's invoices actually resulted from Lightship's improper decision to retain the old, smaller, local calling areas in the wake of Verizon's expansion of its local calling areas.  Verizon lacks information sufficient to form a belief as to the allegations of knowledge regarding particular Lightship officers and employees.

75.     The allegations in paragraph 75 do not concern Verizon, and therefore no answer is required.

76.     The allegations in paragraph 76 do not concern Verizon, and therefore no answer is required.

77.     Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money

from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 77 do not concern Verizon, and therefore no answer is required.

78.     Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 78 do not concern Verizon, and therefore no answer is required.

79.     Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 79 do not concern Verizon, and therefore no answer is required.

80.     The allegations in paragraph 80 do not concern Verizon, and therefore no answer is required.

81.     The allegations in paragraph 81 do not concern Verizon, and therefore no answer is required.

82.     The allegations in paragraph 82 do not concern Verizon, and therefore no answer is required.

83.     Verizon admits, on information and belief, that calls to GWI were the source of 90 percent of Lightship's Maine access revenues.  Otherwise, the allegations in paragraph 83 do not concern Verizon, and therefore no answer is required.

84.     The allegations in paragraph 84 do not concern Verizon, and therefore no answer is required.

85.     Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money

from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 85 do not concern Verizon, and therefore no answer is required.

86.    The allegations in paragraph 86 do not concern Verizon, and therefore no answer is required.

87.    Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money from Verizon than Lightship was owed and that such billing practices were in breach of the interconnection agreements between Verizon and Lightship.  Otherwise, the allegations in paragraph 87 do not concern Verizon, and therefore no answer is required.

88.    The allegations in paragraph 88 do not concern Verizon, and therefore no answer is required.

89.    The allegations in paragraph 89 do not concern Verizon, and therefore no answer is required.

*The Merger Agreement*

90.    The allegations in paragraph 90 do not concern Verizon, and therefore no answer is required.

91.    The allegations in paragraph 91 do not concern Verizon, and therefore no answer is required.

92.    The allegations in paragraph 92 do not concern Verizon, and therefore no answer is required.

93.    The allegations in paragraph 93 do not concern Verizon, and therefore no answer is required.

94.      The allegations in paragraph 94 do not concern Verizon, and therefore no answer is required.

95.      The allegations in paragraph 95 do not concern Verizon, and therefore no answer is required.

96.      Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 96 do not concern Verizon, and therefore no answer is required.

97.      Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 97 do not concern Verizon, and therefore no answer is required.

98.      Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 98 do not concern Verizon, and therefore no answer is required.

99.      The allegations in paragraph 99 do not concern Verizon, and therefore no answer is required.

100.     The allegations in paragraph 100 do not concern Verizon, and therefore no answer is required.

101.     Verizon admits, on information and belief, that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" caused Lightship to collect more money

from Verizon than Lightship was owed.  Otherwise, the allegations in paragraph 101 do not concern Verizon, and therefore no answer is required.

102.    The allegations in paragraph 102 do not concern Verizon, and therefore no answer is required.

103.    The allegations in paragraph 103 do not concern Verizon, and therefore no answer is required.

104.    The allegations in paragraph 104 do not concern Verizon, and therefore no answer is required.

105.    The allegations in paragraph 105 do not concern Verizon, and therefore no answer is required.

106.    The allegations in paragraph 106 do not concern Verizon, and therefore no answer is required.

107.    The allegations in paragraph 107 do not concern Verizon, and therefore no answer is required.

## COUNT I

Verizon is not a party to Count I, and therefore no answer is required as to paragraphs 108-117.

## COUNT II

Verizon is not a party to Count II, and therefore no answer is required as to paragraphs 118-121.

## COUNT III

Verizon is not a party to Count III, and therefore no answer is required as to paragraphs 122-130.

## COUNT IV

Verizon is not a party to Count IV, and therefore no answer is required as to paragraphs 131-135.

## COUNT V

Verizon is not a party to Count V, and therefore no answer is required as to paragraphs 136-142.

