AMENDMENT NO. 1

to the

INTERCONNECTION AGREEMENT

between

VERIZON NEW ENGLAND INC.
d/b/a
VERIZON MAINE

and

LIGHTSHIP TELECOM, LLC

THIS AMENDMENT No. 1 (this "Amendment") is made this 25th day of January 2002 (the "Effective Date"), by and between Verizon New England Inc., d/b/a Verizon Maine, f/k/a New England Telephone and Telegraph Company, d/b/a Bell Atlantic - Maine, a New York corporation ("Verizon") and Lightship Telecom, LLC, a Delaware corporation ("Lightship"). (Verizon and Lightship may be hereinafter referred to, each individually, as a "Party" and, collectively, as the "Parties"). This Amendment covers services in State of Maine (the "State").

<u>WITNESSETH</u>:

WHEREAS, pursuant to an adoption letter dated January 16, 2002 (the "Adoption Letter"), Lightship adopted into the State of Maine, the interconnection agreement between Level 3 Communications, LLC and Verizon New York Inc., f/k/a New York Telephone Company in the State of New York (the "Terms"); and

WHEREAS, pursuant to paragraph 32 of the BA/GTE Merger Conditions, reciprocal compensation arrangements are not adoptable from one state jurisdiction to another state jurisdiction;

NOW, THEREFORE, in consideration of the mutual promises, provisions and covenants herein contained, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.  The Parties agree that the terms and conditions set forth in Attachment 1 and the rates in Appendix A, attached hereto and made a part of this Amendment, shall exclusively govern the Parties' provisions of reciprocal compensation arrangements and that any rates, terms and/or conditions related to reciprocal compensation that are contained in the Terms shall have no application to this Amendment.

2. Attached hereto as Appendix B is a glossary of terms for use only in connection with this Amendment ("Amendment Glossary"). When used in this Amendment (including its Attachment and Appendices), the terms listed in the Amendment Glossary shall have the meanings stated therein. The terms listed in the Amendment Glossary shall have no application to non-reciprocal compensation provisions contained in the Terms.

3. Counterparts. This Amendment may be executed in one or more counterparts, each of which when so executed and delivered shall be an original and all of which together shall constitute one and the same instrument.

4. Captions. The Parties acknowledge that the captions in this Amendment have been inserted solely for convenience of reference and in no way define or limit the scope or substance of any term or provision of this Amendment.

5. Scope of this Amendment. Except as, and to the extent set forth in Section 1 of this Amendment, the terms and provisions of the Terms shall remain in full force and effect after Effective Date.

IN WITNESS WHEREOF, the Parties hereto have caused this Amendment to be duly executed and shall be effective upon the Effective Date.

LIGHTSHIP TELECOM, LLC

By: _____
Printed: Kevin McHara
Title: President + CEO

VERIZON NEW ENGLAND INC.,
D/B/A VERIZON MAINE

By: _____
Printed: Jeffrey A. Masoner
Title: Vice-President— Interconnection Services Policy & Planning

Attachment 1 - Reciprocal Compensation

1. Reciprocal Compensation Arrangements Pursuant to Section 251(b)(5) of the Act.

   1.1. Reciprocal Compensation.

   1.1.1. The Parties shall compensate each other for the transport and termination of Reciprocal Compensation Traffic delivered to the terminating Party in accordance with Section 251(b)(5) of the Act at the rates stated in Appendix A to this Amendment. These rates are to be applied at the Lightship-IP for traffic delivered by Verizon for termination by Lightship, and at the Verizon-IP for traffic delivered by Lightship for termination by Verizon. Except as expressly specified in this Agreement, no additional charges shall apply for the termination from the IP to the Customer of Reciprocal Compensation Traffic delivered to the Verizon-IP by Lightship or the Lightship-IP by Verizon. When such Reciprocal Compensation Traffic is delivered over the same trunks as Toll Traffic, any port or transport or other applicable access charges related to the delivery of Toll Traffic from the IP to an end user shall be prorated to be applied only to the Toll Traffic. The designation of traffic as Reciprocal Compensation Traffic for purposes of Reciprocal Compensation shall be based on the actual originating and terminating points of the complete end-to-end communication.

   1.2. Traffic Not Subject to Reciprocal Compensation.

   1.2.1. Reciprocal Compensation shall not apply to interstate or intrastate Exchange Access, Information Access, or exchange services for Exchange Access or Information Access.

   1.2.2. Reciprocal Compensation shall not apply to Internet Traffic.

   1.2.2.1. The determination of whether traffic is Reciprocal Compensation Traffic or Internet Traffic shall be performed in accordance with Paragraphs 8 and 79, and other applicable provisions, of the FCC Internet Order (including, but not limited to, in accordance with the rebuttable presumption established by the FCC Internet Order that traffic delivered to a carrier that exceeds a 3:1 ratio of terminating to originating traffic is Internet Traffic, and in accordance with the process established by

      the FCC Internet Order for rebutting such presumption before the Commission).

