Exhibit 12

# CTC COMMUNICATIONS

*The service you want. The technology you need.*

October 11, 2005

**VIA FACSIMILE AND OVERNIGHT COURIER**

Mellon Investor Services LLC
Overpeck Centre
85 Challenger Road
Ridgefield Park, New Jersey 07660
Attention: Michael Battista

Stephan Oppenheimer
c/o JP Morgan Partners
1221 Avenue of the Americas, 39th Floor
New York, NY 10020

James D. Houghton
c/o Megunticook Management
143 Newbury Street, 6th Floor
Boston, MA 02116

Kevin O'Hare
48 Steeplechase Drive
Doylestown, PA 18901

Dear Sirs:

Reference is made to (a) that certain Agreement and Plan of Merger, dated as of March 21, 2005 (the "Merger Agreement"), by and among CTC Communications Group, Inc., a Delaware corporation ("Acquirer"), CTC Communications Acquisition Corp., a Delaware corporation and wholly-owned subsidiary of Acquirer ("Merger Sub") and Lightship Holding, Inc., a Delaware corporation, and (b) that certain Escrow Agreement, dated as May 20, 2005 (the "Escrow Agreement"), by and among, Acquirer, the members of the Stockholder Representative Committee signatories thereto (collectively, the "Representatives"), and Mellon Investor Services LLC, a New Jersey limited liability company (the "Escrow Agent"). Terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Escrow Agreement.

This letter shall constitute a Claim Notice pursuant to Section 8(d) of the Merger Agreement and a Notice of Claim pursuant to Section 2(c) and Section 4 of the Escrow Agreement given by Acquirer on behalf of itself and Merger Sub.

Acquirer has incurred or paid or, in good faith, reasonably believes that it will have to incur or pay, Losses (as defined in the Merger Agreement) in an aggregate amount equal to $3,315,415.90 arising from the Claims described herein. Attached hereto as **Exhibit A** is a

description of the basis for such Losses as well as supporting data for such claims. Acquirer certifies that such allegation of Losses is bona fide and in good faith.

This Claim Notice and Notice of Claim is submitted without prejudice to any of the rights and remedies of Acquirer and Merger Sub under the Merger Agreement, the Escrow Agreement any other Transaction Document (as defined in the Merger Agreement) or applicable law. Without limiting the foregoing, Acquirer and Merger Sub hereby reserve all of their rights and remedies with respect to the Funds and the Escrowed Property, including, without limitation, the right to recover from the Escrow Account, the aggregate amount of Losses claimed hereunder.

Very truly yours,

CTC COMMUNICATIONS GROUP, INC.

By: _____
Name: James P. Prenetta, Jr.
Title: General Counsel

cc:

Mellon Investor Services LLC
Overpeck Centre
85 Challenger Road
Ridgefield Park, New Jersey 07660
Attention: Legal Department

Kleinbard, Bell & Brecker LLP
1900 Market Street, Suite 700
Philadelphia, Pennsylvania 19103
Attention: Ralph J. Mauro, Esq.

### Exhibit A

Claim in the amount of $2,288,725.00 (including interest and penalties on such amount) associated with the Company's failure to appropriately report revenue and pay applicable Federal fees to the Universal Service Administration.

Claim in the amount of $25,534.00 for income taxes due for 2004.

Claim in the amount of $500,000.00 associated with the Company's failure to pay Nortel for certain licenses associated with its DMS100 switches.

Claim in the amount of $2,156.91 associated with a default judgment entered against the Company due to its failure to defend a preference claim in the case of In Re Future Resources Corporation, Debtor, C Richard McQueen, Trustee for Future Energy Resources Corporation, Plaintiff v. Lightship Telecom, LLC.

Claim in the amount of $26,000.00 associated with remedial action required to be taken by Acquirer due to the Company's failure to appropriately update the LERG with number blocks.

Claim in the amount of $276,000.00 associated with the failure of the Company to pay power costs at the Worcester, MA facility.

Claim in the amount of $197,000.00 relating to various unpaid regulatory fees.

