

November 17, 2006

Mellon Investor Services LLC
Newport Office Center VII
480 Washington Blvd.
Jersey City, New Jersey 07310
Attention:  Michael Battista

Stephan Oppenheimer
CCMP Capital Advisors, LLC
245 Park Avenue, 16th Floor
New York, New York 10167-2403

James D. Houghton
c/o Meguntcook Management
143 Newbury Street, 6th Floor
Boston, MA  02116

Kevin O'Hare
64 Springs Drive
Doylestown, PA  18901

Dear Sirs,

        Reference is made to (a) that certain Agreement and Plan of Merger, dated as of March 21, 2005 (the "Merger Agreement"), by and among One Communications Corp. (as successor in interest to CTC Communications Group, Inc., a Delaware corporation, which merged with and into such company on June 30, 2006) ("Acquirer"), CTC Communications Acquisition Corp., a Delaware corporation and wholly-owned subsidiary of Acquirer ("Merger Sub"), and Lightship Holding, Inc., a Delaware corporation (the "Company"), (b) that certain Escrow Agreement, dated as of May 20, 2005 (the "Escrow Agreement"), by and among, the Acquirer, members of the Stockholder Representative Committee signatories thereto (collectively, the "Stockholder Representatives"), as representatives of the former stockholders of Lightship (the "Holding Stockholders"), and Mellon Investor Services LLC, a New Jersey limited liability company (the "Escrow Agent"), (c) Acquirer's October 11, 2005, October 31, 2005, November 21, 2005, December 12, 2005 and October 6, 2006 letters to the Stockholder Representatives and the Escrow Agent (each a "Claim Letter" and collectively "Claim Letters"); and (d) Stephan P. Oppenheimer's October 21, 2005, November 14, 2005, December 5, 2005, December 22, 2005 and July 21, 2006 letters to Acquirer and Escrow Agent on behalf of the Stockholder Representatives (each a "Stockholder Representative Letter" and, collectively, the "Stockholder Representative Letters").

1

This letter shall constitute an additional Claim Notice pursuant Section 8(d) of the Merger Agreement and a further Notice of Claim pursuant to section 2(c) and Section 4 of the Escrow Agreement given by Acquirer on behalf of itself and Merger Sub. Terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Escrow Agreement.

Acquirer has incurred, and in good faith reasonably believes that it will in the future incur, Losses (as defined in the Merger Agreement) in an amount that exceeds $20,000,000.00. These losses arise from, and are proximately caused by, tortious conduct, conduct constituting breach of contract, and violations of federal securities laws, arising from misrepresentations, omissions, and the intentional effort to obscure from Acquirer material facts associated with what Acquirer later learned were Lightship Telecom LLC's ("Lightship") wrongful and illegal business practices in Maine, New Hampshire and Vermont. Supporting documentation is attached hereto as Exhibit "A". These Losses are summarized as follows.

Acquirer has discovered, following a lengthy investigation, that prior to Closing, Lightship was engaged in illegal conduct, primarily in Maine, but also in Vermont and New Hampshire, through which it charged Verizon higher rates for certain types of telecommunications traffic, in contravention of its interconnection agreement ("ICA") with Verizon, its various tariffs, FCC implementation rules, and the rulings and policies of the Maine Public Utilities Commissions ("PUC"). These illegal higher charges resulted in an artificial increase in Lightship's revenues, and consequently in grossly over-inflated margin and EBITDA. Because synergized EBITDA was the primary valuation mechanism used by Acquirer in valuing the Company, and because Acquirer paid a purchase price equal to approximately seven times synergized EBITDA for the Company, the inflated EBITDA value caused a fraudulent inflation of the purchase price. An adjustment to the Company's EBITDA to reflect the correct value for the subject traffic in the above referenced jurisdictions indicates the Company's EBITDA was overvalued by approximately $700,000.00 per month.

The subject conduct (the "Fraudulent Conduct") can be summarized as follows. First, Acquirer has discovered that Lightship had been charging intrastate access charges rather than reciprocal compensation to Verizon for non-ISP bound traffic originating on Verizon's network, based on local calling areas designed by Lightship, rather than by Verizon. The Lightship defined local calling areas were significantly smaller that their Verizon counterparts. This conduct was contrary to the terms of Lightship's ICA[1], and violated general principles of tariff interpretation. It was also inconsistent with judicial interpretations of the FCC's *ISP Remand Order* and underlying FCC policy, as well as the Maine PUC's orders. Lightship should have been charging Verizon reciprocal compensation for all non-ISP bound traffic originating on Verizon's network and terminating on Lightship's network within the same non-optional calling area.

---

[1] For example, Amendment No. 1 to the Lightship-Verizon interconnection agreement provides, in its definition of Reciprocal Compensation Traffic subject to the reciprocal compensation rate, that "determination of whether Telecommunications traffic is Exchange Access or Information Access shall *be based upon Verizon's local calling areas as defined by Verizon*." (emphasis supplied) *See*, Exh. A.

2

For ISP bound traffic in Maine, Lightship's conduct was also impermissible. Acquirer discovered that Lightship had been charging Verizon intrastate access charges for this traffic, where the traffic originated and terminated within the same Verizon local calling areas, but in different, smaller, Lightship defined calling areas. This conduct was inconsistent with the FCC's *ISP Remand Order,* and the policies of the Maine PUC.

Acquirer also discovered that Lightship was billing Verizon reciprocal compensation or intrastate access charges for traffic that originated on the network of a third carrier and transited Verizon's network before terminating on Lightship's network, where Verizon was not serving as an interexchange carrier for that traffic. This practice also disregarded the definition of "Reciprocal Compensation Traffic" in Amendment No. 1 of the ICA, and has provided Verizon with grounds upon which to claim that it has been fraudulently billed. In addition, Lightship appears in some instances to have been billing *both* the third party originating carrier and Verizon for the same charges for the same functions, in violation of Lightship's interstate access tariff.

Finally, Acquirer has also learned that Lightship was offering VNXX services in Maine, Vermont and New Hampshire for ISP bound traffic terminating to an ISP outside the local calling area of the calling party, a practice prohibited in all three states.

The knowledge of this illegal conduct of its business operations in Maine, Vermont and New Hampshire was at all times prior to Closing exclusively within Lightship's control. Prior to the parties execution of the Merger Agreement, Acquirer engaged in detailed and reasonable due diligence. During the diligence period, Acquirer on numerous occasions requested clarification and explanation regarding Lightship's traffic patterns for its operations in Maine, New Hampshire, and Vermont. Lightship provided the requested explanations on multiple occasions, all of which supported its numerous representations that its business practices in Maine, New Hampshire and Vermont were in all respects appropriate and legitimate. These representations frequently were false. On other occasions, Lightship Representatives and certain Holding Stockholders deliberately omitted material facts which would have either revealed the illegal conduct, or which would have lead Acquirer to its discovery. Acquirer has since discovered documents which clearly show that Lightship's senior management, including at least some Holding Stockholders, actively discussed how to respond to inquiries regarding these issues from Acquirer's diligence team, in a manner which would conceal the true facts. The evidence strongly supports a finding that the Company and Lightship both negotiated and executed the Merger Agreement with full knowledge that they were concealing material facts crucial to the transaction, facts which Acquirer sought to discovery prior to signing and then again prior to Closing, facts which would have caused Acquirer to dramatically reduce the purchase price it would have been willing to pay, or which might have caused Acquirer not to proceed with the transaction at all.

Actionable representations by certain Holding Stockholders and Lightship's employees, agents and controlling persons, in addition to the representations and warranties set forth in the Merger Agreement, can generally be categorized as follows.

*Representations Regarding Lightship's EBITDA:* Lightship representatives and certain Holding Stockholders made representations to Acquirer regarding Lightship's

3

EBITDA, including calculations of EBITDA which incorporated the inflated earnings arising from Lightship's illegal use of self-defined calling areas in Maine, and other improper practices in Maine, New Hampshire and Vermont. Those representations were false at the time they were made, and the evidence clearly indicates that the Company, Lightship and certain Holding Stockholders were aware of their falsity.

*Representations Regarding Traffic Patterns In Maine:* When Acquirer inquired about Lightship traffic patterns in Maine, New Hampshire and Vermont, those inquiries were directed to Lightship representatives and certain Holding Stockholders, and included requests for explanation of those traffic patterns. Lightship representatives and certain Holding Stockholders provided explanations for these traffic patterns, and none of them disclosed the true facts. To the extent that these Lightship representatives and certain Holding Stockholders responded with statements of what they claimed were existing facts but which were in fact false, those statements constitute actionable fraud. To the extent that these statements and explanations by Lightship representatives and certain Holding Stockholders omitted material facts which would have revealed their falsity, Lightship representatives and certain Holding Stockholders engaged in fraudulent concealment of those material facts, and/or omitted those material facts from their explanations in blatant disregard of an obvious duty of disclosure.

*Representations Regarding The Lawful Conduct Of Lightship's Business:* Throughout the diligence process, Lightship representatives and certain Holding Stockholders repeatedly represented to Acquirer that all of Lightship's business operations were in compliance with applicable laws, regulations, and contract commitments. Those statements were false at the time they were made because Lightship's use of self defined calling areas in Maine and other wrongful and illegal practices in Maine, New Hampshire and Vermont violated, *inter alia*, applicable Maine, New Hampshire and Vermont statutes and regulations, and the terms and conditions under which it was continuing to do business with Verizon in those states. Those statements were made either with knowledge of their falsity, or made under circumstances where with the exercise of reasonable care Lightship representatives and certain Holding Stockholders should have known of their falsity.