## COUNT VI

143.    Paragraph 143 does not contain factual allegations, and therefore no answer is required.

144.    Verizon admits that Count VI seeks a declaratory judgment pursuant to 28 U.S.C. § 2201.

145.    Verizon admits that the improper billing practices defined as the "Undisclosed Lightship Billing Practices" occurred and that as a result of those practices, Lightship collected substantially more money from Verizon than Lightship was owed.  Further answering, Verizon admits that a controversy now exists as to whether (and to what extent) those payments should be refunded, and if so, whether interest and penalties are due thereon.

146.    Paragraph 146 does not contain factual allegations, and therefore no answer is required.

WHEREFORE, with respect to Count VI, Verizon respectfully requests that the Court (a) declare that Plaintiff owes Verizon full refunds for those amounts Verizon overpaid as a result of the improper billing practices alleged in the Complaint; (b) enter judgment in Verizon's favor in an amount to be determined at trial, with interest, fees, costs, and such other and further relief as the nature of the case may require.

## Reservation Of Rights

Verizon hereby reserves the right, upon completion of its investigation and discovery, to file such additional defenses, counterclaims, cross-claims and/or additional defendant complaints as may be appropriate.

## COUNTERCLAIMS

1.      Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Verizon hereby asserts the following counterclaims against the Plaintiff One Communications.

## Introduction

2.      This action arises out of Lightship's fraud, deceit, and other misconduct. Although the plaintiff in this case is One Communications, the successor to and purchaser of Lightship, the party directly targeted and harmed by Lightship's unlawful actions is Verizon, which was defrauded into paying Lightship substantial sums that Verizon did not owe and was prevented from billing to, and collecting from, Lightship substantial sums that Lightship did owe.

3.      Since at least 2004, Lightship engaged in a pattern of fraudulent billing practices in Maine, using improperly defined local calling areas knowingly to bill Verizon at higher, access charge rates for calls between customers in the same local calling area, which should have been billed, under the parties' contract, at the much lower rates that apply to local calls.

4.      Despite Verizon's inquiries, at no time did Lightship reveal that the large increases in Lightship's bills to Verizon were the result of its use of improperly defined local calling areas.  To the contrary, in its responses to Verizon's inquiries in or around January 2005, Lightship purposefully concealed this fact.  Lightship also did not correct the improperly defined

local calling areas and continued to engage in its fraudulent billing scheme, collecting significantly more money from Verizon than it was owed.

5.     At or about the same time, Lightship was engaged in other improper billing practices in violation of its contracts with Verizon in Maine, Massachusetts, New Hampshire, and Vermont, which have resulted in significant overpayments by Verizon.

6.     Verizon is therefore entitled to refunds of amounts paid to One Communications, as successor to Lightship, and damages for amounts One Communications' practices prevented Verizon from billing and collecting from One Communications (and Lightship).

### Jurisdiction

7.     This Court has subject matter jurisdiction over Verizon's counterclaims under 28 U.S.C. § 1331 because these claims arise under federal law.  This Court also has supplemental jurisdiction over Verizon's counterclaims under 28 U.S.C. § 1367.

### Background

8.     Pursuant to the Telecommunications Act of 1996, Verizon, an ILEC, has entered into interconnection agreements with One Communications, as successor to Lightship,[4] a CLEC, in Maine, Massachusetts, New Hampshire, Rhode Island, and Vermont ("the interconnection agreements").  These agreements govern the exchange of communications traffic between Verizon's and One Communications' network.

9.     The interconnection agreements provide that the amount of compensation (if any) owed by one carrier to another for any given call depends upon whether the carrier originated, terminated (or delivered), or merely transited the call, and whether the call originated and terminated within the same local calling area, as approved by the relevant state regulators and

---

[4] For ease of exposition, further references to "One Communications" should be understood to mean One Communications, including as successor to Lightship.

published in Verizon's filed tariffs. Four specific types of traffic are relevant to this dispute: (1) reciprocal compensation traffic; (2) traffic bound for an Internet Service Provider ("ISP") physically located in the same local calling area as the person placing the call to access the Internet through that ISP ("ISP-bound traffic"); (3) toll, or access, traffic; and (4) transit traffic.

10.    *Reciprocal Compensation and ISP-Bound Traffic*.  The interconnection agreements provide that reciprocal compensation is due for local voice calls, which are calls that originate and terminate within the same local service area, as defined by the respective state regulatory authorities and by Verizon's published tariffs.  For such calls, and assuming two or more local telephone companies are involved in carrying the call, reciprocal compensation is paid by the carrier whose customer initiates (or originates) the call, to the carrier who delivers, or terminates, the call to its customer.