  1.2.3. Reciprocal Compensation shall not apply to Toll Traffic, including, but not limited to, calls originated on a 1+ presubscription basis, or on a casual dialed (10XXX/101XXXX) basis.

  1.2.4. Reciprocal Compensation shall not apply to Optional Extended Local Calling Area Traffic.

  1.2.5. Reciprocal Compensation shall not apply to special access, private line, or any other traffic that is not switched by the terminating Party.

  1.2.6. Reciprocal Compensation shall not apply to Tandem Transit Traffic.

  1.2.7. Reciprocal Compensation shall not apply to Voice Information Services Traffic.

 1.3. The Reciprocal Compensation charges (including, but not limited to, the Reciprocal Compensation per minute of use charges) billed by Lightship to Verizon shall not exceed the Reciprocal Compensation charges (including, but not limited to, Reciprocal Compensation per minute of use charges) billed by Verizon to Lightship.

2. Other Types of Traffic.

 2.1 Notwithstanding any other provision of this Agreement or any Tariff: (a) the Parties' rights and obligations with respect to any intercarrier compensation that may be due in connection with their exchange of Internet Traffic shall be governed by the terms of the FCC Internet Order and other applicable FCC orders and FCC Regulations; and, (b) a Party shall not be obligated to pay any intercarrier compensation for Internet Traffic that is in excess of the intercarrier compensation for Internet Traffic that such Party is required to pay under the FCC Internet Order and other applicable FCC orders and FCC Regulations.

 2.2 Subject to Section 2.1 above, interstate and intrastate Exchange Access, Information Access, exchange services for Exchange Access or Information Access, and Toll Traffic, shall be governed by the applicable provisions of this Agreement and applicable Tariffs.

    2.3    For any traffic originating with a third party carrier and delivered by Lightship to Verizon, Lightship shall pay Verizon the same amount that such third party carrier would have been obligated to pay Verizon for termination of that traffic at the location the traffic is delivered to Verizon by Lightship.

    2.4    Any traffic not specifically addressed in this Agreement shall be treated as required by the applicable Tariff of the Party transporting and/or terminating the traffic.

3. Interconnection Points

    3.1    The IP of a Party ("Receiving Party") for Measured Internet Traffic delivered to the Receiving Party by the other Party shall be the same as the IP of the Receiving Party for Reciprocal Compensation Traffic under Section 4 of the Terms.

    3.2    Except as otherwise set forth in the applicable Tariff of a Party ("Receiving Party") that receives Toll Traffic from the other Party, the IP of the Receiving Party for Toll Traffic delivered to the Receiving Party by the other Party shall be the same as the IP of the Receiving Party for Reciprocal Compensation Traffic under Section 4 of the Terms.

    3.3    The IP for traffic exchanged between the Parties that is not Reciprocal Compensation Traffic, Measured Internet Traffic or Toll Traffic, shall be as specified in the applicable provisions of this Agreement or the applicable Tariff of the receiving Party, or in the absence of applicable provisions in this Agreement or a Tariff of the receiving Party, as mutually agreed by the Parties.

4. Traffic Measurement and Billing over Interconnection Trunks

    4.1    For billing purposes, each Party shall pass Calling Party Number (CPN) information on at least ninety-five percent (95%) of calls carried over the Interconnection Trunks.

        4.1.1    As used in this Section 4, "Traffic Rate" means the applicable Reciprocal Compensation Traffic rate, Measured Internet Traffic rate, intrastate Switched Exchange Access Service rate, interstate Switched Exchange Access Service rate, or intrastate/interstate Tandem Transit Traffic rate, as provided in the Verizon's standard pricing schedule for interconnection agreements in Maine that was attached to the Verizon/Lightship adoption letter dated January 16, 2002, an applicable Tariff, or, for Measured Internet Traffic, the FCC Internet Order.

 4.1.2 If the originating Party passes CPN on ninety-five percent (95%) or more of its calls, the receiving Party shall bill the originating Party the Traffic Rate applicable to each relevant minute of traffic for which CPN is passed. For any remaining (up to 5%) calls without CPN information, the receiving Party shall bill the originating Party for such traffic at the Traffic Rate applicable to each relevant minute of traffic, in direct proportion to the minutes of use of calls passed with CPN information.

 4.1.3 If the originating Party passes CPN on less than ninety-five percent (95%) of its calls and the originating Party chooses to combine Reciprocal Compensation Traffic and Toll Traffic on the same trunk group, the receiving Party shall bill the higher of its interstate Switched Exchange Access Service rates or its intrastate Switched Exchange Access Services rates for all traffic that is passed without CPN, unless the Parties agree that other rates should apply to such traffic.