**CTC COMMUNICATIONS**

*The service you want. The technology you need.*

October 31, 2005

**VIA OVERNIGHT COURIER**

Mellon Investor Services LLC
Newport Office Center VII
480 Washington Blvd.
Jersey City, New Jersey 07310
Attention: Michael Battista

Stephan Oppenheimer
c/o JP Morgan Partners
1221 Avenue of the Americas, 39th Floor
New York, NY 10020

James D. Houghton
c/o Megunticook Management
143 Newbury Street, 6th Floor
Boston, MA 02116

Kevin O'Hare
64 Springs Drive
Doylestown, PA 18901

Dear Sirs:

Reference is made to (a) that certain Agreement and Plan of Merger, dated as of March 21, 2005 (the "Merger Agreement"), by and among CTC Communications Group, Inc., a Delaware corporation ("Acquirer"), CTC Communications Acquisition Corp., a Delaware corporation and wholly-owned subsidiary of Acquirer ("Merger Sub") and Lightship Holding, Inc., a Delaware corporation (the "Company"), (b) that certain Escrow Agreement, dated as May 20, 2005 (the "Escrow Agreement"), by and among, Acquirer, the members of the Stockholder Representative Committee signatories thereto (collectively, the "Representatives"), and Mellon Investor Services LLC, a New Jersey limited liability company (the "Escrow Agent"), (c) Acquirer's October 11, 2005 letter (the "Claim Letter") to the Representatives and the Escrow Agent, and (d) the letter, dated October 21, 2005, to Acquirer and the Escrow Agent from Stephan Oppenheimer, on behalf of the Representatives, requesting additional information regarding the Claim Letter (the "Oppenheimer Letter"). Terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Escrow Agreement.

At the outset, we wish to state for the record that we strongly disagree with your assertions that the Claim Letter is deficient. The Claim Letter is in no way deficient, but rather complied in all respects with the terms of the Merger Agreement and the Escrow

NY01/FRIEA/1056726.3

Agreement and constituted a valid and effective Claim Notice pursuant to Section 8(d) of the Merger Agreement and a valid and effective Notice of Claim pursuant to Section 2(c) and Section 4 of the Escrow Agreement. On the other hand, the Oppenheimer Letter, which is nothing more than a thinly veiled attempt to stall resolution of the relevant Claims without even the slightest attempt to address the issues raised in the Claim Letter, clearly does not satisfy the requirements of the Merger Agreement and the Escrow Agreement in order to constitute a valid Objection.

Notwithstanding the foregoing, in the interests of expediting the process and reaching a prompt resolution of the relevant matters, Acquirer is hereby providing, in Exhibit A hereto, the information requested in the Oppenheimer Letter. Acquirer also certifies that the allegation of Losses set forth in the Claim Letter and Exhibit A hereto is bona fide and in good faith.

This letter is submitted without prejudice to any of the rights and remedies of Acquirer and Merger Sub under the Merger Agreement, the Escrow Agreement or any other Transaction Document (as defined in the Merger Agreement) or applicable law. Without limiting the foregoing, Acquirer and Merger Sub hereby expressly reserve all of their rights and remedies with respect to the Funds and the Escrowed Property, including, without limitation, the right to recover from the Escrow Account the aggregate amount of Losses claimed hereunder and under the Claim Letter. Moreover, nothing in this letter or Exhibit A shall constitute (a) an admission or suggestion that the Claim Letter did not constitute a valid and effective Claim Notice under the Merger Agreement or Notice of Claim under the Escrow Agreement or (b) a waiver of any rights or remedies of Acquirer or Merger Sub relating to, or arising from, the failure of the Representatives to deliver a valid Objection in a timely and proper manner, as required by the Merger Agreement and the Escrow Agreement, all of which are expressly reserved.

For your information, please note that Mellon Investor Services LLC has moved its offices to: Newport Office Center VII, 480 Washington Blvd., Jersey City, New Jersey 07310, facsimile no. (201) 680-4774. Accordingly, unless the Escrow Agent notifies the other parties to the contrary, all notices, instructions, directions, requests and other communications to the Escrow Agent should be sent to that address.

Very truly yours,

CTC COMMUNICATIONS GROUP, INC.

By: *[signature]*
Name: James P. Prenetta, Jr.
Title: General Counsel

cc: Mellon Investor Services LLC
Newport Office Center VII
480 Washington Blvd.
Jersey City, New Jersey 07310
Attention: Legal Department

- 2 -

Kleinbard, Bell & Brecker LLP
1900 Market Street, Suite 700
Philadelphia, Pennsylvania 19103
Attention: Ralph J. Mauro, Esq.