The subject Fraudulent Conduct has created a vast array of potential civil, and in some cases criminal liability for Acquirer, its officers and directors.[2] By way of example only, Verizon could now file a complaint with the Maine PUC for violation of Lightship's tariff. The PUC has authority to levy fines for violations of state law and can also order disgorgement of profits realized as a result of these violations. The Fraudulent Conduct also exposes Acquirer to claims against Lightship under Section 208 of the Communications Act of 1934 for violation of federal law and FCC implementing regulations and to the concomitant FCC administrative fines. Verizon also consequently has claims against Acquirer, for all amounts improperly billed by Lightship in the above referenced illegal scenarios.[3]

---

[2] By way of example only, criminal exposure could arise, *inter alia*, from a charge of conspiracy to defraud the United States under 18 U.S.C. §371. Federal prosecution could take the form of a charge that Lightship defrauded the government of a significant portion of the USF payments rightly due by affirmatively disguising a large portion of its telecommunications revenue as enhanced/information services.

[3] The precise amount of this over billing has not been precisely determined at the time. It is substantial.

4

The multiple misrepresentations and omissions violative of the duty of disclosure at issue here were deliberate, and constitute nothing less than actionable fraud. They also violate federal securities laws and Security and Exchange Commission rules, including, *inter alia*, 15 U.S.C. § 78(j)(b) and SEC Rule 10b-5. Lightship's conduct also constitutes multiple breaches of representations, warranties, and pre-closing covenants contained in the Merger Agreement, including but not limited to, Sections 4(e)(i), 4 (e)(ii), 4(e)(iii), 4(e)(v), 4(h)(i-iv), 4(i), 4(k)(iii), and pre-closing covenants contained, *inter alia*, in Sections 5(c)(xv, xx), 5(e), and 5(g). Because these claims arise from Lightship conduct that was both illegal and fraudulent, no time, source of recovery, Indemnification Basket, Indemnification Cap, or aggregate loss limitations apply. *See*, Merger Agreement. Section 8(f)(viii).

This letter is submitted without prejudice to any of the rights and remedies of Acquirer and Merger Sub under the Merger Agreement, the Escrow Agreement or any other Transaction Document or applicable law. Without limiting the foregoing, Acquirer and Merger Sub expressly reserve all of their rights and remedies with respect to the Funds and the Escrowed Property, including, without limitation, the right to recover from the Escrow Account the aggregate amount of losses claimed under the Claim Letters. Moreover, nothing in the Claim Letters or the Exhibits thereto or this letter (including, without limitation, the Stockholder Representatives' access to Messrs. Zeitvogel or, Koester and/or Ms. Knott or Ms. Bergeron) shall constitute (a) an admission or suggestion that any of the Claim Letters did not constitute a valid and effective Claim Notice under the Merger Agreement or Notice of Claim under the Escrow Agreement, (b) a waiver of any rights or remedies of Acquirer or Merger Sub relating to, arising from, any failure or waiver of any rights or remedies of Acquirer or Merger Sub relating to, or arising from, any failure of the Stockholder Representatives to deliver a valid Objection in a timely and proper manner, as required by the Merger Agreement and the Escrow Agreement, or (c) an admission as to any of the matters or allegations contained in the Stockholder Representatives' Letters, all of which are expressly reserved.

Very truly yours,

One Communications Corp., as successor in interest to
CTC Communications Group, Inc.

By: _____
Name: James P. Prehetta, Jr.
Title: Executive Vice President and General Counsel

5

cc:     Kleinbard, Bell & Brecker LLP
        1900 Market Street, Suite 700
        Philadelphia, Pennsylvania 19103
        Attention: Ralph J. Mauro, Esq.

        Mark Resnick, Esq.
        Fee, Rosse & Lanz, P.C.
        Old City Hall
        45 School Street, 2nd Floor
        Boston, MA 02108

www.concommunications.com

PUC ME No. 15

Exchange and Ne: . Services
P: Section 6
Page 1
Se . Revision
Cancelinc : Revision

Verizon New England Inc.
d/b/a/ Verizon Maine

## 6. Local Service Areas and Other Exchange Services
## 6.1 Local Service Areas

The rates and charges for services explained herein are contained in Part M, ~ 1.6

| | | |
|---|---|---|
| 6.1.1 | Local Service Calling Areas | (C) (C) |
| A. | Local Service Calling Area is an arrangement provided on a non optional basis w service area of an exchange is enlarged by combining it with one or more addition, order to eliminate MTS charges. | ne local nges in |
| B. | The local service of each exchange or locality includes all the central offices and exchange (refer to Exhibit 6.1.1-1). The local service area of the exchanger offered under the following service options. | the ries are |
| 1. | Premium Service— Provides for unlimited calling within the exchange or loca exchanges and localities included in the local service area. | tional |
| a. | The local calling service area for Centrex, PBX, PASL, and FX service custc local service area. | ium |
| 2. | Economy Service— Provides for unlimited calling within the exchange or a. additional exchanges and localities that are not rated at the economy service lot within the local service area. Calls made outside the economy local service are: premium local service area are charged the economy service local usage rate whic on a per minute basis. | and all ssage rate t with the assessed (C) (C) (C) |
| C. | For exchanges served by more than one central office and that have a premium that includes more than 50,000 weighted main telephone exchange lines the service area includes only the exchange itself. | ice area ny local |
| D. | Independent Telephone Companies and their operating territories/exchanges Section 5.2.6. | ntified in |

(Issued: October 16, 2003)
Proposed Effective: November 15, 2003
Effective: Effective: November 15, 2003        Docket No. 2003-483
To be implemented on December 15, 2003.

Edward B. Dinan
President-ME

PUC ME No. 15

Verizon-New England Inc.
d/b/a/ Verizon Maine

Exchange and Network Services
Part A Section 6
Page 2
Fifth Revision
Canceling Fourth Revision

## 6.     Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

| 6.1.1   Local Service Calling Areas | | |
|---|---|---|
| Exhibit 6.1.1-1 Local Service Calling Areas (an asterisk * designates a noncontiguous exchange) | | |
| Exchange or Locality | Economy Local Service Calling Areas | Premium Local Service Calling Area (includes the Economy Local Service Calling Area) |
| Acton Locality | Acton, Limerick, Milton NH, Milton Mills NH, Sanbornville NH, Sanford | Lebanon, West Lebanon Locality* |
| Ashland | Ashland, Presque Isle | Eagle Lake (IC), Washburn |
| Augusta | Augusta, Belgrade, Gardiner, North Whitefield, Readfield, Sidney (IC), West Gardiner (IC), Winthrop (IC) | E. Vassalboro (IC), Palermo* (IC), S. China (IC), Waterville |
| Bangor | Bangor | Alton* (IC), Aurora* (IC), Bradford, Bucksport, Corinth, Eddington, Etna* (IC), Exeter* (IC), Hampden (IC), Hermon, Levant (IC), Newburgh* (IC), Old Town, Old Town Rural* (IC), Orono, Orrington, Otis* (IC), Stetson* (IC), Winterport* |
| Bar Harbor | | Bar Harbor, Ellsworth, Northeast Harbor, Southwest Harbor |
| Bath | Bath, Brunswick, Wiscasset | Bowdoinham, Richmond |
| Belfast | Belfast, Monroe, Searsport | Brooks (IC), Liberty* (IC), Lincolnville (IC), Lincolnville Beach (IC), Morrill (IC), Stockton Springs* (IC), Winterport |
| Belgrade | Augusta, Belgrade, Oakland | Mt. Vernon (IC), Readfield, Rome (IC), Sidney (IC) |
| Berwick Locality | Berwick Locality, Rochester NH, Somersworth NH, South Berwick, South Lebanon Locality | Dover NH*, Eliot Locality*, Lebanon, North Berwick |

(C)

(Issued: February 19, 2004)
Proposed Effective: March 20, 2004
Effective: March 20, 2004

Docket No. 2004-137

Edward B. Dinan
President-ME

PUC ME No. 15

Exchange and Network Services
Part A Section 6
Page 3
Third Revision
Canceling Second Revision

Verizon New England Inc.
d/b/a/ Verizon Maine

## 6.    Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

| 6.1.1 | Local Service Calling Areas | |
|---|---|---|
| **Exhibit 6.1.1-1** | | |
| **Local Service Calling Areas (an asterisk * designates a noncontiguous exchange)** | | |
| **Exchange or Locality** | **Economy Local Service Calling Area** | **Premium Local Service Calling Area (includes the Economy Local Service Calling Area)** |
| Biddeford | Biddeford, Goodwin's Mills, Kennbunk, Kennebunkport, Old Orchard Beach | Bar Mill (IC), Scarborough |
| Bingham | Bingham, The Forks | Athens (IC), Solon (IC) |
| Blue Hill | | Blue Hill, Castine, Ellsworth, Sedgwick |
| Boothbay Harbor | Boothbay Harbor, Wiscasset | Damariscotta (IC) |
| Bowdoinham | Bowdoinham, Brunswick, Lisbon Falls, Richmond | Bath, Litchfield (IC) |
| Bradford | Bangor, Bradford, Corinth | Alton (IC), Dover Foxcroft, Levant (IC), Milo, Old Town (IC) |
| Bridgton | Bridgton, Harrison | Casco (IC), Denmark (IC), Fryeburg (IC), Lovell (IC), Naples (IC), Raymond (IC), Sebago (IC) (C) (C) |
| Brownville | Brownville, Milo | Dover Foxcroft, Monson |
| Brunswick | | Brunswick, Bath, Bowdoinham, Freeport, Harpswell, Lisbon Falls |
| Bucksport | Bangor, Bucksport, Orrington | Castine, Eddington, Ellsworth, Stockton Springs (IC), Winterport (C) |
| Calais | Calais, St. Stephen N.B. (IC), Woodland | Eastport, Pembroke, Princeton |
| Camden | Camden, Lincolnville (IC), Lincolnville Beach (IC), Rockland | Dark Harbor*, Warren (IC), Union (IC) |
| Caribou | Caribou, Fort Fairfield, Limestone, New Sweden, Presque Island, Washburn | Van Buren |
| Castine | Castine, Blue Hill | Bucksport, Ellsworth, Sedgwick |