11.    The Federal Communications Commission has established a different compensation regime applicable to dial-up calls to access the Internet through an ISP that is physically located in the same local calling area as the person placing the call.  For such calls, and assuming two or more local telephone companies are involved in carrying the call, the carrier that originates the call pays the carrier to which the call is delivered – and which then delivers the call to the ISP – a per-minute rate that is currently capped at $0.0007 per minute, but may be as low as $0.

12.    *Toll Traffic*.  For calls that originate in one local calling area and terminate in another, including calls delivered to an ISP in another local calling area – referred to in the interconnection agreements as "toll" calls (including traditional "long distance" calls) – the interconnection agreements specify a different compensation regime.  For toll calls, access charges must be paid, typically by an interexchange carrier ("IXC"), to both the originating and

the terminating Local Exchange Carriers ("LECs").  The access charge rates are specified in carriers' state and federal tariffs, for calls that remain within state boundaries or that cross them, respectively.  Per-minute access rates are significantly higher than reciprocal compensation or ISP-bound per-minute rates.

13.    The IXC may be affiliated with (or be the same company as) one of the local telephone companies involved in carrying the call.  For example, Verizon provides both local telephone service and certain intrastate toll services, known as interLATA services.  Therefore, when a Verizon customer places a call to a One Communications customer that is actually located in a different local calling area, Verizon (as the IXC) will pay terminating access charges to Lightship.

14.    For calling-party-paid, toll-free calls – such as 1-800 calls and Virtual NXX calls – the flow of access charge payments is reversed.  Thus, if One Communications provides its customer with a 1-800 or Virtual NXX number, and a Verizon customer places a call to that customer, which normally would be a toll call, Verizon is entitled to payment of access charges by One Communications.

15.    *Transit Traffic*.  The parties also exchange traffic that has been originated, or is to be terminated, by third party carriers (such as wireless carriers or IXCs).  This occurs primarily because many carriers do not interconnect directly with CLECs, such as One Communications; rather, carriers will interconnect with the ILEC, which will "transit" the calls to the CLEC.  That is because only ILECs have the legal obligation to interconnect directly with other carriers.  For example, when a third party carrier's customer places a call to a One Communications customer, the third party carrier may deliver the call to Verizon, which will in turn deliver the call to One

Communications for delivery to its customer.  In that instance, Verizon is not financially responsible for the call; instead, One Communications must bill the third party carrier directly.

16.    On information and belief, One Communications has engaged in three improper billing practices, in violation of the parties' interconnection agreements.  First, in Maine and Vermont, One Communications has, for a period of time beginning at least in January 2004, billed Verizon according to incorrect, smaller local calling areas than those set out in Verizon's filed tariffs.  This practice has resulted in Verizon paying access charges for calls that in fact were between customers located in the same local calling area; these calls should have been billed at the much lower reciprocal compensation or ISP-bound per-minute rates.  Second, One Communications has used Virtual NXX service to disguise toll calls as local, wrongly billing Verizon for reciprocal compensation or ISP-bound payments for these calls and not paying Verizon the access charges that One Communications actually owes for such calls.  Third, One Communications has improperly billed Verizon for transit traffic, for which Verizon is not financially responsible.  These improper billing practices have resulted in significant overpayments by Verizon, and Verizon is accordingly entitled to refunds of amounts paid to One Communications and damages for amounts One Communications' practices prevented Verizon from billing and collecting from One Communications.

## Local Calling Areas

17.    The Maine and Vermont interconnection agreements provide that Verizon's local calling areas, as defined in Verizon's filed state tariffs, must be used in determining whether traffic is local or toll for purposes of intercarrier compensation.  The contours of these local calling areas can change from time to time, and such changes are reflected in amendments to Verizon's state tariffs.