4.2 At such time as a receiving Party has the capability, on an automated basis, to use such CPN to classify traffic delivered over Interconnection Trunks by the other Party by Traffic Rate type (e.g., Reciprocal Compensation Traffic/Measured Internet Traffic, intrastate Switched Exchange Access Service, interstate Switched Exchange Access Service, or intrastate/interstate Tandem Transit Traffic), such receiving Party shall bill the originating Party the Traffic Rate applicable to each relevant minute of traffic for which CPN is passed. If the receiving Party lacks the capability, on an automated basis, to use CPN information on an automated basis to classify traffic delivered by the other Party by Traffic Rate type, the originating Party will supply Traffic Factor 1 and Traffic Factor 2. The Traffic Factors shall be supplied in writing by the originating Party within thirty (30) days of the Effective Date and shall be updated in writing by the originating Party quarterly. Measurement of billing minutes for purposes of determining terminating compensation shall be in conversation seconds (the time in seconds that the Parties' equipment is used for a completed call, measured from the receipt of answer supervision to the receipt of disconnect supervision). Measurement of billing minutes for originating toll free service access code (e.g., 800/888/877) calls shall be in accordance with applicable Tariffs. Determinations as to whether traffic is Reciprocal Compensation Traffic or Measured Internet Traffic shall be made in accordance with Section 1.2.2 above.

4.3 Each Party reserves the right to audit all Traffic, up to a maximum of two audits per calendar year, to ensure that rates are being applied appropriately; provided, however, that either Party shall have the right to conduct additional audit(s) if the preceding audit disclosed material errors

or discrepancies. Each Party agrees to provide the necessary Traffic data in conjunction with any such audit in a timely manner.

4.4  Nothing in this Agreement shall be construed to limit either Party's ability to designate the areas within which that Party's Customers may make calls which that Party rates as "local" in its Customer Tariffs.

Appendix A – Rate Schedule

## INTERCONNECTION

### Call Transport & Termination

| Verizon Service | Non-recurring | Recurring |
|---|---|---|
| Rate for Reciprocal Compensation Traffic delivered to a Verizon-IP or to a Lightship IP | | $0.008/minute of use (mou) |

## Appendix B – Amendment Glossary

1. General Rule

    1.1 The provisions of Sections 1.2 through 1.4 and Section 2 apply with regard to this Amendment only.

    1.2 Unless the context clearly indicates otherwise, when a term listed in this Amendment Glossary is used in the Amendment (including its Attachment and Appendices), the term shall have the meaning stated in this Amendment Glossary. A defined term intended to convey the meaning stated in this Amendment Glossary is capitalized when used. Other terms that are capitalized, and not defined in this Amendment Glossary shall have the meaning stated in the Act. Additional definitions that are specific to the matters covered in the Terms may appear in that provision. To the extent that there may be any conflict between a definition set forth in this Amendment Glossary and any definition in the Terms, the definition set forth in this Amendment Glossary shall control with respect to interpretation of this Amendment.

    1.3 Unless the context clearly indicates otherwise, any term defined in this Amendment Glossary which is defined or used in the singular shall include the plural, and any term defined in this Amendment Glossary which is defined or used in the plural shall include the singular.

    1.4 The words "shall" and "will" are used interchangeably throughout the Amendment and the use of either indicates a mandatory requirement. The use of one or the other shall not confer a different degree of right or obligation for either Party.

2. Definitions

Act. The Communications Act of 1934 (47 U.S.C. §151 et seq.), as from time to time amended (including, but not limited to, by the Telecommunications Act of 1996).

Customer. A third party residence or business end-user subscriber to Telephone Exchange Services provided by either of the Parties.

Extended Local Calling Scope Arrangement. An arrangement that provides a Customer a local calling scope (Extended Area Service, "EAS"), outside of the Customer's basic exchange serving area. Extended Local Calling Scope Arrangements may be either optional or non-optional. "Optional Extended Local Calling Scope Arrangement Traffic" is traffic that under an optional Extended Local Calling Scope Arrangement chosen by the Customer terminates outside of the Customer's basic exchange serving area.

FCC. The Federal Communications Commission.

FCC Regulations. The unstayed, effective regulations promulgated by the FCC, as amended from time to time.

FCC Internet Order. Order on Remand and Report and Order, In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP Bound Traffic, FCC 01-131, CC Docket Nos. 96-98 and 99-68, (adopted April 18, 2001).

Internet Traffic. Any traffic that is transmitted to or returned from the Internet at any point during the duration of the transmission.