## EXHIBIT A

Claim for Losses in the aggregate amount of $2,288,725.00 (including interest and penalties on such amount) associated with the Company's failure to report appropriately revenue and pay applicable Federal fees and associated Federal and state taxes in breach of Holding's representations and warranties set forth in Section 4(e)(i), 4(e)(iii), Section 4(h), Section 4(i), Section 4(j)(i) and Section 4(j)(iii) of the Merger Agreement. Acquirer and Merger Sub are entitled to indemnification with respect to such Losses pursuant to Section 8(b) of the Merger Agreement. Certain of such Losses have been incurred but not yet paid by Acquirer and/or Merger Sub and certain other Losses have not yet been incurred or paid by Acquirer or Merger Sub but Acquirer reasonably believes that it will incur and have to pay such Losses.

Claim for Losses in the amount of $25,534.00 for income taxes due for 2004 in breach of Holding's representations and warranties set forth in Section 4(h), Section 4(i) and Section 4(j) of the Merger Agreement. Acquirer and Merger Sub are entitled to indemnification with respect to such Losses pursuant to Section 8(b) of the Merger Agreement. Certain of such Losses have been incurred but not yet paid by Acquirer and/or Merger Sub and certain other Losses have not yet been incurred or paid by Acquirer or Merger Sub but Acquirer reasonably believes that it will incur and have to pay such Losses.

Claim for Losses in the amount of $500,000.00 associated with the Company's failure to pay Nortel for certain licenses associated with its DMS100 switches in breach of Holding's representations and warranties set forth in Section 4(f), Section 4(h) and Section 4(k) of the Merger Agreement. Acquirer and Merger Sub are entitled to indemnification with respect to such Losses pursuant to Section 8(b) of the Merger Agreement. Certain of such Losses have been incurred but not yet paid by Acquirer and/or Merger Sub and certain other Losses have not yet been incurred or paid by Acquirer or Merger Sub but Acquirer reasonably believes that it will incur and have to pay such Losses.

Claim for Losses in the amount of $2,156.91 associated with a default judgment entered against the Company due to its failure to defend a preference claim in the case of <u>In Re Future Resources Corporation, Debtor, C Richard McQueen, Trustee for Future Energy Resources Corporation, Plaintiff v. Lightship Telecom, LLC</u>, in breach of Holding's representations and warranties set forth in Section 4(l) of the Merger Agreement. Acquirer and Merger Sub are entitled to indemnification with respect to such Losses pursuant to Section 8(b) of the Merger Agreement. Certain of such Losses have been incurred but not yet paid by Acquirer and/or Merger Sub and certain other Losses have not yet been incurred or paid by Acquirer or Merger Sub but Acquirer reasonably believes that it will incur and have to pay such Losses.

Claim for Losses in the amount of $23,000.00 associated with remedial action required to be taken by Acquirer and Merger Sub due to the Company's failure to update the LERG appropriately with number blocks in breach of Holding's representations and warranties set forth in Section 4(e)(iii), and Section 4(i) of the Merger Agreement. Acquirer and Merger Sub are entitled to indemnification with respect to such Losses pursuant to Section 8(b) of the Merger Agreement. Certain of such Losses have been incurred but not yet paid by Acquirer and/or

NY01/FRIEA/1056726.3

Merger Sub and certain other Losses have not yet been incurred or paid by Acquirer or Merger Sub but Acquirer reasonably believes that it will incur and have to pay such Losses.

Claim for Losses in the amount of $204,572.43 associated with the failure of the Company to pay power costs at the Worcester, MA facility in breach of Holding's representations and warranties set forth in Section 4(h) and/or Section 4(k) of the Merger Agreement. Acquirer and Merger Sub are entitled to indemnification with respect to such Losses pursuant to Section 8(b) of the Merger Agreement. Certain of such Losses have been incurred but not yet paid by Acquirer and/or Merger Sub and certain other Losses have not yet been incurred or paid by Acquirer or Merger Sub but Acquirer reasonably believes that it will incur and have to pay such Losses. Supplemental information relating to such Losses is attached hereto as Exhibit A-1.

Claim for Losses in the amount of $198,000 relating to unpaid regulatory fees in various states in breach of Holding's representations and warranties set forth in Section 4(e)(iii), Section 4(h), Section 4(i) and Section 4(j) of the Merger Agreement. Acquirer and Merger Sub are entitled to indemnification with respect to such Losses pursuant to Section 8(b) of the Merger Agreement. Certain of such Losses have been incurred but not yet paid by Acquirer and/or Merger Sub and certain other Losses have not yet been incurred or paid by Acquirer or Merger Sub but Acquirer reasonably believes that it will incur and have to pay such Losses.