Edward B. Dinan
President-ME

(Issued: October 22, 2004)
Proposed Effective: November 21, 2004
Effective: Effective: November 21, 2004                    Docket No. 2004-746

PUC ME No. 15

Exchange and Network Services
Part A Section 6
Page 4
Second Revision
Canceling First Revision

Verizon New England Inc.
d/b/a Verizon Maine

# 6.    Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

### 6.1.1    Local Service Calling Areas

**Exhibit 6.1.1-1**
**Local Service Calling Areas (an asterisk * designates a noncontiguous exchange)**

| Exchange or Locality | Economy Local Service Calling Area | Premium Local Service Calling Area (includes the Economy Local Service Calling Area) | |
|---|---|---|---|
| Clinton | Clinton, Fairfield | Pittsfield, Skowhegan, Waterville*, Unity (IC) | |
| Columbia | Columbia, Jonesport, Milbridge | Beddington (IC), Jonesboro (IC), Machias | |
| Corinth | Bradford, Corinth | Bangor*, Dexter, Dover Foxcroft, Exeter (IC), Levant (IC) | |
| Cornish | Cornish, Limerick | Denmark (IC), Limington (IC), Fryeburg (IC), Sebago (IC), Steep Falls (IC) | |
| Cumberland | Cumberland, Portland, Yarmouth | Gray (IC), West Gray (IC)*, Pownal, Windham | |
| Danforth | Danforth, Wytopitlock | Houlton, Princeton | |
| Dark Harbor | Dark Harbor | Camden* | |
| Deer Isle | Deer Isle | Sedgwick, Frenchboro* (IC), Isle Au Haut* (IC), Matinicus* (IC), Swans Island* (IC) | (N) (N) |
| Dexter | Dexter, Guilford | Corinna (IC), Corinth (IC), Dover Foxcroft, Exeter (IC), Hartland (IC), West Ripley (IC) | |
| Dixfield | Dixfield, Rumford | Bryant Pond (IC), Canton (IC), Sumner (IC), Weld (IC), Wilton | |
| Dover-Foxcroft | Dover Foxcroft, Guilford | Bradford, Brownville, Corinth, Dexter, Milo, Monson | |
| East Millinocket | East Millinocket, Millinocket | Lincoln, Mattawamkeag (IC) | |
| Easton | | Easton, Fort Fairfield, Mars Hill, Presque Isle | |
| Eastport | Eastport, Pembroke | Calais | |
| Eddington | Bangor, Eddington | Aurora (IC), Bucksport, Ellsworth, Old Town, Orono, Otis (IC) | |
| Eliot Locality | Dover NH, Eliot Locality, Kittery Locality, South Berwick | Barrington NH*, Berwick Locality*, Durham NH*, Newmarket NH*, Rochester NH*, Somersworth NH*, South Lebanon Locality* | |
| Ellsworth | Bar Harbor, Blue Hill, Ellsworth, Southwest Harbor, Sullivan | Aurora* (IC), Bucksport, Castine, Eddington, Franklin*, Frenchboro* (IC), Isle Au Haut* (IC), Matinicus* (IC), Northeast Harbor*, Otis (IC), Swans Island* (IC) | (N) (N) (N) |

(Issued: August 4, 2006)
Proposed Effective: September 3, 2006
Effective: September 3, 2006

Docket No. 2006-128
To be implemented on September 4, 2006.

Edward B. Dinan
President-ME

PUC ME No. 15

Exchange and Network Services
Part A Section 6
Page 5
Second Revision
Cancelling First Revision

Verizon New England Inc.
d/b/a/ Verizon Maine

## 6.    Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

| 6.1.1    Local Service Calling Areas | | |
|---|---|---|
| Exhibit 6.1.1-1 Local Service Calling Areas (an asterisk * designates a noncontiguous exchange) | | |
| Exchange or Locality | Economy Local Service Calling Area | Premium Local Service Calling Area (includes the Economy Local Service Calling Area) |
| Fairfield | Clinton, Fairfield, Oakland, Waterville | Albion (IC), Norridgewock (IC), Skowhegan, Unity (IC) |
| Farmington | Farmington, Wilton | Livermore Falls, Madison, Mercer (IC), Mt. Vernon (IC), New Vineyard (IC), Rome IC), Strong (IC), Weld (IC) |
| Fort Fairfield | | Caribou, Easton, Fort Fairfield, Limestone, Presque Isle |
| Franklin | Franklin, Sullivan | Aurora (IC), Beddington (IC), Ellsworth* |
| Freeport | Brunswick, Freeport, Pownal, Yarmouth | Lisbon Falls, Portland* |
| Frenchville | Frenchville, Madawaska | Fort Kent (IC), Grand Isle |
| Gardiner | Augusta, Gardiner, Richmond, West Gardiner (IC) | Litchfield (IC), North Whitefield |
| Goodwin's Mills | Biddeford, Goodwin's Mills | Bar Mills (IC), Kennebunk, Sanford, Waterboro (IC) |
| Gorham | Gorham, Portland, Scarborough, Westbrook, Windham | Bar Mills (IC), Standish (IC), West Buxton (IC) |
| Grand Isle | Grand Isle, Madawaska, Van Buren | Frenchville |
| Greenville | Greenville, Rockwood | Monson |
| Guilford | Dexter, Dover-Foxcroft, Guilford, Monson | Harmony (IC), W. Ripley (IC) |
| Harpswell | | Brunswick, Harpswell |
| Harrison | Bridgton, Harrison, Norway | Bethel (IC), Casco (IC), Lovell (IC), Naples (IC), North Lovell (IC), North Norway (IC), Oxford |
| Hermon | Bangor, Hermon | Etna (IC), Hampden (IC), Levant (IC), Newburg (IC), Stetson (IC) |
| Houlton | Houlton | Danforth, Island Falls (IC), Mars Hill, Smyrna Mills (IC) | (C) |
| Jackman | Jackman | The Forks |

(Issued: December 4, 2003)
Proposed Effective: December 15, 2003
Effective: December 15, 2003

Docket No. 2003-483
To be implemented on December 15, 2003.

Edward B. Dinan
President-ME

PUC ME No. 15

Verizon New England Inc.
d/b/a/ Verizon Maine

Exchange and Network Services
Part A Section 6
Page 6
Third Revision
Canceling Second Revision

## 6.    Local Service Areas and Other Exchange Services
## 6.1   Local Service Areas

| 6.1.1 | Local Service Calling Area | |
|---|---|---|
| **Exhibit 6.1.1-1** | | |
| **Local Service Calling Areas and (an asterisk * designates a noncontiguous exchange)** | | |
| **Exchange or Locality** | **Economy Local Service Calling Area** | **Premium Local Service Calling Area (includes the Economy Local Service Calling Area)** |
| Jonesport | Columbia, Jonesport | Jonesboro (IC) |
| Kennebunk | Biddeford, Kennebunk, Kennebunkport, Wells | Goodwin's Mills, Sanford |
| Kennebunkport | | Biddeford, Kennebunk, Kennebunkport |
| Kittery Locality | Eliot Locality, Kittery, Portsmouth NH, Rye Beach NH, York | South Berwick |
| Lebanon | Lebanon, North Berwick, Sanford | Acton, Berwick Locality, South Lebanon Locality, West Lebanon Locality |
| Lewiston | Greene (IC), Lewiston, Lisbon falls, Mechanic Falls, Poland (IC), Sabattus | Buckfield* (IC), Hebron (IC), Leeds* (IC), New Gloucester (IC), Turner (IC), |
| Limerick | Acton Locality, Cornish, Limerick, Sanford | Limington, Waterboro |
| Limestone | Caribou, Fort Fairfield, Limestone | Van Buren |
| Lincoln | Lincoln | East Millinocket, Kingman* (IC), Lee* (IC), Mattawamkeag (IC), West Enfield (IC) |
| Lisbon Falls | Bowdoinham, Brunswick, Lewiston, Lisbon Falls | Freeport, Litchfield, New Gloucester (IC), Pownal, Sabattus |
| Livermore Falls | Livermore Falls, Readfield, Wilton | Canton (IC), Farmington, Leeds (IC), Mt. Vernon (IC), Turner (IC) |
| Lubec | Lubec | Machias, Pembroke, Campobello Island, N.B. (IC) |
| Machias | Machias | Beddington (IC), Columbia, Jonesboro (IC), Lubec, Pembroke |
| Madawaska | | Edmundston N.B. (IC), Frenchville, Grand Isle, Madawaska |
| Madison | North Anson (IC), Madison, Skowhegan | Athens (IC), Embden Lake* (IC), Farmington, New Vineyard (IC), Norridgewock (IC), North New Portland (IC), Mercer (IC), Solon (IC) |

(Issued: December 4, 2003)
Proposed Effective: December 15, 2003
Effective: December 15, 2003

Docket No. 2003-483
To be implemented on December 15, 2003.