18.    In particular, as a result of lengthy regulatory proceedings before the Maine

Public Utility Commission ("Maine PUC"), Verizon expanded its local calling areas in Maine

effective December 15, 2003.  Specifically, the Maine PUC proceedings required Verizon to

establish two sets of extended local calling areas – one mandatory, and the other optional, or

"Premium."  Under this arrangement, local customers can choose either the "Economy" plan

(*i.e.*, the mandatory extended local calling areas) or, for an additional fee, the Premium plan (*i.e.*,

the larger, optional local calling areas).  The Maine interconnection agreement provides,

however, that regardless of which plan individual retail customers select, the mandatory

Economy extended local calling areas, as defined by Verizon, apply for purposes of determining

the appropriate level of intercarrier compensation.

19.    On information and belief, when Verizon amended its tariff to extend its

mandatory local calling areas at the insistence of the Maine PUC, One Communications failed to

update its billing systems accordingly.  Instead, One Communications continued to bill Verizon

based on the old, smaller local calling areas.  This caused One Communications to bill Verizon at

the much higher access rates (instead of reciprocal compensation or ISP-bound rates) for calls

that originated and terminated within the same extended local calling area, but that would have

originated and terminated in different local calling areas prior to the implementation of such

extended local calling areas.

20.    On information and belief, when One Communications became aware of this

problem, rather than correct it, One Communications made its already-improper local calling

areas even smaller and did not correct other errors in its systems that caused local calls to be

billed to Verizon as if they were toll calls.  This resulted in additional calls that One

Communications billed to Verizon as toll when in fact the calls originated and terminated in the

same local calling area, and therefore should have been subject to reciprocal compensation or ISP-bound payments.

21.    When Verizon inquired, in or around January 2005, about the increased access charges One Communications had levied on Verizon, One Communications, through its employee Darren Kreitler, provided an incomplete, inaccurate, and misleading response that prevented Verizon from discovering that One Communications was knowingly using improperly small local calling areas to determine when to bill access charges to Verizon rather than reciprocal compensation.

22.    On information and belief, One Communications also used improperly small local calling areas for billing calls originated and terminated in Vermont, again with the result that it billed Verizon (and Verizon paid) access charges for calls that, in fact, were local calls.

23.    One Communications is liable to Verizon for the amounts Verizon has overpaid as a result of One Communications' improper billing of access charges for local traffic.

## VNXX Service

24.    On information and belief, One Communications has operated Virtual NXX, or VNXX, service by assigning its subscribers telephone numbers containing an NXX that does not correspond to the subscriber's actual geographic location.

25.    "NXX" refers to the middle three digits in a 10-digit telephone number, expressed in the format (NPA) NXX-XXXX.  For example, in the number for the United States Courthouse in Manhattan, (212) 805-0136, the NXX is 805.  The block of 10,000 phone numbers in a given area code (the NPA) with the same NXX is referred to as an "NXX code."  Each NXX code – and all of the numbers within that code – are associated with a particular local calling area (*e.g.*, 212-805 is one of the many NXX codes associated with Manhattan).  Thus, the NXX code for

any particular phone number has historically served as a highly accurate proxy for identifying the physical location where a call originated and terminated, and telephone companies, Verizon included, have accordingly used NXX codes for purposes of determining whether calls are local or toll.

26.    A Virtual NXX or VNXX telephone number is one where the NXX code is associated with one local calling area, but the customer is physically located in a different local calling area – sometimes even in a different state.  Normally a CLEC's VNXX customer is located in or nearby the building that houses the CLEC's local telephone equipment, known as a switch.  Thus, a One Communications customer could be located at or near One Communications' switch in Portland, Maine, yet be assigned a telephone number with an NXX associated with Bangor, Maine.  Calls from Bangor to Portland are toll calls, as the two cities are located in different local calling areas.  However, as a result of the VNXX number, a Verizon customer in Bangor could call the One Communications customer in Portland by dialing what appears to be a "local," Bangor telephone number.  Therefore, Verizon's customer would not incur toll charges for this call, even though it still would be transported to Portland.  One Communications would then charge Verizon reciprocal compensation (or ISP-bound payments) for that call, even though One Communications, as the provider of a toll-free service, should actually owe Verizon access charges for that call.