Merger Order. The FCC's Order "In re Application of GTE Corporation, Transferor, and Bell Atlantic Corporation, Transferee, For Consent to Transfer of Control of Domestic and International Section 214 and 310 Authorizations and Application to Transfer of a Submarine Cable Landing License", Memorandum Opinion and Order, FCC CC Docket No. 98-184, FCC 00-221 (June 16, 2000), as modified from time to time.

Measured Internet Traffic. Dial-up, switched Internet Traffic originated by a Customer of one Party on that Party's network at a point in a Verizon local calling area, and delivered to a Customer or an Internet Service Provider served by the other Party, on that other Party's network at a point in the same Verizon local calling area. Verizon local calling areas shall be as defined by Verizon. For the purposes of this definition, a Verizon local calling area includes a Verizon non-optional Extended Local Calling Scope Arrangement, but does not include a Verizon optional Extended Local Calling Scope Arrangement. Calls originated on a 1+ presubscription basis, or on a casual dialed (10XXX/101XXXX) basis, are not considered Measured Internet Traffic.

Reciprocal Compensation. The arrangement for recovering, in accordance with Section 251(b)(5) of the Act, the FCC Internet Order, and other applicable FCC orders and FCC Regulations, costs incurred for the transport and termination of Reciprocal Compensation Traffic originating on one Party's network and terminating on the other Party's network (as set forth in Attachment 1 to this Amendment.

Reciprocal Compensation Traffic. Telecommunications traffic originated by a Customer of one Party on that Party's network and terminated to a Customer of the other Party on that other Party's network, except for Telecommunications traffic that is interstate or

intrastate Exchange Access, Information Access, or exchange services for Exchange Access or Information Access. The determination of whether Telecommunication traffic is Exchange Access or Information Access shall be based upon Verizon's local calling areas as defined by Verizon. Reciprocal Compensation Traffic does not include: (1) any Internet Traffic; (2) traffic that does not originate and terminate within the same Verizon local calling area as defined by Verizon; (3) Toll Traffic, including, but not limited to, calls originated on a 1+ presubscription basis, or on a casual dialed (10XXX/101XXXX) basis; (4) Optional Extended Local Calling Scope Arrangement Traffic; (5) special access, private line, Frame Relay, ATM, or any other traffic that is not switched by the terminating Party; (6) Tandem Transit Traffic; or, (7) Information Service Traffic. For the purpose of this definition, a Verizon local calling area includes a Verizon non-optional Extended Local Calling Scope Arrangement, but does not include a Verizon optional Extended Local Calling Scope Arrangement.

Switched Exchange Access Service. The offering of transmission and switching services for the purpose of the origination or termination of Toll Traffic. Switched Exchange Access Services include but may not be limited to: Feature Group A, Feature Group B, Feature Group D, 700 access, 800 access, 888 access and 900 access.

Tariff.

    a) Any applicable Federal or state tariff of a Party, as amended from time-to-time; or

    b) Any standard agreement or other document, as amended from time-to-time, that sets forth the generally available terms, conditions and prices under which a Party offers a Service.

Toll Traffic. Traffic that is originated by a Customer of one Party on that Party's network and terminates to a Customer of the other Party on that other Party's network and is not Reciprocal Compensation Traffic, Measured Internet Traffic, or Ancillary Traffic. Toll Traffic may be either "IntraLATA Toll Traffic" or "InterLATA Toll Traffic", depending on whether the originating and terminating points are within the same LATA.

Traffic Factor 1. For traffic exchange via Interconnection Trunks, a percentage calculated by dividing the number of minutes of interstate traffic (excluding Measured Internet Traffic) by the total number of minutes of interstate and intrastate traffic. ([Interstate Traffic Total Minutes of Use {excluding Measured Internet Traffic Total Minutes of Use} ÷ {Interstate Traffic Total Minutes of Use + Intrastate Traffic Total Minutes of Use}] x 100). Until the form of a Party's bills is updated to use the term "Traffic Factor 1," the term "Traffic Factor 1" may be referred to on the Party's bills and in billing related communications as "Percent Interstate Usage" or "PIU."

Traffic Factor 2. For traffic exchange via Interconnection Trunks, a percentage calculated by dividing the combined total number of minutes of Reciprocal Compensation Traffic and Measured Internet Traffic by the total number of minutes of intrastate traffic. ([{Reciprocal Compensation Traffic Total Minutes of Use + Measured Internet Traffic Total Minutes of Use} ÷ Intrastate Traffic Total Minutes of Use] x 100).

Until the form of a Party's bills is updated to use the term "Traffic Factor 2," the term "Traffic Factor 2" may be referred to on the Party's bills and in billing related communications as "Percent Local Usage" or "PLU."

<u>Voice Information Services Traffic</u>. IntraLATA switched voice traffic, delivered to a service that provides [i] recorded voice announcement information or [ii] a vocal discussion program open to the public.