**Exhibit A-1**

# national**grid**

October 24, 2005

LIGHTSHIP TELECOM
1 Executive Park Dr
Bedford, NH 03110

RE:   4 05 19114-12555-00
      44 Front St
      Worcester, MA  01608

Dear Customer:

The results of a recent investigation indicate

        X      unmetered electric usage

has resulted in a loss of revenue to National Grid. We have processed a bill for the period of 05/03/00 to 04/04/05. You will receive a bill enclosed.

If you wish to discuss this bill or make arrangements for a payment plan, please contact Customer Service at 1-800-322-3223 available Monday-Friday, 7:00am-7:00pm; Saturday, 7:00am-5:00pm or, for your convenience, visit us at www.nationalgrid.com.

Sincerely,

National Grid
Customer Service

JUNEA0
10/24/05 14:46

|  |  | Account Number | Pay This Amount |
|---|---|---|---|
| OCT 05 | **nationalgrid** | 19114 12555 00 | **$204572.43** |
|  |  |  | Amount Enclosed |
|  |  |  | $ |

```
#BWNFKKP **C034
#19114125550002#
LIGHTSHIP TELECOM
1 EXECUTIVE PARK DR
BEDFORD NH 03110-6913
```

```
                            4051911412555D0 0020457243
    C    07
    2    L0 NON REG
```

# nationalgrid

*To Reach Us*
Customer Service:     1-800-322-3223
Credit Department:    1-866-395-0315
E-mail:               CustomerService@us.ngrid.com
Website:              www.nationalgrid.com

| | | | |
|---|---|---|---|
| Pay This Amount | SERVICE ADDRESS 44 FRONT ST WORCESTER MA | LOAD ZONE WCMASS | 405191141255500 LIGH, CY. 07 |
| $204572.43 Account Number | SERVICE PERIOD OCT 07 TO OCT 08 2005   1 DAYS | | TYPE OF METER READING CANCELLED OR ADJUSTED |

| METER NUMBER | RATE | METER READING PRESENT | PREVIOUS | METER CONST | KWH USAGE | ACTUAL DEMAND |
|---|---|---|---|---|---|---|
| 038769961 | G-2 | 1498 | 1498 | 50 | 2082723 | .0 KW |

19114 12555 00
Bill Date
OCT 19 2005

***SAME COMMITMENT, NEW NAME***
MASSACHUSETTS ELECTRIC HAS A NEW LOGO AND A NEW NAME: NATIONAL GRID.
WHAT HASN'T CHANGED? OUR COMMITMENT TO DELIVERING ELECTRICITY
SAFELY, RELIABLY AND EFFICIENTLY AND TO PROVIDING CUSTOMER SERVICE
INCLUDING 24-HOUR EMERGENCY RESPONSE.

NEXT METER READING DATE
NOVEMBER 03

NEW BASIC SERVICE PRICING WILL TAKE EFFECT ON NOV 1,2005. NEW RATES
WILL BE POSTED ON WWW.NATIONALGRIDUS.COM/BUSBASIC AND WILL ALSO BE
AVAILABLE ON OUR AUTOMATED BASIC SERVICE LINE: 1-888-466-3433.

NATIONAL GRID HAS ENERGY EFFICIENCY PROGRAMS AND INFORMATION THAT
CAN HELP YOU MANAGE YOUR ELECTRICITY BILLS-WWW.NATIONALGRID.COM.

| MONTH | TOTAL KWH |
|---|---|
| O 05 | 2119073 |
| S | 38550 |
| A | 34350 |
| J | 107800 |
| J |  |

BILLED DEMAND
LAST 12 MTHS

| MIN |  |
|---|---|
| MAX | 121.0 |
| AVG | 45.3 |

Make check payable to: *National Grid*

| | | |
|---|---|---|
| OCT 05 | Account Number<br>19114 12555 00 | Pay This Amount<br>PAGE: 2<br>Amount Enclosed<br>$ |