Edward B. Dinan
President-ME

PUC ME No. 15

Exchange and Network Services
Part A Section 6
Page 7
Third Revision
Canceling Second Revision

Verizon New England Inc.
d/b/a/ Verizon Maine

## 6.    Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

| 6.1.1    Local Service Calling Area | | |
|---|---|---|
| **Exhibit 6.1.1-1** | | |
| **Local Service Calling Areas (an asterisk * designates a noncontiguous exchange)** | | |
| Exchange or Locality | Economy Local Service Calling Area | Premium Local Service Calling Area (includes the Economy Local Service Calling Area) |
| Mars Hill | Easton, Mars Hill, Presque Isle | Houlton |
| Mechanic Falls | Lewiston, Mechanic Falls | Hebron (IC), Oxford, Poland (IC)    (C) |
| Milbridge | Columbia, Milbridge | Beddington (IC), Winter Harbor |
| Millinocket | | East Millinocket, Millinocket |
| Milo | Brownville, Milo | Alton (IC), Bradford, Dover Foxcroft, West Enfield (IC) |
| Monroe | Belfast, Monroe | Brooks (IC), Newburgh (IC), Winterport |
| Monson | Guilford, Monson | Brownville, Dover Foxcroft, Greenville, Fort Kent (IC), Van Buren, Washburn |
| New Sweden | Caribou, New Sweden | |
| Newport | Newport, Pittsfield | Corinna (IC), Etna (IC), Hartland (IC), Plymouth (IC) Stetson (IC) |
| North Berwick | Lebanon, North Berwick, Sanford, South Berwick | Berwick Locality, Wells, York |
| Northeast Harbor | Bar Harbor, Northeast Harbor, Southwest Harbor | Ellsworth* |
| North Whitefield | Augusta, North Whitefield | Damariscotta (IC), Gardiner, Palermo (IC), Richmond, Sheepscott (IC), South China (IC), Waldoboro, Washington (IC) |
| Norway | Harrison, North Norway (IC), Norway, Oxford | Buckfield (IC), Hebron (IC), West Paris (IC) |
| Oakland | Belgrade, Fairfield, Oakland, Sidney (IC), Waterville | Norridgewock (IC), Rome (IC), Smithfield (IC) |
| Old Orchard Beach | Biddeford, Old Orchard Beach | Portland*, Scarborough |
| Old Town | Alton (IC), Bangor, Old Town, Old Town Rural (IC), Orono | Aurora (IC), Bradford, Eddington, West Enfield (IC) |
| Orono | Bangor, Old Town, Old Town Rural (IC), Orono | Eddington |

(Issued: December 4, 2003)
Proposed Effective: December 15, 2003
Effective: December 15, 2003

Docket No. 2003-483
To be implemented on December 15, 2003.

Edward B. Dinan
President-ME

PUC ME No. 15

Exchange and Network Services
Part A Section 6
Page 8
Ninth Revision
First Draft of Eighth Revision

Verizon New England Inc.
d/b/a Verizon Maine

# 6.     Local Service Areas and Other Exchange Services
## 6.1     Local Service Areas

### 6.1.1     Local Service Calling Area

**Exhibit 6.1.1-1**
**Local Service Calling Areas (an asterisk * designates a noncontiguous exchange)**

| Exchange or Locality | Economy Local Service Calling Area | Premium Local Service Calling Area (includes the Economy Local Service Calling Area) | |
|---|---|---|---|
| Orrington | Bangor, Bucksport, Orrington, Winterport | Hampden (IC) | |
| Oxford | Norway, Oxford | Casco (IC), Harrison, Hebron (IC), Mechanic Falls, Poland (IC) | |
| Pembroke | Eastport, Pembroke | Calais, Lubec, Machias | |
| Pittsfield | Newport, Pittsfield | Clinton, Hartland (IC), Plymouth (IC), Skowhegan, Unity (IC) | |
| Portland | Portland | Bar Mills* (IC), Cumberland, Freeport*, Gorham, New Gloucester* (IC), Old Orchard Beach*, Pownal*, Scarborough, Waterboro* (IC), Westbrook, West Buxton* (IC), Windham, Yarmouth, Gray (IC), West Gray (IC) | (N) (N) |
| Pownal | Freeport, Pownal, Yarmouth | Gray/West Gray (IC), Cumberland, Lisbon Falls, New Gloucester (IC), Portland*. | |
| Presque Isle | | Ashland, Caribou, Easton, Fort Fairfield, Mars Hill, Presque Isle, Washburn | |
| Princeton | Princeton, Woodland | Calais, Danforth, Vanceboro | |
| Rangeley | Rangeley | Moosehorn (IC), Phillips (IC), Stratton (IC) | |
| Readfield | Augusta, Livermore Falls, Readfield | Belgrade, Leeds (IC), Monmouth (IC), Mt. Vernon (IC), Winthrop (IC) | |
| Richmond | Bowdoinham, Gardiner, Richmond | Bath, Litchfield (IC), North Whitefield, Sheepscott (IC), Wiscassett | |
| Rockland | Camden, Rockland, Tenants Harbor, Thomaston, Vinal Haven | Frenchboro* (IC), Isle Au Haut* (IC), Matinicus* (IC), Swans Island* (IC), Union* (IC), Warren* (IC), Washington* (IC) | (N) (N) |
| Rockwood | | Greenville, Rockwood | |
| Rumford | Dixfield, Rumford | Andover (IC), Bethel (IC), Bryant Pond (IC), Locke Mills (IC), Roxbury Pond (IC), Weld (IC) | |
| Sabattus | Lewiston, Sabattus | Greene (IC), Litchfield (IC), Lisbon Falls, Monmouth (IC) | |

Edward B. Dinan
President-ME

(Issued: September 6, 2006)
Proposed Effective: September 9, 2006          Docket No. 2006-516
Effective: September 9, 2006

PUC ME No. 15

Verizon New England Inc.
d/b/a Verizon Maine

# 6.    Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

**6.1.1    Local Service Calling Area**

### Exhibit 6.1.1-1
Local Service Calling Areas (an asterisk * designates a noncontiguous exchange)

| Exchange or Locality | Economy Local Service Calling Area | Premium Local Service Calling Area (includes the Economy Local Service Calling Area) | |
|---|---|---|---|
| Sanford | Acton Locality, Lebanon, Limerick, North Berwick, Sanford | Goodwin's Mills, Kennebunk, Waterboro (IC), Wells | |
| Scarborough | Gorham, Portland, Scarborough | Bar Mills (IC), Biddeford, Old Orchard Beach, Westbrook* | |
| Searsport | Belfast, Searsport | Stockton Springs (IC), Winterport | |
| Sedgwick | Blue Hill, Sedgwick | Castine, Deer Isle | |
| Skowhegan | Madison, Skowhegan | Athens (IC), Clinton, Embden Lake* (IC), Fairfield, Hartland (IC) Norridgewock (IC), North Anson* (IC), Pittsfield, Solon (IC) | |
| South Berwick | Dover NH, Eliot Locality, Somersworth NH, Berwick Locality, North Berwick, South Berwick | Kittery Locality*, York | |
| South Lebanon Locality | Berwick Locality, Milton NH, Rochester, NH, South Lebanon Locality, West Lebanon Locality | Barrington NH*, Dover NH*, Eliot Locality*, Lebanon, Somersworth NH* | |
| Southwest Harbor | | Bar Harbor, Ellsworth, Frenchboro* (IC), Isle Au Haut* (IC), Matinicus* (IC), Northeast Harbor, Southwest Harbor, Swans Island* (IC) | (N) ↕ (N) |
| Sullivan | Ellsworth, Franklin, Sullivan, Winter Harbor | Aurora (IC) | |
| Tenants Harbor | | Rockland, Tenants Harbor, Thomaston | |
| The Forks | Bingham, The Forks | Jackman | |
| Thomaston | Rockland, Tenants Harbor, Thomaston, Waldoboro | Warren (IC) | |
| Van Buren | Grand Isle, St. Leonard N.B. (IC), Van Buren | Caribou, Limestone, New Sweden | |
| Vanceboro | McAdam N.B. (IC), Vanceboro | Princeton | |

(Issued: August 4, 2006)
Proposed Effective: September 3, 2006
Effective: September 3, 2006

Docket No. 2006-128
To be implemented on September 4, 2006.

Edward B. Dinan
President-ME

PUC ME No. 15

Verizon New England Inc.
d/b/a/ Verizon Maine

Exchange and Network Services
Part A Section 6
Page 10
First Revision
Canceling Original

## 6.    Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

**6.1.1    Local Service Calling Area**                                    (C)

**Exhibit 6.1.1.1**
**Local Service Calling Areas (an asterisk * designates a noncontiguous exchange)**

| Exchange or Locality | Economy Local Service Calling Area | Premium Local Service Calling Area (includes the Economy Local Service Calling Area) |
|---|---|---|
| Vinal Haven | | Rockland, Vinal Haven |
| Waldoboro | Thomaston, Waldoboro | Bremen (IC), Damariscotta (IC), North Whitefield, Warren (IC), Washington (IC), Union (IC) |
| Washburn | Caribou, Presque Isle, Washburn | Ashland, New Sweden |
| Waterville | Fairfield, Oakland, Sidney (IC), Waterville | Albion (IC), Augusta, China (IC) Clinton*, East Vassalboro (IC), Norridgewock* (IC) |
| Wells | Kennebunk, Wells, York | North Berwick, Sanford |
| West Lebanon Locality | Milton NH, Milton Mills NH, Rochester NH*, South Lebanon Locality, West Lebanon | Acton Locality*, Lebanon |
| Westbrook | Gorham, Portland, Westbrook, Windham | Scarborough* |
| Wilsons Mills Locality | Errol NH, Milan NH*, Wilson's Mills | Upton (IC) |
| Wilton | Farmington, Livermore Falls, Wilton | Canton (IC), Dixfield, Weld (IC) |
| Windham | Gorham, Portland, Westbrook, Windham | Cumberland, Gray/West Gray (IC), Raymond (IC), Standish (IC) |
| Winter Harbor | Sullivan, Winter Harbor | Milbridge |
| Winterport | Orrington, Winterport | Bangor*, Belfast, Bucksport, Hampden (IC), Newburg (IC), Monroe, Searsport, Stockton Springs (IC) |
| Wiscasset | Bath, Boothbay Harbor, Wiscasset | Damariscotta, Richmond, Sheepscot |
| Woodland | | Calais, Princeton, Woodland |
| Wytopitlock | Danforth, Wytopitlock | Kingman |
| Yarmouth | Cumberland, Freeport, Portland, Pownal, Yarmouth | Gray*/West Gray* (IC) |
| York | Kittery Locality, Wells, York| | North Berwick, Portsmouth NH*, South Berwick |

(C)

Edward B. Dinan
President-ME

(Issued: October 16, 2003)
Proposed Effective: November 15, 2003
Effective: Effective: November 15, 2003
Docket No. 2003-483
To be implemented on December 15, 2003.