27.    CLECs often provide VNXX service to ISPs, which are assigned not merely one VNXX telephone number, but dozens of them – normally one for every local calling area in a state (or multiple states).  As a result, VNXX service can be used to provide the functional equivalent of a 1-800 service, as it allows a business (the CLEC's customer) to offer to its own customers the ability to call the business without incurring a toll charge.  Unlike VNXX calls –

which cannot be identified by the originating carrier because only the VNXX provider knows where its customers are actually located – telephone systems are programmed to recognize 1-800 calls as toll calls and bill them accordingly.  Therefore, by using VNXX arrangements, a CLEC can evade paying applicable access charges, collect payments by pretending the calls are local calls, and charge its customer for this service.

28.    On information and belief, One Communications has provided VNXX service in Maine, Massachusetts, Vermont, and New Hampshire.  On information and belief, One Communications has billed Verizon for those calls as if they were actually delivered to customers in the same local calling area as the calling party.

29.    Under the terms of the interconnection agreements, however, VNXX calls are toll traffic, and not local traffic, as where the actual originating and terminating points of the complete end-to-end communications are in different local calling areas.  Therefore, Verizon does not owe reciprocal compensation to One Communications for VNXX calls originated by Verizon's customers; instead, Verizon is entitled to originating access charges for such calls.

30.    One Communications has a duty under the respective interconnection agreements to provide Verizon with the information necessary to determine whether the traffic it receives from Verizon is local (originating and terminating within the same local calling area) or toll (terminating outside the originating local calling area).

31.    One Communications has therefore breached its interconnection agreements and is liable to Verizon for the sum of reciprocal compensation Verizon has paid for VNXX calls placed by Verizon customers to One Communications' VNXX customers.  In addition, One Communications is liable to Verizon for access charges that were due on these calls.

**Transit Traffic**

32.     Although Congress has required all telecommunications carriers to interconnect their networks with the networks of all other telecommunications carriers – so that calls may be completed between customers of different carriers – Congress has permitted most carriers, including CLECs such as One Communications, to interconnect *indirectly*.  Thus, a CLEC may be directly connected to the ILEC in its area – and the ILEC has a legal obligation to enter into such a direct connection – but then relies on the ILEC to route that CLEC's traffic to and from other carriers' networks.  For example, when a customer of another local telephone company (say, Mid-Maine Communications) calls a One Communications customer, Mid-Maine will deliver that call to Verizon if it has no direct connection to One Communications' network, and Verizon in turn transits the call to One Communications for delivery to its customer.  This type of traffic is called "transit traffic."  The interconnection agreements provide that Verizon is not financially responsible for transit traffic.  Rather, One Communications must bill the third party carrier (in our example, Mid-Maine) directly.

33.     On information and belief, One Communications has wrongly billed Verizon for transit traffic, in breach of the parties' interconnection agreements.  One Communications is liable to Verizon for the amounts Verizon has overpaid based on One Communications' improper billing of transit traffic to Verizon.

**COUNT ONE**

**(Breach of Contract – Local Calling Areas)**

34.     Verizon hereby incorporates herein by reference each and every allegation contained in Paragraphs 1 through 33 of its Counterclaims as though set forth again in full.

35.     In violation of the Maine and Vermont interconnection agreements, One Communications has, on information and belief, generated its bills to Verizon using improper local calling areas smaller than those defined by Verizon, causing Verizon to pay access charges for calls that in fact originated and terminated within the same local calling area.

36.     Verizon has been damaged by One Communications' breach of contract because Verizon has unknowingly paid many of the improper bills from One Communications.

37.     Verizon has been damaged as a direct and proximate result of One Communications' breach of contract in an amount to be determined at trial.

## COUNT TWO

### (Fraud)

38.     Verizon hereby incorporates herein by reference each and every allegation contained in Paragraphs 1 through 33 of its Counterclaims as though set forth again in full.

39.     In or around January 2005, in response to Verizon's inquiries about the significant increases in One Communications' invoices to Verizon, Darren Kreitler, an employee of One Communications, provided Verizon with an incomplete, inaccurate, and misleading response that prevented Verizon from discovering that One Communications was knowingly using improperly small local calling areas to determine when to bill access charges to Verizon rather than reciprocal compensation.  On information and belief, and as alleged by One Communications in its complaint, Kreitler knowingly made these false and misleading representations and did so on the instruction of his superiors.