# nationalgrid

```
#BWNFKKP **C034
#19114125550002#
LIGHTSHIP TELECOM
1 EXECUTIVE PARK DR
BEDFORD NH 03110-6913
```

4051911412555500 0020457243

C   07
2   LO NON REG

# nationalgrid

**To Reach Us**
Customer Service:   1-800-322-3223
Credit Department:  1-866-395-0315
E-mail:   CustomerService@us.ngrid.com
Website:  www.nationalgrid.com

SERVICE ADDRESS          LOAD ZONE WCMASS            4051911412555500
Pay This Amount   44 FRONT ST WORCESTER MA          LIGH, CY. 07

$204572.43       NATIONAL GRID
Account Number   RATE: GENERAL SERVICE-DEMAND  G-2

19114 12555 00                PREVIOUS BALANCE           $   8557.04
                              PAYMENT-THANK YOU 10/11/05    -4556.94
Bill Date                     BALANCE FORWARD                4000.10

OCT 19 2005      DELIVERY SERVICES:
                 DISTRIBUTION CHG
                   DEMAND     56.62645 X  60.5 KW =  21575.90
NEXT METER         ENERGY       .00130 X 2082723 KWH=  2714.08
READING DATE                                                  24289.98
                 TRANSITION CHG
NOVEMBER 03        DEMAND     55.45157 X  60.5 KW =   3354.82
                   ENERGY       .00607 X 2082723 KWH= 12651.25
                                                              16006.07
                 TRANSMISSION CHG     .00656 X 2082723 KWH=   13659.38
                 BASIC SERVICE ADJ    .00006 X 2082723 KWH=     119.28
         TOTAL    ENERGY CONSERVATION .00259 X 2082723 KWH=    5389.41
MONTH    KWH     RENEWABLE ENERGY CHG .00075 X 2082723 KWH=    1568.85
                 TOTAL DELIVERY SERVICES                    $ 61032.97
O 05   2119073
S       38550   SUPPLIER SERVICES:
A       34350   GENERATION CHARGE
J      107800   BASIC SERVICE-VARIABLE  .06257 X 2082723 KWH=  130322.48
J               TOTAL COST OF ELECTRICITY                   $ 130322.48

BILLED DEMAND    MASS SALES TAX                                9216.88
LAST 12 MTHS
                 TOTAL CURRENT BALANCE                      $ 200572.33
MIN
MAX     121.0    ACCOUNT BALANCE                            $ 204572.43
AVG      45.3

Make check payable to: National Grid



**CTC COMMUNICATIONS**

*The service you want. The technology you need.*

November 21, 2005

**VIA OVERNIGHT COURIER**

Mellon Investor Services LLC
Newport Office Center VII
480 Washington Blvd.
Jersey City, New Jersey 07310
Attention: Michael Battista

Stephan Oppenheimer
c/o JP Morgan Partners
1221 Avenue of the Americas, 39th Floor
New York, NY 10020

James D. Houghton
c/o Megunticook Management
143 Newbury Street, 6th Floor
Boston, MA 02116

Kevin O'Hare
64 Springs Drive
Doylestown, PA 18901

Dear Sirs:

    Reference is made to (a) that certain Agreement and Plan of Merger, dated as of March 21, 2005 (the "Merger Agreement"), by and among CTC Communications Group, Inc., a Delaware corporation ("Acquirer"), CTC Communications Acquisition Corp., a Delaware corporation and wholly-owned subsidiary of Acquirer ("Merger Sub") and Lightship Holding, Inc., a Delaware corporation (the "Company"), (b) that certain Escrow Agreement, dated as of May 20, 2005 (the "Escrow Agreement"), by and among Acquirer, the members of the Stockholder Representative Committee signatories thereto (collectively, the "Stockholder Representatives") as representatives of the former stockholders of the Company (the "Holding Stockholders"), and Mellon Investor Services LLC, a New Jersey limited liability company (the "Escrow Agent"), (c) Acquirer's October 11, 2005 and October 31, 2005 letters to the Stockholder Representatives and the Escrow Agent (collectively, the "Claim Letters"), and (d) Stephan Oppenheimer's October 21, 2005 and November 14, 2005 letters to Acquirer and the Escrow Agent on behalf of the Stockholder Representatives (collectively, the "Stockholder Representative Letters"). Terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Escrow Agreement.