PUC ME No. 15

Verizon New England Inc.
d/b/a/ Verizon Maine

Exchange and Network Services
Part A Section 6
Page 11
Second Revision
Canceling First Revision

## 6.    Local Service Areas and Other Exchange Services
## 6.1    Local Service Areas

### 6.1.1    Local Service Calling Areas

**Exhibit 6.1.1-2**
**Local Service Independent Telephone Company Exchanges**

| Independent Telephone Company | Exchange |
|---|---|
| China | China, East Vassalboro, South China |
| Cobbossecontee | West Gardiner |
| Community Service | Greene, Leeds, Litchfield, Monmouth, Mt. Vernon, Winthrop |
| Hampden | Etna, Hampden |
| Hartland and St. Albans | Harmony, Hartland, West Ripley |
| Lincolnville | Lincolnville, Lincolnville Beach |
| Maine | Casco, Naples, Poland, Raymond |
| Mid-Maine | Alton, Levant, Old Town Rural, Plymouth, West Enfield |
| New Brunswick | Edmundston N.B., McAdam N.B., St. Leonard N.B., St. Stephen N.B. |
| Northland | Brooks, Eagle Lake, Fort Kent, Fryeburg, Kingman, Lee, Liberty, Lovell, North Lovell, Mattawamkeag, Morrill, Palermo, Smyrna Mills, Stockton Springs, Washington |
| Oxford County | Buckfield, Canton, Turner, West Paris, Sumner |
| Oxford West | Andover, Bethel, Bryant Pond, Hebron, Locke Mills, North Norway, Roxbury Pond, Upton |
| Pine Tree | Gray, New Gloucester, West Gray |
| Saco River | Bar Mills, Waterboro, West Buxton |
| Sidney | Sidney |
| Somerset | Athens, Embden Lake, New Vineyard, Norridgewock, North Anson, North New Portland, Mercer, Moosehorn, Phillips, Rome, Smithfield, Solon, Stratton, Strong, Weld |
| Standish | Denmark, Limington, Sebago, Standish, Steep Falls |
| Tidewater | Bremen, Damariscotta, Sheepscot, Union |
| Unitel | Albion, Newburgh, Unity |
| Union River | Aurora, Beddington, Otis |
| Warren | Warren |
| West Penobscot | Corinna, Exeter, Jonesboro, Stetson |

(C)

(Issued: February 19, 2004)
Proposed Effective: March 20, 2004
Effective: March 20, 2004

Docket No. 2004-137

Edward B. Dinan
President-ME

65-407     PUBLIC UTILITIES COMMISSION

Chapter 204:   BASIC SERVICE CALLING AREAS

SUMMARY: This Chapter establishes the criteria and the procedures that the Commission and Local Exchange Carriers designated as Eligible Telecommunications Carriers will follow to establish and change basic service calling areas.

## TABLE OF CONTENTS

SECTION 1:   PURPOSE AND APPLICABILITY..................................................................3

    A.    Purpose.................................................................................................3

    B.    Applicability..........................................................................................3

SECTION 2:   DEFINITIONS.......................................................................................3

SECTION 3:   BASIC SERVICE CALLING AREA OPTIONS...............................................5

    A.    Customer Options for Basic Service Calling Areas...................................5

        1.    Options Available Following Additions to BSCA................................5

        2.    Options Available After Additions to BSCA If Home Exchange Had Only Premium Option.....................................................................5

    B.    Selection by Customers.........................................................................6

    C.    Unavailability of Options When Options Identical ..................................6

    D.    Municipal Calling .................................................................................6

SECTION 4:   IMPLEMENTATION OF BSCA OPTIONS ...................................................6

    A.    Filing of Rate Schedules and Terms and Conditions................................6

    B.    Customer Notice ..................................................................................6

    C.    Directory Notice...................................................................................7

    D.    Implementation Dates Basic Service Calling Area Options .......................7

    E.    Telephone Directories...........................................................................7

SECTION 5:   RATES FOR BASIC-SERVICE CALLING AREA OPTIONS ............................7

A.    Rates for BSCA Options ........................................................................ 7

    1.    Exchanges .................................................................................... 7

    2.    Options ......................................................................................... 8

B.    Per Minute Rates for BSCA Exchanges Outside the Flat-Rate Calling Area .................... 8

C.    Tracking Account and Filing Requirements for New or Revised Options; Subsequent Rate Adjustments ........................................................ 8

    1.    Tracking Account ...................................................................... 8

    2.    Reporting Requirements; Rate Adjustments ............................. 8

SECTION 6:    REQUESTS FOR CHANGES TO BSCAS AND CALLING OPTIONS ...................... 9

A.    Requests by Local Exchange Carriers ...................................................... 9

B.    Requests by Customers ............................................................................ 9

C.    Standards Applicable to Requests for Modification .............................. 10

    1.    Calling Volumes ...................................................................... 10

    2.    Other Considerations .............................................................. 10

SECTION 7:    WAIVERS ............................................................................................ 10

## SECTION 1.   PURPOSE AND APPLICABILITY

A.     **Purpose.** The purpose of this Chapter is to create a statewide system for establishing basic service calling areas (BSCAs) and calling options within those BSCAs that permit customers to select calling rates and rate structures suited to their calling patterns.

B.     **Applicability.** This Chapter applies to all local exchange carriers that are subject to the Commission's jurisdiction and that the Commission has designated as "Eligible Telecommunications Carriers."

## SECTION 2.   DEFINITIONS

A.     **Basic-Service Calling Area.** "Basic-Service Calling Area" (BSCA) is the local (non-interexchange) calling area of the "home exchange" of a customer of a "local exchange carrier," as defined in this section. The BSCA includes all exchanges that were in the BSCA prior to the amendments effective in December 2002 plus all exchanges that are contiguous to the home exchange that were not included prior to the December 2002 amendments. Within a BSCA, there may be Economy and Premium calling options with flat-rate and per-minute pricing as specified in the definitions of those options and in Section 5. For all options, the BSCA includes all of the exchanges that are included in the calling option with the largest flat-rate calling area.

B.     **Commission.** "Commission" means the Maine Public Utilities Commission.

C.     **Contiguous Exchange.** An exchange is "contiguous" to another exchange if any portions of the exchange boundaries of the two exchanges touch each other. If the boundaries touch each other only in a body of water, the two exchanges shall not be considered contiguous for the purpose of this Chapter unless a bridge or causeway capable of carrying motor vehicle traffic crosses the body of water and connects land portions of the two exchanges.

D.     **Customer.** For the purpose of this chapter, a "Customer" is a person who has an account for basic local exchange telephone service in Maine from a local exchange carrier.

E.     **December 2002 Amendments.** "December 2002 amendments" refers to the amendments to Chapter 204 effective in December 2002, pursuant to the rulemaking proceeding in Docket Number 2001-865.

F.     **Economy Calling Option.** The "Economy Calling Option" is a basic-service calling area option that has a flat monthly rate for unlimited calling within the home exchange and, unless otherwise ordered by the Commission, all exchanges that were included in the home exchange's Economy calling area immediately before the December 2002 amendments, and a per-minute charge for calls to other exchanges within the BSCA. If an exchange is served by more than one central office or wire center and its Premium calling area includes more than 50,000 access lines, the Economy calling area is the home exchange.

G.  **Eligible Telecommunications Carrier (ETC).** An "Eligible telecommunications carrier" is a local exchange carrier designated by the Commission pursuant to 47 U.S.C. § 214(e) as an eligible telecommunications carrier for the purpose of receiving universal service funding pursuant to 47 U.S.C. § 254.

H.  **Exchange.** "Exchange" is a specific geographic area with boundaries established by a Telephone Utility's service area maps on file with the Commission as part of the Utility's Terms and Conditions. An exchange may include one or more wire centers or central offices.

I.  **Home Exchange.** The "Home exchange" is the exchange in which the customer's telephone line is located and from which the customer receives local exchange service. For the purpose of this Chapter, if a customer subscribes to foreign exchange service, the "foreign" exchange shall be considered a "home" exchange for that customer. All customers of a "home" exchange may choose one of the basic-service calling area options available in that exchange if more than one is available..

J.  **Local Exchange Carrier (LEC).** For the purpose of this Chapter, "Local exchange carrier" or "LEC" means a telephone utility, as defined by 35-A M.S.R.A. § 102 (19), that provides local exchange service and is designated by the Commission as an "eligible telecommunications carrier." A local exchange carrier provides loop and local switching services, to customers in an exchange, either directly or through resale.

K.  **Municipal Calling.** "Municipal Calling" is provided to all customers of a local exchange carrier as part of basic local exchange service and allows a customer to call all other customers located in the municipal civil division in which the calling customer receives telephone service without incurring additional charges, regardless of the exchange that serves the telephone lines of the other customers.

L.  **Premium Option.** The "Premium Option" is a Basic Service Calling Area option that has a flat monthly rate for unlimited calling from the Home Exchange to the all of the exchanges within the BSCA. Exchanges in which the Premium and the Economy options are identical are classified as having only a Premium calling area.

M.  **Rate Group.** A "rate group" is a rate classification for local exchange service contained in the terms and conditions of a local exchange carrier. A rate group typically classifies rates for the home exchange according to the number of lines that may be called within the BSCA of the home exchange.

N.  **Residential Customer.** A "residential customer" is a customer who has telephone service at a dwelling and the service is used primarily for domestic or social purposes. All other customers are non-residential customers.

O.  **School Administrative Unit.** "School Administrative Unit" is defined in 20-A M.R.S.A. § 1(26). For the purpose of this Chapter, a School Administrative Unit includes School Administrative Districts (SADs), as defined in 20-A M.R.S.A. § 1(25) and Community School Districts, as defined in 20-A M.R.S.A. §§ 1(5) and 1601(1).

P.     **Service Center.** A "Service Center" is a town or city designated by the Maine State Planning Office (SPO) as a regional service center in Chapter 220 of its rules, Methodology For Identification of Regional Service Centers.