40.     In addition, One Communications, through its bills, knowingly represented to Verizon that it received toll calls — for which it billed Verizon access charges — when One Communications knew that those calls were properly rated as local calls and subject to the much

lower rates that apply to such calls.  On information and belief, and as alleged by One Communications in its complaint, One Communications knowingly engaged in this fraudulent practice and purposefully took no steps to correct the rating tables it used to reflect the local calling areas it should have been using to generate its bills to Verizon.

41.     Verizon relied on the fraudulent representations by Kreitler and in One Communications' invoices and paid the amounts invoiced to One Communications in reliance on those representations that the calls in question were actually toll calls and not local calls.

42.     Verizon has been damaged as a direct and proximate result of One Communications' fraudulent representations in an amount to be determined at trial.  Specifically, Verizon has paid access charges to One Communications that it was not obligated to pay.

<u>**COUNT THREE**</u>

<u>**(Breach of Contract – VNXX)**</u>

43.     Verizon hereby incorporates herein by reference each and every allegation contained in Paragraphs 1 through 33 of its Counterclaims as though set forth again in full.

44.     Under the interconnection agreements entered into between Verizon and One Communications, Verizon is entitled to collect access charges for calls placed by Verizon customers to One Communications' VNXX customers.  In addition, Verizon is not required to pay reciprocal compensation to One Communications for such calls.

45.     On information and belief, One Communications has breached the interconnection agreements by wrongfully charging and collecting reciprocal compensation from Verizon for VNXX calls.

46.     On information and belief, One Communications has further breached the interconnection agreements by wrongfully failing to pay access charges to Verizon according to

Verizon's applicable tariffs for VNXX calls, as required by Verizon's filed federal and state tariffs.

47.    Verizon has been damaged as a direct and proximate result of One Communications' breach of contract in an amount to be determined at trial.

## COUNT FOUR

### (Breach of Contract – Transit Traffic)

48.    Verizon hereby incorporates herein by reference each and every allegation contained in Paragraphs 1 through 33 of its Counterclaims as though set forth again in full.

49.    Under the parties' interconnection agreements, Verizon is not financially responsible for traffic originated by third party carriers that transits Verizon's network before terminating on One Communications' network.

50.    On information and belief, One Communications has wrongly billed Verizon for transit traffic, in violation of the parties' interconnection agreements.

51.    Verizon has been damaged because Verizon has unknowingly paid many of the improper bills from One Communications.

52.    Verizon has been damaged as a direct and proximate result of One Communications' breach of contract in an amount to be determined at trial.

### Jury Trial Demand

53.    Verizon hereby demands a jury trial on its Counterclaims.

### Prayer For Relief

WHEREFORE, Verizon respectfully requests that this Honorable Court enter judgment in its favor and against One Communications in an amount to be determined at trial for those sums One Communications has wrongfully charged and collected from Verizon; and

WHEREFORE, Verizon respectfully requests that this Honorable Court enter judgment in its favor and against One Communications for interest, fees, costs, and such other and further relief as the nature of the case may require.

Respectfully submitted,

By:      /s/ William David Sarratt
Scott H. Angstreich
William David Sarratt (WS-1439)[*]
KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036
(202) 326-7900

*Attorneys for Verizon New England Inc.*

September 17, 2007

---

[*] Admitted only in New York; supervision by lawyers of the firm.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent *via* first-class mail to those indicated as non-registered participants on September 17, 2007.


John Michael Teitler
Nicholas W. Lobenthal
Teitler & Teitler
1114 Avenue of the Americas
New York, NY 10036


Mark S. Resnick
The Resnick Law Group, P.C
Old City Hall
45 School Street
Boston, MA 02108


Joseph M. Pastore, III
Brooks & Associates, LLP
1206 Pacific Street, Suite 1a
Brooklyn, NY 11216


Nicholas John Panarella
Kelley Drye & Warren, LLP (NY)
101 Park Avenue
New York, NY 10178


Paul E. Summit
Ira Gross, Esq.
Sullivan & Worcester
One Post Office Square
Boston, MA 02109


David B. Mack
O'Connor, Carnathan and Mack LLC
8 New England Executive Park
Suite 310
Burlington, MA 01803


Jayne S. Robinson
Robinson & McDonald LLP
61 Broadway
New York, NY 10006


  /s/ William David Sarratt
William David Sarratt