    Despite Acquirer's continued disagreement with the matters and allegations set forth in the Stockholder Representative Letters, Acquirer and Merger Sub are prepared to allow the Stockholder

NY01/FROHJ/1062360.2

Representatives reasonable access to Nicholas Zeitvogel, Eleanor Knott and/or Jeffrey Koester, at Acquirer's office in Waltham, Massachusetts, in order to expedite the resolution of the Claims described in the Claim Letters. In connection therewith, please provide Acquirer with at least five (5) alternative dates when the Stockholder Representatives would be available to meet with these individuals, and the name(s) of the Stockholder Representatives and/or their representatives, if any, who will participate in the meeting. Acquirer will then notify the Stockholder Representatives which date best suits the schedules of everyone concerned.

We note that the Stockholder Representative Letters acknowledge, among other things, the indemnification obligation of the Holding Stockholders with respect to Acquirer's Claim for Losses in the amount of $204,572.43 associated with the Company's failure to pay power costs at its Worcester, Massachusetts facility (the "Worcester Claim"). The Stockholder Representative Letters state, however, that the Worcester Claim constitutes a Third Party Action (as defined in the Merger Agreement), a position with which we disagree. The language of Section 8(e) of the Merger Agreement makes it quite clear that the provisions regarding Third Party Actions become operative only after the service of a citation, summons or other manner of process. Thus, the Stockholder Representatives do not have the right to take control of the defense and investigation of the Worcester Claim, at this time. As you can imagine, this matter is of the utmost importance to Acquirer and Merger Sub, given that their businesses could easily suffer extensive and irreparable damage if the electric service to the Worcester facility were to be interrupted, even for a brief period. In the spirit of cooperation, however, the Acquirer is prepared to allow the Stockholder Representatives to take control of the defense and investigation of the Worcester Claim on the terms and conditions set forth in Section 8(e) of the Merger Agreement, except (i) neither the Stockholder Representatives nor their counsel shall compromise or settle the Worcester Claim without the prior written consent of Acquirer, and (ii) the Stockholder Representatives shall promptly pay all amounts (and take all actions) necessary or requested by Acquirer to ensure the continuous supply of electricity to the Company's Worcester facility, it being agreed that if the Stockholder Representatives shall fail to promptly pay any such amount (or take any such action) as necessary or so requested, Acquirer or its affiliates may pay such amounts (or take such action), and any costs, expenses and amounts paid by any of them in doing so shall be deemed to be Losses for which the Holding Stockholders shall have indemnification obligations under Section 8 of the Merger Agreement. In all other respects, Section 8(e) of the Merger Agreement shall apply to the Worcester Claim. Unless we hear differently from you, we will assume that this is acceptable to the Stockholder Representative Committee.

This letter is submitted without prejudice to any of the rights and remedies of Acquirer and Merger Sub under the Merger Agreement, the Escrow Agreement or any other Transaction Document (as defined in the Merger Agreement) or applicable law. Without limiting the foregoing, Acquirer and Merger Sub hereby expressly reserve all of their rights and remedies with respect to the Funds and the Escrowed Property, including, without limitation, the right to recover from the Escrow Account the aggregate amount of Losses claimed under the Claim Letters. Moreover, nothing in the Claim Letters or the Exhibits thereto or this letter (including, without limitation, the Stockholder Representatives' access to Messrs. Zeitvogel and Koester and/or Ms. Knott contemplated hereby) shall constitute (a) an admission or suggestion that either or both of the Claim Letters did not constitute a valid and effective Claim Notice under the Merger Agreement or Notice of Claim under the Escrow Agreement, (b) a waiver of any rights or remedies of Acquirer or Merger Sub relating to, or arising from, any failure of the Stockholder Representatives to deliver a valid Objection in a timely and proper manner, as required by the Merger Agreement and the Escrow Agreement, or (c) an admission as to any of the matters or allegations contained in the Stockholder Representative Letters, all of which are expressly reserved.

Very truly yours,

CTC COMMUNICATIONS GROUP, INC.

By: _____
Name: James P. Prenetta, Jr.
Title: Vice President and General Counsel

cc:   Mellon Investor Services LLC
      Newport Office Center VII
      480 Washington Blvd.
      Jersey City, New Jersey 07310
      Attention: Legal Department

      Kleinbard, Bell & Brecker LLP
      1900 Market Street, Suite 700
      Philadelphia, Pennsylvania 19103
      Attention: Ralph J. Mauro, Esq.



**CTC COMMUNICATIONS**

The service you want. The technology you need.