Q.     **Single Exchange BSCA.** A "single exchange BSCA" is a Basic-Service Calling Area that includes only the home exchange.

## SECTION 3.     BASIC SERVICE CALLING AREA OPTIONS

A.     **Customer Options for Basic Service Calling Areas.**

1.     **Options Available Following Additions to BSCA.**

   a.     **General Rule.** When additional exchanges are added to a BSCA (including pursuant to the December 2002 amendment to this Chapter that requires the inclusion of all contiguous exchanges), flat-rate unlimited calling to those exchanges shall be included in the exchange's Premium calling option rather than the Economy option.

   b.     **Proposal for Exception.** The Commission may grant an exception to the general rule contained in sub-paragraph (a) if it concludes that the inclusion of flat-rate unlimited calling to the new exchanges in the Premium option, rather than in the Economy option, is likely to result in a rate for the Premium Option that is so high that it is likely to deter customers from subscribing to the option. If a LEC proposes this exception, it shall first establish that it cannot address the matter through the rate design for the two options pursuant to Section 5(A). Pursuant to this exception, the Commission may order that flat-rate unlimited calling to some or all of the additional exchanges be added to the Economy option.

2.     **Options Available After Additions to BSCA If Home Exchange Had Only Premium Option.**

   a.     **General Rule.** If, prior to the addition of a new exchange to a BSCA, the home exchange had only a Premium option, the revised Premium option will provide flat-rated unlimited calling to the entire BSCA, and the previous Premium option will become the flat-rated unlimited calling area of the Economy option.

   b.     **Proposal for Exception.** At the request of a LEC or other person, the Commission may order that the LEC continue to provide only the premium option if, under the two options, there would be only a minimal difference between the number of exchanges and access lines available on a flat-rate unlimited calling basis.

B.   **Selection by Customers.** A customer of a local exchange carrier may choose from the following options if both are available in the customer's home exchange:

    1.   Premium Option, priced at a flat monthly rate for unlimited calling to all of the exchanges included in the BSCA; and

    2.   Economy Calling Area Option, priced at a flat monthly rate for unlimited calling within the exchanges included in the flat-rated portion of the Economy option and at a per-minute rate for calls made to all other exchanges within the BSCA.

C.   **Unavailability of Options When Options Identical.** If, in a home exchange, both options as defined in Section 2 are identical, the option in that exchange will be classified as Premium.

D.   **Municipal Calling.** Subscribers to all calling options shall receive municipal calling without incurring interexchange toll charges or per-minute charges established pursuant to Section 5(B) of this Chapter.

## SECTION 4.   IMPLEMENTATION OF BSCA OPTIONS

A.   **Filing of Rate Schedules and Terms and Conditions.** Within 56 days (8 weeks) following the establishment of any new or changed BSCA, or any additional calling option within a BSCA, each LEC shall file any necessary change to its rate schedules and terms and conditions.

B.   **Customer Notice.** Within 56 days (8 weeks) following Commission approval of any changes in rates or terms and conditions filed pursuant to Section 4(A), Local Exchange Carriers shall send a notice to each customer served by a home exchange in which a change to a BSCA or to a calling option will take place. The LEC shall provide a copy of the notice to the Commission. The notice will provide the following information:

    1.   A description of the Economy and Premium options, a list of the exchanges included in each option, and the rates for each option, including the flat rates under each option for unlimited calling to the exchanges for which the flat rates apply, and the per-minute rate for calls to the exchanges in the Economy option for which per-minute rates apply;

    2.   A statement that the customer is entitled to receive municipal calling regardless of which option the customer chooses; and information about:

        a.   How to obtain municipal calling if the customer is presubscribed to interexchange service other than that provided by or through the local exchange carrier; and

        b.   How to obtain municipal calling or corrections to bills if the customer is presubscribed to interexchange service provided by or through the local exchange carrier and interexchange toll or per-minute BSCA charges for

calls within the customer's municipality incorrectly appear on the customer's bill;

3.   A statement that sets a deadline of 56 days (8 weeks) from the mailing of the notice and that advises customers that they may select the Economy or the Premium option prior to the deadline and informs customers of the default option if they do not select. Unless otherwise ordered by the Commission, whenever there is a change in the BSCA options in a home exchange, the default option for customers who have subscribed to an option at the time of change is the option to which a customer is then subscribed.

C.   **Directory Notice.** The information contained in §§4(B)(1) and (2) will appear in the introductory pages of all LEC telephone directories.

D.   **Implementation** Date. Companies will implement Economy and Premium options within 35 days following the deadline for customers to choose a BSCA option under Section 4(B).

E.   **Telephone Directories.** LECs must distribute annually to each customer, at no charge, a telephone directory or directories that include(s) the "white" alphabetical listings for each exchange in the customer's BSCA.

## SECTION 5.   RATES FOR BASIC SERVICE CALLING AREA OPTIONS

A.   **Rates for BSCA Options**

When a LEC implements new or modified BSCAs, it may propose monthly Economy and Premium option rates for the recovery of additional equipment and administrative costs and revenue losses resulting from the provision of the new or modified BSCA calling options. The Commission shall review and approve the rates. Beyond any rate increase that may occur as a result of a change in a home exchange's rate group, rate increases shall apply to a specific exchange or to several exchanges and to each option as follows:

1.   **Exchanges.** When the BSCA of a home exchange is increased, the LEC may propose:

a.   Rates for the home exchange that will recover the costs and revenue losses that occur as a result of the change in the BSCA; or

b.   Rates for other exchanges that, in combination with rate increases for the home exchange, will recover some of the costs and revenue losses if the rates for the home exchange under sub-paragraph a would be substantially higher than rates for other exchanges served by the LEC that have equivalent calling areas; or

c.   Rates for all or most of the LEC's exchanges that will recover the costs and revenue losses associated with the change in BSCA when it applies

generally to all or most of the LEC's exchanges, as when a change in this Chapter requires a systematic change in the definition of BSCAs or calling options.

2.   **Options.** Generally, when the number of exchanges in a BSCA increases, the rates of the option that receives the greater change in flat-rate unlimited calling should increase by a relatively greater amount than the rates for the other option. A LEC may propose a different balance if:

a.   Increasing the rates for the economy option would result in rates for the two options that are too similar; or

b.   The rates for the premium option would be so high that they would be likely to deter customers from subscribing to that option.

B.   **Per-Minute Rates for BSCA Exchanges Outside the Flat-Rate Calling Area.** Calls made from the home exchange to exchanges that are within the BSCA but not included in the flat-rate unlimited-calling portion of the Economy option shall be priced at five cents per minute for customers who subscribe to the Economy option unless the call is to the same municipality. Once each year, the Commission, after reviewing competitive interexchange market conditions, may adjust the rate.

C.   **Tracking Account and Filing Requirements for New or Revised Options; Subsequent Rate Adjustments.**

1.   **Tracking Account.** Each LEC must maintain a tracking account, by exchange, that records the revenue effects of the BSCA options for the first 12 months after any changes to the BSCA or after BSCA options have been implemented or updated.

2.   **Reporting Requirements; Rate Adjustments.** Within 56 days (8 weeks) after the 12-month tracking period, the Company must file a written report with the Commission that shows the revenue effects of the BSCA options for the first 12 months after a change to the BSCA or after a BSCA calling option has been added or changed. If the tracking account has a positive balance, the LEC must file a proposal to return the excess to customers and to lower prospective rates with its report. If the tracking account has a negative balance, the LEC may file proposed rates for Commission review to recover the shortfall that occurred during the 12-month deferral period and for the period following the 12-month deferral period but prior to the effective date of any revised rates, and to adjust prospective rates to avoid a similar revenue shortfall in the future. Following review, the Commission, as provided in 35-A M.R.S.A. § 1306(1), may approve or disapprove the proposed rates or may substitute other rates that it finds are just and reasonable.

**SECTION 6.   REQUESTS FOR CHANGES TO BSCAs AND CALLING OPTIONS**

A.   **Requests by Local Exchange Carrier.** A LEC may ask the Commission to modify the BSCA for an exchange or any calling option for that exchange, notwithstanding any other provision of this Chapter.

1.   **Contents of Request.** The LEC must make the request in writing. The request must explain and justify why the Commission should grant the request, must propose a reasonable alternative to any requirement of the Rule that the LEC has proposed should not apply, and must describe how granting the request would be consistent with the purpose of this Rule. The LEC must send a copy of the request to the Public Advocate.

2.   **Consideration by Commission.** The Commission will determine whether and how to solicit comments from interested persons. The Commission, at its discretion, may hold a hearing. The Commission will consider the LEC's written request, any comments or testimony, or other evidence, and the standards contained in subsection C, in determining whether to grant, deny, or modify the request.

B.   **Requests by Customers.** Customers may request the Commission to modify the BSCA for an exchange or any calling option for that exchange, notwithstanding any other provision of this Chapter. Customers must first ask the LEC to attempt to resolve their concerns. If the LEC is unable or unwilling to resolve the customers' concerns, the customers may request the Commission to change the BSCA of a home exchange or the calling options available in that exchange as follows:

1.   **Form of Request.** Fifty customers in the same exchange may request a modification to the BSCA for that exchange or to calling options for that BSCA. The customers must make the request in writing, and must include the names, addresses, telephone numbers, and signatures of each customer of the exchange who is making the request. The request must identify the lead customer, who will serve as the principal point of contact for the petitioners. The request should set forth the circumstances justifying the request, including any efforts made by the petitioners to obtain relief from the LEC.

2.   **Procedure for Requests from Customers in a Single Exchange BSCA.** For requests from customer in a single exchange BSCA, the Commission will open a proceeding to investigate expanding the BSCA that is the subject of the request and will hold at least one public hearing. Within six (6) months of the filing of the written petition, the Commission will issue an order that either expands the BSCA or states the Commission's reasons for declining to expand the basic service calling area. In making its determination, the Commission will consider the customers' written request, and any comments, testimony, or other evidence, and the standards contained in subsection C.