December 12, 2005

**VIA OVERNIGHT COURIER**

Mellon Investor Services LLC
Newport Office Center VII
480 Washington Blvd.
Jersey City, New Jersey 07310
Attention: Michael Battista

Stephan Oppenheimer
c/o JP Morgan Partners
1221 Avenue of the Americas, 39th Floor
New York, NY 10020

James D. Houghton
c/o Megunticook Management
143 Newbury Street, 6th Floor
Boston, MA 02116

Kevin O'Hare
64 Springs Drive
Doylestown, PA 18901

Dear Sirs:

    Reference is made to (a) that certain Agreement and Plan of Merger, dated as of March 21, 2005 (the "Merger Agreement"), by and among CTC Communications Group, Inc., a Delaware corporation ("Acquirer"), CTC Communications Acquisition Corp., a Delaware corporation and wholly-owned subsidiary of Acquirer ("Merger Sub") and Lightship Holding, Inc., a Delaware corporation (the "Company"), (b) that certain Escrow Agreement, dated as of May 20, 2005 (the "Escrow Agreement"), by and among Acquirer, the members of the Stockholder Representative Committee signatories thereto (collectively, the "Stockholder Representatives") as representatives of the former stockholders of the Company (the "Holding Stockholders"), and Mellon Investor Services LLC, a New Jersey limited liability company (the "Escrow Agent"), (c) Acquirer's October 11, 2005, October 31, 2005 and November 21, 2005 letters to the Stockholder Representatives and the Escrow Agent (each, a "Claim Letter" and, collectively, the "Claim Letters"), and (d) Stephan Oppenheimer's October 21, 2005, November 14, 2005 and December 5, 2005 letters to Acquirer and the Escrow Agent on behalf of the Stockholder Representatives (each, a "Stockholder Representative Letter" and, collectively, the "Stockholder Representative Letters"). Terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Escrow Agreement.

NY01/FROHJ/1069344.1

As mentioned in the Claim Letter, dated as of November 21, 2005, Acquirer and Merger Sub are prepared to allow the Stockholder Representatives reasonable access to Nicholas Zeitvogel, Eleanor Knott and/or Jeffrey Koester, at Acquirer's office in Waltham, Massachusetts, in order to expedite the resolution of the Claims described in the Claim Letters. Unfortunately, both of the Stockholder Representatives' requested dates, December 12, 2005 and December 16, 2005, are inconvenient and problematic, as Acquirer and its personnel have important prior commitments on such dates which can not be rescheduled. Acquirer suggests that the meeting be scheduled for the beginning of January, 2006. To help expedite the process, the individuals in question would be available to meet with the Stockholders Representatives on any of the following dates: January 5, 6, 9 or 10, 2006.

This letter is submitted without prejudice to any of the rights and remedies of Acquirer and Merger Sub under the Merger Agreement, the Escrow Agreement or any other Transaction Document (as defined in the Merger Agreement) or applicable law. Without limiting the foregoing, Acquirer and Merger Sub hereby expressly reserve all of their rights and remedies with respect to the Funds and the Escrowed Property, including, without limitation, the right to recover from the Escrow Account the aggregate amount of Losses claimed under the Claim Letters. Moreover, nothing in the Claim Letters or the Exhibits thereto or this letter (including, without limitation, the Stockholder Representatives' access to Messrs. Zeitvogel and Koester and/or Ms. Knott contemplated hereby) shall constitute (a) an admission or suggestion that either or both of the Claim Letters did not constitute a valid and effective Claim Notice under the Merger Agreement or Notice of Claim under the Escrow Agreement, (b) a waiver of any rights or remedies of Acquirer or Merger Sub relating to, or arising from, any failure of the Stockholder Representatives to deliver a valid Objection in a timely and proper manner, as required by the Merger Agreement and the Escrow Agreement, or (c) an admission as to any of the matters or allegations contained in the Stockholder Representative Letters, all of which are expressly reserved.

Very truly yours,

CTC COMMUNICATIONS GROUP, INC.

By: _____
Name: James P. Prenetta, Jr.
Title: Vice President and General Counsel

cc:   Mellon Investor Services LLC
      Newport Office Center VII
      480 Washington Blvd.
      Jersey City, New Jersey 07310
      Attention: Legal Department

      Kleinbard, Bell & Brecker LLP
      1900 Market Street, Suite 700
      Philadelphia, Pennsylvania 19103
      Attention: Ralph J. Mauro, Esq.

NY01/FROHJ/1069344.1