3.   **Procedure for Requests from Customers in Other Exchanges.** For requests from customers from an exchange that is not a single exchange BSCA, the Commission will determine whether and how to solicit comments from

interested persons. The Commission, at its discretion, may hold a hearing. The Commission will consider the customers' written request, any comments, testimony or other evidence, and the standards contained in subsection C, in determining whether to grant, deny, or modify the request.

C.    **Standards Applicable to Requests for Expansion.**

    1.    **Calling Volumes.** The Commission may require the affected LEC(s) to conduct a study of residential customer calling volumes to any exchange that the LEC or customers have requested be included in a BSCA option. If, in a representative month, residential customers in the home exchange make an average of three calls a month, and 40% of those customers make two or more calls a month to the requested exchange, the Commission shall grant the request for the change in the BSCA unless it finds good cause to deny the request.

    2.    **Other Considerations.** The Commission shall apply the following standards to requests submitted under this Section. The Commission may grant a request for the expansion of the BSCA or for the addition of exchanges on a flat-rate unlimited-calling basis to one of the calling options for the BSCA if it determines that a sufficient community of interest exists between the community or communities located in the customers' home exchange and the community or communities located in the exchanges that the customers propose to add to the basic-service calling area or to a calling option, and if the Commission determines that the benefits are not outweighed by other factors. In determining whether a sufficient community of interest exists, the Commission will consider both social and economic factors including, but not limited to, the extent of the relationship between the two communities, employment patterns, the location of medical service providers, the location of regional service centers, the location of schools, the municipalities and other areas that are included in school administrative units, the percentage of people from the exchange requesting the modification, the seasonality of calling patterns, the level of community sentiment, whether the exchange is a "skipped-over" exchange, and the level of disparity between customers making a large number of calls to the proposed community and customers making no calls to that community. Other factors the Commission may consider in deciding whether to grant a customer request include, but are not limited to, the availability of optional toll calling plans and the number of subscribers to those plans, the number of lines currently served, the cost, revenue and rate impacts of expanding the calling area, and the availability of alternatives to traditional telephone services.

**SECTION 7.    WAIVERS**

The Commission, on its own motion or on the request of any person, may waive any provision of this rule that is not addressed by the provisions of Section 6.

STATUTORY AUTHORITY: 35-A M.R.S.A. §§ 104, 111, 301, 7303-A

EFFECTIVE DATE:
    The Attorney General approved the form and legality of this Rule on June 20, 1994. It was filed
    with the Secretary of State on June 20, 1994 and is effective on June 25, 1994.

EFFECTIVE DATE (ELECTRONIC CONVERSION):
    May 4, 1996

AMENDMENTS:
    The Attorney General approved the form and legality of this Rule as amended on October 9,
    2001. It was filed with the Secretary of State on October 9, 2001 and became effective on
    October 14, 2001.

    The Attorney General approved the form and legality of this Rule as further amended on
    December 11,, 2002. It was filed with the Secretary of State on December 12, 2002 and became
    effective on December 17, 2002.

Extended Local Calling Scope Arrangement.  An arrangement that provides a Customer a local calling scope (Extended Area Service, "EAS"), outside of the Customer's basic exchange serving area.  Extended Local Calling Scope Arrangements may be either optional or non-optional.  "Optional Extended Local Calling Scope Arrangement Traffic" is traffic that under an optional Extended Local Calling Scope Arrangement chosen by the Customer terminates outside of the Customer's basic exchange serving area.

FCC.  The Federal Communications Commission.

FCC Regulations.  The unstayed, effective regulations promulgated by the FCC, as amended from time to time.

FCC Internet Order.  Order on Remand and Report and Order, In the Matter of Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Intercarrier Compensation for ISP Bound Traffic, FCC 01-131, CC Docket Nos. 96-98 and 99-68, (adopted April 18, 2001).

Internet Traffic.  Any traffic that is transmitted to or returned from the Internet at any point during the duration of the transmission.

Merger Order.  The FCC's Order "In re Application of GTE Corporation, Transferor, and Bell Atlantic Corporation, Transferee, For Consent to Transfer of Control of Domestic and International Section 214 and 310 Authorizations and Application to Transfer of a Submarine Cable Landing License", Memorandum Opinion and Order, FCC CC Docket No. 98-184, FCC 00-221 (June 16, 2000), as modified from time to time.

Measured Internet Traffic.  Dial-up, switched Internet Traffic originated by a Customer of one Party on that Party's network at a point in a Verizon local calling area, and delivered to a Customer or an Internet Service Provider served by the other Party, on that other Party's network at a point in the same Verizon local calling area.  Verizon local calling areas shall be as defined by Verizon.  For the purposes of this definition, a Verizon local calling area includes a Verizon non-optional Extended Local Calling Scope Arrangement, but does not include a Verizon optional Extended Local Calling Scope Arrangement.  Calls originated on a 1+ presubscription basis, or on a casual dialed (10XXX/101XXXX) basis, are not considered Measured Internet Traffic.

Reciprocal Compensation.  The arrangement for recovering, in accordance with Section 251(b)(5) of the Act, the FCC Internet Order, and other applicable FCC orders and FCC Regulations, costs incurred for the transport and termination of Reciprocal Compensation Traffic originating on one Party's network and terminating on the other Party's network (as set forth in Attachment 1 to this Amendment.

Reciprocal Compensation Traffic.  Telecommunications traffic originated by a Customer of one Party on that Party's network and terminated to a Customer of the other Party on that other Party's network, except for Telecommunications traffic that is interstate or

intrastate Exchange Access, Information Access, or exchange services for Exchange Access or Information Access. The determination of whether Telecommunication traffic is Exchange Access or Information Access shall be based upon Verizon's local calling areas as defined by Verizon. Reciprocal Compensation Traffic does not include: (1) any Internet Traffic; (2) traffic that does not originate and terminate within the same Verizon local calling area as defined by Verizon; (3) Toll Traffic, including, but not limited to, calls originated on a 1+ presubscription basis, or on a casual dialed (10XXX/101XXXX) basis; (4) Optional Extended Local Calling Scope Arrangement Traffic; (5) special access, private line, Frame Relay, ATM, or any other traffic that is not switched by the terminating Party; (6) Tandem Transit Traffic; or, (7) Information Service Traffic. For the purpose of this definition, a Verizon local calling area includes a Verizon non-optional Extended Local Calling Scope Arrangement, but does not include a Verizon optional Extended Local Calling Scope Arrangement.

<u>Switched Exchange Access Service</u>. The offering of transmission and switching services for the purpose of the origination or termination of Toll Traffic. Switched Exchange Access Services include but may not be limited to: Feature Group A, Feature Group B, Feature Group D, 700 access, 800 access, 888 access and 900 access.

<u>Tariff</u>.

    a) Any applicable Federal or state tariff of a Party, as amended from time-to-time; or

    b) Any standard agreement or other document, as amended from time-to-time, that sets forth the generally available terms, conditions and prices under which a Party offers a Service.

<u>Toll Traffic</u>. Traffic that is originated by a Customer of one Party on that Party's network and terminates to a Customer of the other Party on that other Party's network and is not Reciprocal Compensation Traffic, Measured Internet Traffic, or Ancillary Traffic. Toll Traffic may be either "IntraLATA Toll Traffic" or "InterLATA Toll Traffic", depending on whether the originating and terminating points are within the same LATA.

<u>Traffic Factor 1</u>. For traffic exchange via Interconnection Trunks, a percentage calculated by dividing the number of minutes of interstate traffic (excluding Measured Internet Traffic) by the total number of minutes of interstate and intrastate traffic. ([Interstate Traffic Total Minutes of Use {excluding Measured Internet Traffic Total Minutes of Use} ÷ {Interstate Traffic Total Minutes of Use + Intrastate Traffic Total Minutes of Use}] x 100). Until the form of a Party's bills is updated to use the term "Traffic Factor 1," the term "Traffic Factor 1" may be referred to on the Party's bills and in billing related communications as "Percent Interstate Usage" or "PIU."

<u>Traffic Factor 2</u>. For traffic exchange via Interconnection Trunks, a percentage calculated by dividing the combined total number of minutes of Reciprocal Compensation Traffic and Measured Internet Traffic by the total number of minutes of intrastate traffic. ([{Reciprocal Compensation Traffic Total Minutes of Use + Measured Internet Traffic Total Minutes of Use} ÷ Intrastate Traffic Total Minutes of Use] x 100).

*Verizon Finance - Local Interconnection Billing*
*125 High Street*
*Boston, Massachusetts 02110*
*Phone: 617-743-2017*
*Fax: 617-743-2519*

Bill Specialist
Brian Murray
brian.k.murray@core.verizon.co
m

February 16, 2006

Lightship Telecomm
Attn: Darren Kreitler - CABS Billing
One Executive Park Drive
Bedford Executive Office Park
Bedford, NH 03110-6913
Facsimile: 2156419790
Email: dkreitler@lightship.com

Dear Darren Kreitler:

This letter is notification that Verizon - Maine is disputing charges totaling $544,788.72 on Invoice 024287F30106032 dated February 01, 2006 for account M91024287F 301.

INVOICE CHARGES DISPUTED

In accordance with the FCC's April 18, 2001 Order governing intercarrier compensation for Internet traffic, effective June 14, 2001, traffic exceeding a 3:1 ratio of terminating to originating traffic is presumed to be Internet traffic. In accordance with the order noted above, from June 14, 2001 through December 13, 2001 compensable Internet minutes are rated at $0.0015 per minute. From December 14, 2001 through June 13, 2003, compensable Internet minutes are rated at $0.0010 per minute. From June 14,2003 until the FCC takes further action, compensable Internet minutes are rated at $0.0007 per minute.

Lightship Telecomm billed Verizon for local and/or Internet traffic delivered from the following bill periods at the given rates per minute:

    From 12/1/2005 to 12/31/2005 at $.008/MOU
    From 1/1/2006 to 1/31/2006 at $.008/MOU

The disputed charges totaling $421,026.99, represent the difference between the amount that CLEC charged Verizon, and the amount due under the FCC's order.

Verizon is disputing $450.00 in Late charges. Verizon will not pay Late charges on balances that were previously disputed.

Verizon is disputing $123,307.34 for an imbalance in reported Minutes of Use (MOUs). During February 2006, Lightship Telecomm billed Verizon for terminating the following minutes:

8,189,578 MOU for EO Local Switching from 1/1/2006 to 1/31/2006

Based on data from Verizon's measurement systems, the traffic Lightship Telecomm terminated for Verizon was 6,437,994 MOUs. Verizon is disputing the difference between the MOUs billed by Lightship Telecomm, and the Verizon measured MOUs.

Verizon wants to work with Lightship Telecomm in resolving outstanding billing disputes between our companies. Please contact me at 617-743-2017 at your earliest convenience to discuss the disputes on this invoice.

Sincerely,

Brian Murray

*Verizon Finance - Local Interconnection Billing*
*125 High Street*
*Boston, Massachusetts 02110*
*Phone: 617-743-2017*
*Fax: 617-743-2519*

**Bill Specialist**
**Brian Murray**
**brian.k.murray@core.verizon.com**

March 23, 2006

Lightship Telecomm
Attn: Darren Kreitler - CABS Billing
One Executive Park Drive
Bedford Executive Office Park
Bedford, NH 03110-6913
Facsimile: 2156419790
Email: dkreitler@lightship.com

Dear Darren Kreitler:

This letter is notification that Verizon - Maine is disputing charges totaling $505,352.50 on Invoice 024287F30106060 dated March 01, 2006 for account M91024287F 301.

INVOICE CHARGES DISPUTED

In accordance with the FCC's April 18, 2001 Order governing intercarrier compensation for Internet traffic, effective June 14, 2001, traffic exceeding a 3:1 ratio of terminating to originating traffic is presumed to be Internet traffic. In accordance with the order noted above, from June 14, 2001 through December 13, 2001 compensable Internet minutes are rated at $0.0015 per minute. From December 14, 2001 through June 13, 2003, compensable Internet minutes are rated at $0.0010 per minute. From June 14, 2003 until the FCC takes further action, compensable Internet minutes are rated at $0.0007 per minute.

Lightship Telecomm billed Verizon for local and/or Internet traffic delivered from the following bill periods at the given rates per minute:

From 1/1/2006 to 1/31/2006 at $.008/MOU
From 2/1/2006 to 2/28/2006 at $.008/MOU

The disputed charges totaling $392,387.07, represent the difference between the amount that CLEC charged Verizon, and the amount due under the FCC's order.

Verizon is disputing $450.00 in Late charges. Verizon will not pay Late charges on balances that were previously disputed.

Verizon is disputing $112,510.97 for an imbalance in reported Minutes of Use (MOUs). During March 2006, Lightship Telecomm billed Verizon for terminating the following minutes:

7,478,216 MOU for EO Local Switching from 2/1/2006 to 2/28/2006

Based on data from Verizon's measurement systems, the traffic Lightship Telecomm terminated for Verizon was 5,873,724 MOUs.  Verizon is disputing the difference between the MOUs billed by Lightship Telecomm, and the Verizon measured MOUs.

Verizon may request that Lightship Telecomm provide Records of the calls completed in a 24 hour period during the current Bill Period covered on this invoice. Verizon may also request that Lightship

Verizon wants to work with Lightship Telecomm in resolving outstanding billing disputes between our companies.  Please contact me at 617-743-2017 at your earliest convenience to discuss the disputes on this invoice.

Sincerely,


Brian Murray

LTP to Vz Invoice 301 ME 200502

Lightship Telecom, LLC

Bedford Executive Office Park

One Executive Park Drive

Bedford, NH 03110-0000

```
********************************************************
*                                                      *
* PLEASE REVIEW THIS BILLING PACKAGE CLOSELY.          *
* THERE MAY BE UP TO SIX INDIVIDUAL INVOICES ATTACHED. *
* THEY WILL BE DESIGNATED AS FOLLOWS:                  *
*                                                      *
*   BILL NO    NNNNNNNNNN 001   FEATURE GROUP A   INVOICE   *
*   BILL NO    NNNNNNNNNN 101   FEATURE GROUP B   INVOICE   *
*   BILL NO    NNNNNNNNNN 201   FEATURE GROUP C   INVOICE   *
*   BILL NO    NNNNNNNNNN 301   FEATURE GROUP D   INVOICE   *
*   BILL NO    NNNNNNNNNN 401   PICC              INVOICE   *
*   BILL NO    NNNNNNNNNN 601   FACILITY ACCESS   INVOICE   *
*                                                      *
*                                                      *
* EACH INVOICE HAS AN INDIVIDUAL BALANCE DUE.  PLEASE  *
* REMIT THE TOTAL AMOUNT DUE FOR EACH INVOICE BY THE DATE *
* SHOWN.  THANK YOU.                                   *
*                                                      *
********************************************************
```

Page 1

LTP to Vz Invoice 301 ME 200502

Verizon Communications
125 High Street
Room 655
Boston, MA
Attn: LIB 02110-0000

Lightship Telecom, LLC
Bedford Executive Office Park
One Executive Park Drive
Bedford, NH 03110-0000

| | |
|---|---|
| BAN | M91024287F 301 |
| INVOICE NO | 024287F301-05060 |
| COMPANY CODE | 4287 |
| BILL DATE | MAR 01, 2005 |

PAGE    1

M09102    Verizon Communications
125 High Street
Room 655
Boston, MA
Attn: LIB 02110-0000

FOR INT USE:

ME

BILLING INQUIRIES CALL  603-314-2760

------------------------------------------------------------------------

SWITCHED ACCESS SERVICE

FEATURE GROUP D

* * * BALANCE DUE INFORMATION * * *

TOTAL AMOUNT OF LAST BILL          Page 2          2,264,501.66

LTP to Vz Invoice 301 ME 200502

PAYMENTS APPLIED - SEE DETAIL                                    542,968.99-

ADJUSTMENTS APPLIED - SEE DETAIL                                 445,115.84-

TOTAL BALANCE DUE . . . . . . . . . . . . . . .               1,276,416.83

                    * * * DETAIL OF CURRENT CHARGES * * *

                                                                       .00
MONTHLY ACCESS CHARGES

   FROM MAR 01 THRU MAR 31
       INTERSTATE                                       .00
       INTRASTATE                                       .00

                                                               4,395.36
OTHER CHARGES AND CREDITS - SEE DETAIL
       INTERSTATE                                       .00
       INTRASTATE                                  4,395.36

                                                             877,407.14
USAGE CHARGES - SEE DETAIL
       INTERSTATE                                       .00
       INTRASTATE                              289,613.42
       LOCAL                                   587,793.72

                                                                   .00
TAXES/SURCHARGES - SEE DETAIL

TOTAL CURRENT CHARGES * DUE BY MAR 31 * . . . . . . . . . .   881,802.50

                    -------------------------------------------------
                    TOTAL AMOUNT DUE              2,158,219.33
                    -------------------------------------------------


                    ****** R E M I T T A N C E   P A G E ******

    SEND THIS PAGE WITH            - PLEASE INCLUDE INVOICE NUMBER ON YOUR
    PAYMENT TO:                          CHECK.


                              Page 3

LTP to Vz Invoice 301 ME 200502

Lightship Telecom, LLC
Attn: Accounts Receivable
One Executive Park Drive
Bedford NH 03110-0000

BAN            M91024287F 301
INVOICE NO     024287F301-05060
COMPANY CODE   4287
BILL DATE      MAR 01, 2005

PAGE      2

M09102      Verizon Communications
            125 High Street
            Room 655
            Boston, MA
            Attn: LIB 02110-0000

FOR INT USE:
ME

BILLING INQUIRIES CALL  603-314-2760

--------------------------------------------------------------------

SWITCHED ACCESS SERVICE
FEATURE GROUP D

* * * BALANCE DUE INFORMATION * * *

TOTAL AMOUNT OF LAST BILL                           2,264,501.66

                                                      542,968.99-
PAYMENTS APPLIED - SEE DETAIL

                                                      445,115.84-
ADJUSTMENTS APPLIED - SEE DETAIL

TOTAL BALANCE DUE . . . . . . . . . . . . . . .     1,276,416.83

* * * DETAIL OF CURRENT CHARGES * * *

                                                             .00
MONTHLY ACCESS CHARGES
   FROM MAR 01 THRU MAR 31                          .00
      INTERSTATE                                    .00
      INTRASTATE               Page 4

LTP to Vz Invoice 301 ME 200502

| | | |
|---|---|---|
| OTHER CHARGES AND CREDITS - SEE DETAIL | | 4,395.36 |
| INTERSTATE | .00 | |
| INTRASTATE | .00 | |
| USAGE CHARGES - SEE DETAIL | | 877,407.14 |
| INTERSTATE | .00 | |
| INTRASTATE | 289,613.42 | |
| LOCAL | 587,793.72 | |
| TAXES/SURCHARGES - SEE DETAIL | | .00 |
| TOTAL CURRENT CHARGES * DUE BY MAR 31 * . . . . . . . . . . | | 881,802.50 |

------------------------------------------------

TOTAL AMOUNT DUE          2,158,219.33

------------------------------------------------

Lightship Telecom, LLC
Bedford Executive Office Park
One Executive Park Drive
Bedford, NH 03110-0000

| | |
|---|---|
| BAN | M91024287F 301 |
| INVOICE NO | 024287F301-05060 |
| COMPANY CODE | 4287 |
| BILL DATE | MAR 01, 2005 |

PAGE      3

M09102      Verizon Communications
125 High Street
Room 655
Boston, MA
Attn: LIB 02110-0000

FOR INT USE: