UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
                                                    :
IN RE ONE COMMUNICATIONS          :
CORP.                                               :
                                                    :         MASTER FILE
                                                    :         07 Civ. 3950 (LTS)(AJP)
                                                    :
This Document Relates To:                :
Both Actions                                    :
———————————————————— x

## OPPOSITION OF VERIZON NEW ENGLAND INC.
## TO SECURITIES DEFENDANTS' MOTIONS TO DISMISS

BETH A. SASFAI                          SCOTT H. ANGSTREICH
VERIZON                                    WILLIAM DAVID SARRATT (WS-1439)
One Verizon Way                        KELLOGG, HUBER, HANSEN,
Basking Ridge, NJ 07920               TODD, EVANS & FIGEL, P.L.L.C.
(908) 559-5730                            1615 M Street, N.W., Suite 400
                                               Washington, D.C. 20036
                                               (202) 326-7900
                                               (202) 326-7999 (facsimile)

*Attorneys for Verizon New England Inc.*

December 17, 2007

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF VERIZON .......................................................................................... 1

INTRODUCTION ....................................................................................................... 1

BACKGROUND .......................................................................................................... 2

     A.     Regulatory Background ................................................................................ 2

     B.     Verizon's Counterclaims .............................................................................. 3

ARGUMENT ............................................................................................................... 5

I.     THE COURT HAS JURISDITION UNDER 28 U.S.C. §§ 1367 AND 1331
     OVER THE BREACH OF CONTRACT CLAIMS ............................................ 5

     A.     The Court Has Supplemental Jurisdiction Over the Breach of Contract
           Claims Pursuant to 28 U.S.C. § 1367 ...................................................... 5

     B.     The Court Has Federal Question Jurisdiction Over the Breach of Contract
           Claims Under 28 U.S.C. § 1331 .............................................................. 5

II.     CONGRESS DID NOT DIVEST DISTRICT COURTS OF THEIR § 1331 OR
     § 1367 JURISDICTION IN THE 1996 ACT ..................................................... 8

     A.     The Supreme Court and the FCC Have Held that Nothing in the 1996 Act
           Divests District Courts of Jurisdiction ..................................................... 8

     B.     The Cases on Which the Securities Defendants Rely Disregard the
           Supreme Court's and FCC's Binding Guidance ................................... 10

     C.     At Most, *Core* Establishes an Exhaustion Requirement, Which Has Been
           Waived Here ........................................................................................... 14

III.     THE CONTRACTUAL PROVISIONS AT ISSUE HERE ARE
     STRAIGHTFORWARD, AND A PRIMARY JURISDICTION REFERRAL IS
     THEREFORE UNWARRANTED .................................................................. 16

CONCLUSION .......................................................................................................... 23

## TABLE OF AUTHORITIES

Page

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328 (2d Cir. 2006)...................................5

*AT&T Communications of Ohio, Inc. v. Ohio Bell Tel. Co.*, 29 F. Supp. 2d 855
    (S.D. Ohio 1998)...............................................................................................................13

*AT&T Communications of Ill., Inc v. Illinois Bell Tel. Co.*, No. 97 C 0886, 1998 WL
    525437 (N.D. Ill. Aug. 18, 1998)......................................................................................13

*Atlantic Alliance Telecomms. Inc. v. Bell Atlantic*, No. 99 CV 4915 (ARR), 2000 WL
    34216867 (E.D.N.Y. Apr. 19, 2000)..................................................................................13

*BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Inc.*, 317 F.3d 1270
    (11th Cir. 2003) (en banc)...........................................................................................6, 7, 12

*Contact Communications v. Qwest Corp.*, 246 F. Supp. 2d 1184 (D. Wyo. 2003).......................14

*Core Communications, Inc. v. Verizon Pennsylvania Inc.*, 423 F. Supp. 2d 493
    (E.D. Pa. 2006)...........................................................................................................11, 14

*Core Communications, Inc. v. Verizon Pennsylvania Inc.*, 493 F.3d 333 (3d Cir. 2007) ..... *passim*

*Global NAPs North Carolina, Inc. v. BellSouth Telecomms., Inc.*, 455 F. Supp. 2d 447
    (E.D.N.C. 2006) ...............................................................................................................19

*Global NAPs North Carolina, Inc. v. BellSouth Telecomms., Inc.*, No. 04-cv-96 (BO)
    (E.D.N.C. Sept. 28, 2007)................................................................................................19

*Global NAPs, Inc. v. Massachusetts Dep't of Telecomms. & Energy*, 427 F.3d 34 (1st Cir.
    2005) .................................................................................................................................6

*Global NAPs, Inc. v. Verizon New England Inc.*, 444 F.3d 59 (1st Cir. 2006)....................20, 21

*Global NAPs, Inc. v. Verizon New England Inc.*, 454 F.3d 91 (2d Cir. 2006) ....................2, 3, 21

*Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848 (2d Cir. 1988)....................................17

*Hatalmud v. Spellings*, 505 F.3d 139 (2d Cir. 2007) ....................................................................18

*Intermedia Communications, Inc. v. BellSouth Telecomms., Inc.*, 173 F. Supp. 2d 1282
    (M.D. Fla. 2000) ...............................................................................................................13

*International Ass'n of Machinists v. Central Airlines, Inc.*, 372 U.S. 682 (1963) .........................7

*Jones v. Bock*, 127 S. Ct. 910 (2007) ........................................................................14

*MCI Telecomms. Corp. v. Bell Atlantic-Pennsylvania*, 271 F.3d 491 (3d Cir. 2001) ..................10

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 476 F. Supp. 2d 275
    (S.D.N.Y. 2007) ......................................................................................17

*National Cable & Telecomms. Ass'n v. Gulf Power Co.*, 534 U.S. 327 (2002) ............................10

*National Communications Ass'n v. AT&T*, 46 F.3d 220 (2d Cir. 1995) ...................................17

*New Edge Network, Inc. v. FCC*, 461 F.3d 1105 (9th Cir. 2006) ..........................................6

*Pacific Bell v. Pac-West Telecomm., Inc.*, 325 F.3d 1114 (9th Cir. 2003) ..............................6, 18

*Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435 (2d Cir. 2006) .............................15

*Petersen v. Rath Packing Co.*, 461 F.2d 312 (8th Cir. 1972) .............................................16

*Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003) .......................................................15

*Southern New England Tel. Co. v. Global NAPs, Inc.*, No. 3:04-cv-2075 (JCH),
    – F. Supp. 2d –, 2007 WL 3102034 (D. Conn. Oct. 19, 2007).........................9, 12, 13, 15

*Verizon Maryland Inc. v. Global NAPs, Inc.*, 377 F.3d 355 (4th Cir. 2004) .....................2, 6, 7, 8

*Verizon Maryland Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635 (2002) ........2, 8, 9, 14

*Verizon New York Inc. v. Choice One Communications of New York Inc.*, 499 F. Supp. 2d
    326 (S.D.N.Y. 2007) .................................................................................8

*Verizon New York Inc. v. Global NAPs, Inc.*, No. 1:03-cv-05073-ENV-RML (E.D.N.Y.
    Sept. 19, 2007) .....................................................................................12

*Verizon New York Inc. v. Global NAPs, Inc.*, 463 F. Supp. 2d 330 (E.D.N.Y. 2006)..................18

*Wight v. BankAmerica Corp.*, 219 F.3d 79 (2d Cir. 2000) ...............................................16

*Zhong v. United States Dept. of Justice*, 480 F.3d 104 (2d Cir. 2007) ..................................15

**Administrative Decision**

Memorandum Opinion and Order, *Starpower Communications, LLC Petition for
Preemption of Jurisdiction of the Virginia State Corporation Commission
Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996*, 15 FCC
Rcd 11277 (2000) ......................................................................................9, 10, 11

**Statutes**

28 U.S.C. § 1331 ......................................................................................... *passim*

28 U.S.C. § 1367 ......................................................................................... *passim*

28 U.S.C. § 1367(a) ...............................................................................................5

47 U.S.C. § 251(b) .................................................................................................6

47 U.S.C. § 251(c) ..................................................................................................6

47 U.S.C. § 251(c)(1) .........................................................................................5, 6

47 U.S.C. § 252(a)(1) .............................................................................................6

47 U.S.C. § 252(e) ..................................................................................................9

47 U.S.C. § 252(e)(1)-(2) .......................................................................................6

47 U.S.C. § 252(e)(6) ...............................................................................9, 12, 14

47 U.S.C. § 252(i) ...................................................................................................6

## INTEREST OF VERIZON

Plaintiff One Communications Corp. brought this action for securities fraud against the former shareholders and officers of Lightship Communications Inc. (collectively, the "Securities Defendants"),[1] alleging that the Securities Defendants fraudulently misrepresented or failed to disclose that Lightship was engaged in a practice of significantly overbilling Verizon New England Inc. ("Verizon"), contrary to the terms of the interconnection agreements between Lightship and Verizon. In its Complaint, One Communications named Verizon as a defendant in a declaratory judgment count, seeking a determination of the amount owed Verizon as a result of such overbilling; Verizon has filed counterclaims against One Communications for the amounts owed to Verizon.

The Securities Defendants have moved to dismiss One Communications' Complaint in full. With respect to the declaratory judgment count, these defendants contend that this Court cannot hear breach of interconnection agreement claims until the state regulatory commissions that approved those agreements rule that such breaches occurred. This Court's resolution of the Securities Defendants' claims with regard to that count will likely apply to Verizon's counterclaims as well. Verizon therefore submits this brief opposing the Securities Defendants' motions to dismiss, limited to the legal issues also relevant to Verizon's counterclaims.

## INTRODUCTION

This Court has jurisdiction over the breach of contract claims. At a minimum, those claims arise from a "common nucleus of operative fact" as One Communications' securities law

---

[1] The Securities Defendants include JP Morgan SBIC LLC, Sixty Wall Street SBIC Fund, L.P., the Megunticook Fund II, L.P., the Megunticook Side Fund, II, L.P., Kevin O'Hare, and Jeffery Koester. References herein to the Securities Defendants' motion refer to the JP Morgan Defendants' memorandum of law, which the remaining Securities Defendants incorporated by reference as to the issues Verizon addresses. *See* Megunticook Mem. at 4; O'Hare & Koester Mem. at 37.

claims, which invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331.

Therefore, this Court has supplemental jurisdiction over the breach of contract claims under 28

U.S.C. § 1367. The Court also independently has federal question jurisdiction over the breach of

contract claims under § 1331. The interconnection agreements are "federally mandated

agreements," and claims to enforce the interconnection agreements raise federal questions.[2]

Indeed, the breach of contract claims here go directly to the manner in which those contracts

implement the federal law duty on local telephone companies to pay each other for certain calls

they exchange. Contrary to the Securities Defendants' motions to dismiss, Congress did not strip

this Court of its jurisdiction over such claims simply because the contracts at issue are

interconnection agreements.[3] Finally, although the Securities Defendants' seek to obfuscate and

complicate the contractual provisions at issue, the terms of the relevant agreements are

straightforward and require no regulatory expertise to decipher. Indeed, even the state

commissions would be obligated to enforce the agreements according to their plain terms. This

Court is thus well-equipped to interpret these contracts and resolve this case.

## BACKGROUND

### A.    Regulatory Background

The Telecommunications Act of 1996 ("1996 Act") opened the markets for local

telephone service, previously served by a single "incumbent local exchange carrier" ("ILEC"), to

competition by new entrants, known as "competitive local exchange carriers" ("CLECs"). *See*

*Global NAPs, Inc. v. Verizon New England Inc.*, 454 F.3d 91, 93 (2d Cir. 2006). Verizon is an

ILEC; Lightship and One Communications are CLECs. In the 1996 Act, Congress required

---

[2] *Verizon Maryland Inc. v. Global NAPs, Inc.*, 377 F.3d 355, 364 (4th Cir. 2004).

[3] *Verizon Maryland Inc. v. Public Service Comm'n*, 535 U.S. 635, 644 (2002) (noting that "nothing in [the Communications Act] displays any intent to withdraw federal jurisdiction under § 1331").

ILECs to enter into interconnection agreements with CLECs. *See id.* at 94. Pursuant to that duty, Verizon entered into such agreements with Lightship in Maine, Massachusetts, New Hampshire, and Vermont.[4]

These agreements govern, among other things, the exchange of telephone calls between Verizon and Lightship, including the amount that one party must pay to the other for different types of calls. The different types of calls at issue here include: (1) local, voice telephone calls by a Verizon customer to a Lightship customer; (2) calls by a Verizon customer to a nearby Internet service provider ("ISP") that is a Lightship customer, so that Verizon's customer can access the Internet; (3) long-distance (or toll) calls by a Verizon customer to any Lightship customer, whether a person or an ISP; and (4) calls by a customer of a third-party telephone company to a Lightship customer that travel over (or "transit") Verizon's network on the way to Lightship's customer. The interconnection agreements set forth the rules for classifying calls and prescribe the specific amounts due to Lightship or to Verizon for each type of call.

### B.    Verizon's Counterclaims

As Verizon alleged in its counterclaims, Lightship has violated the parties' interconnection agreements with respect to these classes of calls in three ways. *See* Verizon's Countercl. ¶¶ 17-33. First, in Maine and Vermont, beginning at least in January 2004, Lightship billed Verizon tariffed "access charges" for local calls, for which Lightship should have billed Verizon at the lower, "reciprocal compensation" or ISP rates set forth in the parties' contracts. As One Communications alleges, *see* Compl. ¶ 37, this occurred because Lightship failed to

---

[4] Relevant pages of the interconnection agreement are attached as Exhibits to the Declaration of David Sarratt, filed herewith. Although Verizon's counterclaims also seek amounts from the period after One Communications became the owner of Lightship, we refer generally to Lightship and such references should also be understood to include One Communications as its successor in interest.

follow the terms of the contracts, which provide that calls exchanged between the companies are to be classified as local/ISP or toll "based upon Verizon's local calling areas as defined by Verizon." Ex. 1, Maine ICA, Amend. 1, App. B § 2.[5]  Lightship instead used smaller local calling areas in generating its bills to Verizon, with the effect that it significantly overbilled Verizon by misclassifying local calls as toll calls.

Second, Lightship has sold a toll-free service to its customers, known in the industry as "Virtual NXX" service, that allows a Verizon customer to call a Lightship customer located in another local calling area (and perhaps in another state) by dialing what appears to be a "local" telephone number. As One Communications alleges, *see* Compl. ¶¶ 23, 53, Lightship billed Verizon for these long-distance calls as if they were local, in violation of the interconnection agreements, which make clear that calls are "designat[ed] . . . [as Local or Toll] for purposes of compensation . . . based on the actual originating and terminating points of the complete end-to-end call,"[6] and not on the telephone numbers that happen to be assigned to the customers. Moreover, the use of these Virtual NXX numbers prevented Verizon from charging Lightship the tariffed access charges that Verizon would normally be entitled to collect for originating these toll-free calls.

Third, as One Communications alleges, *see* Compl. ¶ 53, Lightship has improperly billed Verizon reciprocal compensation for transit traffic. Under the interconnection agreements, Verizon pays reciprocal compensation only for calls that originate on its network. Because transit traffic originates on third-party networks, Verizon does not owe Lightship for such calls.

---

[5] The relevant provisions of the Maine, Massachusetts, and Vermont interconnection agreements are identical, and the relevant provisions of the New Hampshire agreement are substantively equivalent. *Compare* Ex. 1 *with* Exs. 2-4. As a result, Verizon will generally limit citations herein to the Maine interconnection agreement.

[6] Ex. 4, New Hampshire ICA § 5.7.6, *see* Ex. 1, Maine ICA, Amend. 1, Attach. 1 § 1.1.1.

## ARGUMENT

## I. THE COURT HAS JURISDITION UNDER 28 U.S.C. §§ 1367 AND 1331 OVER THE BREACH OF CONTRACT CLAIMS

### A. The Court Has Supplemental Jurisdiction Over the Breach of Contract Claims Pursuant to 28 U.S.C. § 1367

At a minimum, this Court has supplemental jurisdiction over the breach of contract claims pled in One Communications' complaint and Verizon's counterclaims. Section § 1367(a) provides this Court with jurisdiction, in "any civil action of which [it] ha[s] original jurisdiction," "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). As the Second Circuit has explained, "disputes are part of the 'same case or controversy' within § 1367 when they derive from a common nucleus of operative fact," such as where "the facts underlying the federal and state claims substantially overlap[]." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation marks omitted).

It is beyond dispute that One Communications' claims against the Securities Defendants arise under the federal securities laws, and therefore this court has original jurisdiction over this action under 28 U.S.C. § 1331. Because the breach of contract claims arise from the same improper billing practices by Lightship that are "necessarily brought . . . before the court" by One Communications' securities claims, this Court has supplemental jurisdiction over the breach of contract claims. *Achtman*, 464 F.3d at 336 (holding supplemental jurisdiction proper over state law claims that derived from same set of operative facts as federal securities law claims).

### B. The Court Has Federal Question Jurisdiction Over the Breach of Contract Claims Under 28 U.S.C. § 1331

Although known as "interconnection *agreements*," the contracts between Verizon and Lightship are not ordinary, privately negotiated, state law contracts. Instead, the 1996 Act

compels companies such as Verizon to enter into these agreements with competitors.  *See* 47

U.S.C. §§ 251(c)(1), 252(a)(1).  The purpose of these agreements is to "fulfill the duties"

Congress imposed in 47 U.S.C. § 251(b) and (c).  *Id.* § 251(c)(1).  Although carriers are

permitted to "negotiate and enter into a binding agreement . . . without regard to" those duties, *id.*

§ 252(a)(1), even such a negotiated agreement "must still . . . spell out how the[] [parties] will

fulfill the duties imposed by § 251." *Global NAPs*, 377 F.3d at 364.

Once an agreement is signed, it must be submitted to the state commission for approval

under specified federal standards.  47 U.S.C. § 252(e)(1)-(2).  After an agreement is approved,

federal law provides that the agreements are "binding." *Id.* § 252(a)(1).  Indeed, even when a

state commission subsequently interprets an agreement it had approved, the state commission

must "interpret [the] existing [agreement] according to [its] own terms"; a state commission

violates the "[1996] Act's requirement that interconnection agreements are binding on the

parties" if it issues an order that "effectively changes the[ir] terms." *Pacific Bell v. Pac-West

Telecomm., Inc.*, 325 F.3d 1114, 1125-26, 1127 (9th Cir. 2003).

In addition, once approved, incumbents are obligated to allow another competitor to take

that agreement as its own contract with the incumbent, without engaging in negotiations.  *See* 47

U.S.C. § 252(i).[7]  The Verizon - Lightship contracts were created in this manner.[8]

For all of these reasons, courts have recognized that interconnection agreements are not

mere private contracts but are "creation[s] of federal law" and the "tools through which" the

---

[7] *See, e.g., New Edge Network, Inc. v. FCC*, 461 F.3d 1105 (9th Cir. 2006) (describing and upholding the FCC's interpretation of § 252(i)); *see also Global NAPs, Inc. v. Massachusetts Dep't of Telecomms. & Energy*, 427 F.3d 34, 39 (1st Cir. 2005) (describing FCC order that required Verizon, for a limited time, to allow a competitor in "one state to adopt any of Verizon's interconnection agreements previously approved by a *different* state commission").

[8] *See* Ex. 1, Letter from Jeffrey Masoner to John Lozzi (Jan. 16, 2002); Ex. 2, Letter from Jeffrey Masoner to John Lozzi (Jan. 16, 2002); Ex. 3, Letter from Jeffrey Masoner to John Lozzi (Jan. 16, 2002); Ex. 4, New Hampshire ICA.

federal law duties in § 251 are "enforced." *Global NAPs*, 377 F.3d at 364; *BellSouth Telecomms., Inc. v. MCImetro Access Transmission Servs., Inc.*, 317 F.3d 1270, 1278 (11th Cir. 2003) (en banc). The Fourth Circuit has expressly found that interconnection agreements are "federally mandated agreements" that are akin to the federal contracts at issue in the Supreme Court's decision in *International Association of Machinists v. Central Airlines, Inc.*, 372 U.S. 682 (1963). *Global NAPs*, 377 F.3d at 364. As the Fourth Circuit explained, in *Central Airlines*, the Supreme Court was faced with a suit to enforce a contract between an airline and its employees. *See id.* Finding that the "contract" was a "'creation[] of federal law'" that was "'governed and enforceable by federal law,'" the Supreme Court held that the "district court had jurisdiction over the enforcement action under § 1331," noting further that such actions "'cannot be left to the laws of the many States.'" *Id.* (quoting *Central Airlines*, 372 U.S. at 691-92). Applying *Central Airlines*, the Fourth Circuit held that, to the extent an interconnection agreement "imposes a duty consistent" with federal law, "that duty is a federal requirement." *Id.* (internal quotation marks omitted). Therefore, when a "contractual dispute . . . involves one of the 1996 Act's essential duties, *there is a federal question.*" *Id.* at 366 (emphasis added).

The breach of contract claims here "involve[] . . . the 1996 Act's essential duties" and raise a "federal question"; this Court, therefore, "ha[s] jurisdiction over [Verizon's] enforcement action under § 1331." *Id.* at 364, 366. In particular, the claims here involve the same reciprocal-compensation obligation that was at issue in *Global NAPs*, which the Fourth Circuit found "involves one of the 1996 Act's essential duties" such that complaints to enforce interconnection agreement provisions related to that duty raise "a federal question." 377 F.3d at 365-66.

The Securities Defendants (at 40) suggest that a recent decision from another court in this district finds that breach of interconnection agreement claims raise only state law questions. But

7

that case did not involve alleged breaches of the reciprocal compensation provisions of an interconnection agreement. *See Verizon New York Inc. v. Choice One Communications of New York Inc.*, 499 F. Supp. 2d 326 (S.D.N.Y. 2007). Instead, Verizon New York alleged that a competitor had breached a "true up" provision, which addressed the parties' responsibilities as they replaced that interconnection agreement with a new agreement. *See id.* at 329-30. The *Choice One* Court found that the "true up" provision was "a privately negotiated contractual provision which was not derived from federal law," as "there is no provision in the [1996 Act] . . . which deals with 'true up' obligations." *Id.* at 336. "Consequently," the court held, "the source of Verizon's claims is state law, not federal." *Id.*[9]

Although the *Choice One* court agreed with the dissent in *Global NAPs*, which would have held that breach of interconnection agreement claims *never* raise federal questions, that was not necessary to the district court's decision. The Fourth Circuit majority limited its holding to claimed breaches of interconnection agreement provisions that implement 1996 Act's "essential duties," leaving open the question whether "every dispute about a term in an interconnection agreement belongs in federal court." *Global NAPs*, 377 F.3d at 366. In any event, the Fourth Circuit majority's decision is more persuasive than the dissent, and this Court should follow that decision here.

## II. CONGRESS DID NOT DIVEST DISTRICT COURTS OF THEIR § 1331 OR § 1367 JURISDICTION IN THE 1996 ACT

### A. The Supreme Court and the FCC Have Held that Nothing in the 1996 Act Divests District Courts of Jurisdiction

The Supreme Court has expressly held that "nothing in the [1996] Act displays any intent to withdraw federal jurisdiction under § 1331" and that the Court "will not presume that the

---

[9] The district court in *Choice One* did not have supplemental jurisdiction, as there were no other federal law claims. *See Choice One*, 499 F. Supp. 2d at 326.

statute means what it neither says nor fairly implies." *Verizon Maryland*, 535 U.S. at 644.  In

addition, the Court held that 47 U.S.C. § 252(e), on which the Securities Defendants' rely (at 35),

"does not even mention subject-matter jurisdiction" and instead "reads like the conferral of a

private right of action." *Verizon Maryland*, 535 U.S. at 644.  The Court, therefore, found that it

had no need to decide the question whether § 252(e)(6) also grants subject-matter jurisdiction,

because "even if § 252(e)(6) does not *confer* jurisdiction, it at least does not *divest* the district

courts of their authority under 28 U.S.C. § 1331." *Id.* at 642.

        The Supreme Court's decision thus confirms that the 1996 Act does not eliminate § 1331

as a source of subject-matter jurisdiction in the context of a suit that involves an interconnection

agreement, and the same result logically follows for supplemental jurisdiction under § 1367.  As

the Third Circuit recently held, the 1996 Act is "silent as to the procedure for post-formation

disputes" about interconnection agreements and "Congress has not spoken" as to the

"enforcement scheme for a . . . claim for breach of an interconnection agreement." *Core

Communications, Inc. v. Verizon Pennsylvania Inc.*, 493 F.3d 333, 340-41 (3d Cir. 2007).  And a

Connecticut district court recently agreed that the Supreme Court's decision in *Verizon Maryland*

confirms that district courts "retain[] federal question jurisdiction over a claim arising out of the

Telecommunications Act." *Southern New England Tel. Co. v. Global NAPs, Inc.*, No. 3:04-cv-

2075 (JCH), – F. Supp. 2d –, 2007 WL 3102034, *3 (D. Conn. Oct. 19, 2007) ("*SNET*").

        Moreover, the FCC has also recognized that federal law does not dictate any particular

forum in which parties must bring actions to enforce interconnection agreements.  Instead, the

FCC has left it to the parties to decide by contract where to bring such disputes, holding that

parties are "bound by [the] dispute resolution clauses in their . . . agreement[s]," which may

result in a state commission having "*no responsibility* . . . to interpret and enforce" a particular

agreement. Memorandum Opinion and Order, *Starpower Communications, LLC Petition for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996*, 15 FCC Rcd 1127, ¶ 6 n.14 (2000) ("*Starpower*") (emphasis added). The FCC's interpretation is consistent with the 1996 Act's "clear preference . . . for . . . negotiated agreements." *MCI Telecomms. Corp. v. Bell Atlantic–Pennsylvania*, 271 F.3d 491, 500 (3d Cir. 2001). And the FCC's interpretation is entitled to considerable deference because Congress delegated to the FCC the "authority to fill gaps where the statutes are silent." *National Cable & Telecomms. Ass'n v. Gulf Power Co.*, 534 U.S. 327, 339 (2002).

Here, the Verizon-Lightship interconnection agreements, as the FCC recognized might be the case, "do not expressly specify how . . . disputes shall be resolved," but instead provide the parties with options. *Starpower* ¶ 6 n.14. For example, the parties' Maine agreement provides that "either Party may initiate an appropriate action in any regulatory *or* judicial forum of competent jurisdiction." Ex. 1, Maine ICA § 28.9 (emphasis added).[10] Verizon and One Communications have thus exercised their option to resolve these contract disputes in a "judicial," rather than a "regulatory," forum.

### B.    The Cases on Which the Securities Defendants Rely Disregard the Supreme Court's and FCC's Binding Guidance

1.    In support of their claim that these interconnection agreement disputes must be brought to the state commissions, the Securities Defendants (at 35-40) rely almost exclusively on the Third Circuit's decision in *Core*. Although the Third Circuit dismissed a claim for breach of

---

[10] Verizon's claim is not that the FCC held carriers can create federal jurisdiction by agreement. Rather, as shown above, this court has jurisdiction under either § 1367 or § 1331 independent of the dispute resolution provisions in the agreements. The parties, however, could have agreed not to pursue disputes in one or more available forums.

interconnection agreement so that the claim could be brought first to the state commission, it did

not do so on the ground that Congress, in the 1996 Act, so required. *See Core*, 493 F.3d at 340.

Instead, as explained above, the court found that Congress was silent on that question. *Id.*[11]

The Third Circuit, however, granted "deference" to its (mis)understanding of "the FCC's

guidance" in *Starpower*. *Core*, 493 F.3d at 343-44. Although the Third Circuit recognized that

the FCC's decision in *Starpower* "did not actually force a party to bring its post-formation

dispute to a state commission before proceeding in federal court," that court adopted what it

termed a "broad[] reading" of *Starpower*, under which the FCC "graft[ed] onto the [1996] Act an

exhaustion requirement" requiring *all* such disputes to be brought first to a state commission. *Id.*

at 335, 342.

The actual text of *Starpower*, however, cannot bear the Third Circuit's "broad[]

reading."[12]  The FCC expressly found that a state commission would have "'responsibility' under

[47 U.S.C. §] 252" to "interpret and enforce existing interconnection agreements" only in "*some*

circumstances*," *Starpower* ¶ 6 (emphasis added), and "some" does not mean "all."  The Third

Circuit said nothing about this language, and this Court should defer to the FCC's actual holding,

rather than the Third Circuit's misreading of it.

---

[11] The district court in *Core* also concluded that Congress "did not . . . clearly and definitively" mandate that breach of interconnection agreement claims be presented to state commissions in the first instance. *Core Communications, Inc. v. Verizon Pennsylvania Inc.*, 423 F. Supp. 2d 493, 499 (E.D. Pa. 2006).

[12] Verizon Pennsylvania did not endorse that reading.  Instead, Verizon Pennsylvania's briefs to the Third Circuit supported dismissal of Core's claims as consistent with "the doctrine of primary jurisdiction," because Core's complaint raised claims about "the details of telecommunications technology" – namely, how the Core and Verizon Pennsylvania networks should be interconnected – within "th[e] [Pennsylvania commission's] specialized expertise." Br. of Appellee Verizon Pennsylvania Inc. at 34, *Core Communications, Inc. v. Verizon Pennsylvania Inc.*, No. 06-2419 (3d Cir. filed Aug. 25, 2006).

In all events, *Core* is not binding on this Court, as it is a Third Circuit case. The two subsequent decisions within the Second Circuit to address this issue either reject *Core*, *see Verizon New York Inc. v. Global NAPs, Inc.* , No. 1:03-cv-05073-ENV-RML, slip op. at 7 (E.D.N.Y. Sept. 19, 2007) ("declin[ing] to follow" *Core*), or reject the Securities Defendants' reading of *Core*, *see SNET*, 2007 WL 3102034 at *2-*3 (holding that *Core*, if correctly decided, only established an exhaustion requirement that can be waived).

      2.      Equally misplaced is the Securities Defendants' reliance (at 38) on the Eleventh Circuit's statement that a "state commission's authority to approve or reject an interconnection agreement would itself be undermined if it lacked authority to determine in the first instance the meaning of an agreement that it has approved." *BellSouth Telecomms.*, 317 F.3d at 1278 n.9; *see Core*, 493 F.3d at 343. The Eleventh Circuit was not addressing – much less ruling on – the question whether complaints to enforce interconnection agreements must always be presented to state commissions in the first instance. *See SNET*, 2007 WL 3102034 at *1 n.2 (distinguishing the Eleventh Circuit's decision and similar cases on the ground that, because those cases "arrived at the Circuit Court having been presented to the state utility commission in the first instance[,] those courts did not need to determine whether a district court has jurisdiction to determine an [interconnection agreement] dispute in the first instance"). Instead, that court was addressing a prior question: whether Congress vested state commissions with any federal law authority *at all* over such complaints. *Compare, e.g., BellSouth Telecomms.*, 317 F.3d at 1278 & n.9 *with id.* at 1298 (Tjoflat, J., dissenting) (contending that state commissions can enforce interconnection agreements pursuant to "residual [state law] authority left to states under the 1996 Act"). The court found that state commissions have such authority, not that their authority is exclusive.

**3.**    The Securities Defendants also cite, in a footnote (at 36 n.24), a series of district court decisions holding that 47 U.S.C. § 252(e)(6) provides the sole source of subject-matter jurisdiction over a complaint to enforce an interconnection agreement. Notably, these decisions are directly contrary to *Core*'s holding that "the Act is simply silent as to the procedure for post-formation disputes." 493 F.3d at 340. Moreover, with one exception, these cases pre-date both *Verizon Maryland* and *Starpower*. The district courts, therefore, ruled in those cases without the benefit of either the Supreme Court's or the FCC's views; it would be error to follow those decisions without considering this later, contrary, and authoritative guidance. Indeed, the *SNET* court found that *Verizon Maryland* "directly contradicts" the same decisions the Securities Defendants cite here. *SNET*, 2007 WL 3102034 at *4.

In addition, a number of the decisions the Securities Defendants cite do not even consider the *possibility* of jurisdiction under § 1331. *See, e.g., Intermedia Communications, Inc. v. BellSouth Telecomms., Inc.*, 173 F. Supp. 2d 1282 (M.D. Fla. 2000) (no mention of § 1331); *AT&T Communications of Ohio, Inc. v. Ohio Bell Tel. Co.*, 29 F. Supp. 2d 855 (S.D. Ohio 1998) (same); *AT&T Communications of Ill., Inc v. Illinois Bell Tel. Co.*, No. 97 C 0886, 1998 WL 525437 (N.D. Ill. Aug. 18, 1998) (same). And one of the cases did not even involve the interpretation of an interconnection agreement, but instead dismissed a complaint alleging that an incumbent had refused to enter into an agreement in the first place. *See Atlantic Alliance Telecomms. Inc. v. Bell Atlantic*, No. 99 CV 4915 (ARR), 2000 WL 34216867, at *1, *5 (E.D.N.Y. Apr. 19, 2000).

The Securities Defendants cite only one district court decision that post-dates *Verizon Maryland* and *Starpower*. In *Contact Communications v. Qwest Corp.*, 246 F. Supp. 2d 1184 (D. Wyo. 2003), the district court followed pre-*Verizon Maryland* decisions erroneously holding that

the 1996 Act "strips federal district courts of their federal question jurisdiction." *Id.* at 1188-89.
That court gave no consideration to *Starpower* and attempted, in a sentence, to distinguish
*Verizon Maryland* as a case where the Supreme Court held only that "§ 252(e)(6) does not divest
the district courts of their authority under 28 U.S.C. § 1331 to review a state [commission's]
order for compliance with federal law." *Id.* at 1190.  But the Supreme Court's interpretation of
§ 252(e)(6) – which the Court found "does not even mention subject-matter jurisdiction" and
"neither says nor fairly implies" that it "withdraw[s] federal jurisdiction under § 1331," *Verizon
Maryland*, 535 U.S. at 644 – goes well beyond the narrow question of jurisdiction to review a
state agency decision.  *Contact* also cannot be squared with the FCC's holding in *Starpower* that
it is the parties' interconnection agreement – *not* federal law – that determines where a party may
bring a complaint to enforce an agreement.

C.    **At Most, Core Establishes an Exhaustion Requirement, Which Has Been Waived Here**

As noted above, the Third Circuit, based on an erroneous reading of *Starpower*,
"graft[ed] onto the [1996] Act an exhaustion requirement" for interconnection agreement
disputes.  *Core*, 493 F.3d at 335.  That the Third Circuit was adopting an exhaustion rule is clear
from its finding that the "FCC in *Starpower* did not interpret a statute that conferred jurisdiction
on the federal courts," showing that the court did not believe it was deferring to an FCC decision
about federal courts' subject-matter jurisdiction.  *Id.* at 344.  In addition, the district court in
*Core* had relied on the Fourth Circuit's decision in *Global NAPs* to hold that "subject matter
jurisdiction is conferred under section[] 1331" over Core's breach of interconnection agreement
claims, although it then adopted the same misreading of *Starpower* as the Third Circuit.  *Core
Communications,* 423 F. Supp. 2d at 498.

14

As the Supreme Court recently reaffirmed, "the usual practice . . . is to regard exhaustion as an affirmative defense." *Jones v. Bock*, 127 S. Ct. 910, 919 (2007); *see also id.* at 920 (finding in the statute "no reason to suppose that the normal pleading rules have to be altered to facilitate judicial screening of complaints specifically for failure to exhaust"). Consistent with this guidance, the Second Circuit has held that, absent an express statement by Congress to the contrary, exhaustion requirements are non-jurisdictional and therefore subject to waiver.[13] Applying those precedents, the *SNET* court "[a]ssum[ed], without deciding, that the Third Circuit's holding [in *Core*] that administrative exhaustion is required . . . is correct," and held that such an "exhaustion requirement is an affirmative defense rather than a jurisdictional bar." *SNET*, 2007 WL 3102034 at *2.

As the *SNET* court explained, *Verizon Maryland* confirms that nothing in the 1996 Act strips district courts of jurisdiction under § 1331, and *Core* itself finds that Congress has not given "'any guidance as to the proper interpretation and enforcement procedure' for the resolution of disputes concerning [interconnection agreements]." *Id.* (quoting *Core*, 493 F.3d at 341). Therefore, because "there is no reason that [*Core's*] exhaustion requirement is 'essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or controversy,'" exhaustion is merely an affirmative defense that is subject to waiver. *Id.* (quoting *Paese*, 449 F.3d at 445). The *SNET* court further held that the defendants there had waived the exhaustion defense "because they have forgone extensive opportunities to litigate it." *Id.* at *3.

---

[13] *See Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 446, 447 (2d Cir. 2006) (holding judicially created exhaustion requirement under ERISA an affirmative defense, that appellant had waived); *see also Zhong v. United States Dept. of Justice*, 480 F.3d 104, 120 (2d Cir. 2007) (holding exhaustion requirements under the Immigration and Nationality Act are non-jurisdictional affirmative defenses and could be waived); *Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003) (holding failure to exhaust administrative remedies is not jurisdictional unless it is "essential to the existence of the claim, or to ripeness, and therefore to the presence of an Article III case or controversy") (internal quotation marks omitted).

Here, it is plain that One Communications, by bringing this action in federal court, has waived the right to assert exhaustion as an affirmative defense to Verizon's counterclaims (and Verizon did not assert exhaustion in its Answer). Thus, *Core* could pose no barrier to Verizon's claims against One Communications, even assuming that decision were correct. Moreover, the Securities Defendants, which are not party to the interconnection agreements, do not have standing to assert the exhaustion defense.[14] The interconnection agreements grant the parties the choice whether to bring these claims in court or before a "regulatory" forum, and the Securities Defendants do not have authority to render that provision of the agreements superfluous by forcing resolution of these disputes to the various state commissions.

In any event, as set forth in One Communications' opposition to the motions to dismiss, even if the Securities Defendants did have standing, they have also waived any exhaustion requirement by seeking judicial resolution of the same underlying disputes in their suit against One Communications in the companion case, No. 07-5440. *See* Opposition of One Communications to Motions to Dismiss at Part III.A.

## III.    THE CONTRACTUAL PROVISIONS AT ISSUE HERE ARE STRAIGHTFORWARD, AND A PRIMARY JURISDICTION REFERRAL IS THEREFORE UNWARRANTED

The Securities Defendants go to considerable trouble to outline their alleged confusion over the meaning of the interconnection agreements at issue here, which, they contend (at 41), makes it "particularly true" that "the state commissions must determine the underlying issues" in the first instance. The Securities Defendants appear to argue for a "primary jurisdiction" referral

---

[14] *See, e.g., Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000) (holding that "a party must assert his own legal rights and interests," not "the legal rights or interests of third parties") (internal quotation marks omitted); *cf. Petersen v. Rath Packing Co.*, 461 F.2d 312, 315 (8th Cir. 1972) (concluding that employer could not assert as a defense the employee's failure to exhaust intra-union remedies, because the "question of exhaustion of internal Union procedures is the Union's concern, not the Company's").

to those commissions, although they do not label their argument as such. Such a referral is not warranted in the circumstances presented here.

As the Second Circuit has explained, the doctrine of primary jurisdiction "allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *National Communications Ass'n v. AT&T*, 46 F.3d 220, 222-23 (2d Cir. 1995) (internal quotation marks omitted). That doctrine has a "relatively narrow scope," and its application "has been refused when the issue at stake is legal in nature and lies within the traditional realm of judicial competence." *Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988). The Second Circuit has identified four factors district courts should consider in deciding whether a primary jurisdiction referral is appropriate: "(1) whether the question at issue is within the conventional experience of judges [or it is] within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made." *AT&T*, 46 F.3d at 222. None of these factors supports a referral to the state commissions here.

Taking the factors in reverse order, it is clear that neither the third nor fourth factor is satisfied. There is no pending application before any of the state commissions. Nor does this case raise the prospect – let alone a substantial danger – of inconsistent rulings. Because Verizon and One Communications have pursued the option, permitted in their contracts, of pursuing their breach of contract claims before this Court and will not be able to re-litigate those claims before the state agencies once this litigation concludes, it is "unlikely that any of the relief that this Court might eventually order would interfere with [agency] proceedings or lead to the

17

type of inconsistencies that the primary jurisdiction doctrine seeks to prevent." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 476 F. Supp. 2d 275, 283 (S.D.N.Y. 2007).

Nor does this case present questions that are particularly within the discretion of the state commissions. As noted above, even when a state commission interprets an interconnection agreement it previously approved, the state commission must do so "according to [its] terms" and violates federal law if its interpretation "effectively changes [its] terms." *Pacific Bell*, 325 F.3d at 1125-26, 1127. Thus, the relevant regulatory policy that state commissions are required to apply in interpreting interconnection agreements is the same rule this Court routinely applies in construing contracts: the terms of the agreements must be given their plain and ordinary meaning. *See Hatalmud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007) (where contract is "unambiguous on its face, it must be enforced according to the plain meaning of its terms.").

Finally, turning to the first factor, the contract interpretation issues here require no special telecommunications expertise to resolve and are well within the conventional experience of judges. As shown below, the breach of contract claims turn on two straightforward rules, clearly set forth in the interconnection agreements: First, the amount due for a particular call turns on whether the call originates and terminates in the same local calling area, as defined in Verizon's filed tariffs. Second, Verizon is financially responsible only for calls that originate on its network, not for calls that originate on third parties' networks. This Court is well-equipped to apply these contractual rules to the facts alleged in the breach of contract claims. Indeed, as a district court in the Second Circuit recently noted, in the context of arguments seeking to enforce an interconnection agreement, "[t]he determination of disputed contractual obligations is well within the conventional experience of the district court." *Verizon New York Inc. v. Global NAPs, Inc.*, 463 F. Supp. 2d 330, 342 (E.D.N.Y. 2006 ). A district court in the Eastern District of North

Carolina similarly held, in a case raising many of the same intercarrier payment issues as this case, that "[c]ontract disputes are certainly within the conventional experience of judges." *Global NAPs North Carolina, Inc. v. BellSouth Telecomms., Inc.*, 455 F. Supp. 2d 447, 449 (E.D.N.C. 2006). That court went on to resolve the contract disputes (in favor of the incumbent) on cross-motions for summary judgment. *See Global NAPs North Carolina, Inc. v. BellSouth Telecomms., Inc.*, slip op. at 6-7, No. 04-cv-96 (BO) (E.D.N.C. Sept. 28, 2007). This Court can and should follow the same course here.

Below, we set forth the contract provisions that govern Verizon's counterclaims, to show that the agreements set forth clear rules that this Court can apply. Although this recitation also shows that Verizon should prevail on the merits of its claims, the Court need not reach that further conclusion in order to find that a primary jurisdiction referral is not warranted here.

*The Local Calling Areas Scheme.* Verizon claims that Lightship overbilled it because it failed to use Verizon's actual, tariffed local calling areas to determine whether calls it received from Verizon are local (for which Verizon owes reciprocal compensation) or toll (for which Verizon owes access charges), which caused Lightship to seek payment of access charges for local calls. *See* Verizon's Countercl. ¶¶ 17-23. The interconnection agreements, however, straightforwardly set forth the rule Lightship was supposed to follow: only calls that "originate and terminate within the same Verizon local calling area *as defined by Verizon*" are subject to reciprocal compensation. Ex. 1, Maine ICA, Amend. 1, App. B § 2 (emphasis added). The definition of Reciprocal Compensation Traffic similarly provides that it excludes "Exchange Access" (or toll) traffic, and that the "determination of whether" a call "is Exchange Access . . . shall be based upon Verizon's local calling areas *as defined by Verizon*." *Id.* (emphasis added).

19

Although the Securities Defendants (at 45) attempt to muddy these unambiguous provisions by claiming that "Toll Traffic" is defined in the agreements "without reference to Verizon's local calling areas," that is wrong: the definition of Toll Traffic expressly incorporates the definition of "Reciprocal Compensation Traffic" by using that capitalized term and making clear that Toll Traffic only includes traffic that "is *not* Reciprocal Compensation Traffic." Ex. 1, Maine ICA, Amend. 1, App. B § 2 (emphasis added). The Securities Defendants also erroneously point (at 48) to a section that preserves each party's right "to designate the areas within which that Party's Customers may make calls which that Party rates as 'local' in its Customer Tariffs." Ex. 1, Maine ICA, Amend. 1, Attach. 1 § 4.4. But this provision is entirely consistent with the provisions Verizon cites: it makes clear that the fact that Verizon's local calling areas are to be used to calculate the amounts due between Verizon and Lightship does not prevent Lightship from billing its retail customers based on different local calling areas.[15]

*Improper Billing for Toll-Free (Virtual NXX) Traffic.* Verizon has also alleged that Lightship has offered its customers a toll-free service known as Virtual NXX, or VNXX, service, in which Lightship assigns its customers telephone numbers that do not correspond to the customers' actual geographic location. As the First Circuit explained, although the effect of that number assignment practice is that a call to such a customer "appears to be [to] a 'local' number," "behind the scenes that call is actually routed to a different local calling area." *Global NAPs, Inc. v. Verizon New England Inc.*, 444 F.3d 59, 64 (1st Cir. 2006).

---

[15] The Securities Defendants also seek (at 45-47) to manufacture an ambiguity as to the difference between optional and mandatory extended local calling areas. The ambiguity does not exist. The interconnection agreements, in defining Reciprocal Compensation Traffic, make clear that the Verizon local calling areas that both parties were to use "include[] a Verizon non-optional [*i.e.*, mandatory] Extended Local Calling Scope Arrangement, but do[] not include a Verizon optional Extended Local Calling Scope Arrangement." Ex. 1, Maine ICA, Amend. 1, App. B § 2. In addition, Verizon has alleged only that Lightship wrongfully failed to bill Verizon based on Verizon's mandatory local calling areas. *See* Verizon's Countercl. ¶¶ 18-20.

Again, the interconnection agreements provide straightforward rules to address such calls. Whether a call is subject to reciprocal compensation (which One Communications billed Verizon for these VNXX calls) "shall be based on the actual originating and terminating points of the complete end-to-end communication." Ex. 1, Maine ICA, Amend. 1, Attach. 1 § 1.1.1; *see* Ex. 4, New Hampshire ICA § 5.7.6. The reference to the "actual . . . points" at which calls originate and terminate makes clear that the parties intended to bill each other based on the physical location of their customers, not the telephone numbers that happen to be assigned to them.

The interconnection agreements are likewise clear that VNXX calls delivered to Lightship's ISP customers are treated no differently. The agreements provide that, for ISP-bound calls, the parties' "rights and obligations with respect to any intercarrier compensation that may be due . . . shall be governed by the terms of the" FCC's *ISP Remand Order*. Ex. 1, Maine ICA, Amend. 1, Attach. 1 § 2.1; *accord* Ex. 4, New Hampshire ICA, Amend. 4. The FCC informed the First Circuit that the *ISP Remand Order* "consider[ed] only calls placed to ISPs located in the same local calling area as the caller" and did not "decide[]" issues about VNXX calls, where the ISP is in a different local calling area from the caller. *Verizon New England*, 444 F.3d at 74 (internal quotation marks omitted). The Second Circuit concurred in that interpretation of the *ISP Remand Order*. *See Verizon New England*, 454 F.3d at 100-01.

Therefore, all VNXX calls fall within the agreements' definition of Toll Traffic, which is traffic that is "not Reciprocal Compensation Traffic" and "not . . . Measured Internet Traffic," a defined term that includes only those dial-up ISP calls that are covered by the FCC's *ISP Remand Order* payment regime. Ex. 1, Maine ICA, Amend. 1, App. B § 2; *see* Ex. 4, New Hampshire ICA § 1.46. The agreements further make clear that the rates for such calls are set

forth in the parties' respective tariffs. *See* Ex. 1, Maine ICA, Amend. 1, Attach. 1 §§ 2.2, 2.4;

Ex. 4, New Hampshire ICA § 5.7.4. Under those tariffs, Verizon is entitled to assess access

charges for originating these toll-free calls; it did not do so only because Lightship's number

assignment practice hid the fact that the calls were not actually local calls.

    *Improper Billing For Transit Traffic.* Verizon also alleges that Lightship has improperly

billed Verizon reciprocal compensation for "transit traffic," which is originated by a carrier other

than Verizon, travels over Verizon's network, and is then handed to Lightship for delivery to its

customers. Here, too, the agreements set forth clear rules. Verizon owes reciprocal

compensation only for traffic that is "originated by a Customer of one Party on that Party's

network and terminated to a Customer of the other Party on that other Party's network." Ex. 1,

Maine ICA, Amend. 1, App. B § 2; *see* Ex. 4, New Hampshire ICA § 1.50. Transit traffic,

however, is originated by a customer of a *third-party* on that *third-party's* network. If that were

not enough, the Maine, Vermont, and Massachusetts agreements further provide expressly that

"Reciprocal Compensation shall not apply to . . . Transit Traffic." Ex. 1, Maine ICA, Amend. 1,

Attach. 1 § 1.2.6.

## CONCLUSION

For the foregoing reasons, the Court should deny the motions to dismiss insofar as they rest on the Securities Defendants' erroneous contention that One Communications' claims must be brought before the relevant state commissions in the first instance.

Respectfully submitted,

By:   /s/ William David Sarratt

BETH A. SASFAI
VERIZON
One Verizon Way
Basking Ridge, NJ  07920
(908) 559-5730

SCOTT H. ANGSTREICH
WILLIAM DAVID SARRATT (WS-1439)
KELLOGG, HUBER, HANSEN,
    TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C.  20036
(202) 326-7900
(202) 326-7999 (facsimile)

*Attorneys for Verizon New England Inc.*

December 17, 2007

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent *via* first-class mail to those indicated as non-registered participants on December 18, 2007.

John Michael Teitler
Nicholas W. Lobenthal
Teitler & Teitler
1114 Avenue of the Americas
New York, NY 10036

Joseph M. Pastore, III
Brooks & Associates, LLP
1206 Pacific Street, Suite 1a
Brooklyn, NY 11216

Paul E. Summit
Ira Gross, Esq.
Sullivan & Worcester
One Post Office Square
Boston, MA 02109

Jayne S. Robinson
Robinson & McDonald LLP
61 Broadway
New York, NY 10006

Mark S. Resnick
The Resnick Law Group, P.C
Old City Hall
45 School Street
Boston, MA 02108

Nicholas John Panarella
Kelley Drye & Warren, LLP (NY)
101 Park Avenue
New York, NY 10178

David B. Mack
Sean T. Carnathan
O'Connor, Carnathan and Mack LLC
8 New England Executive Park
Suite 310
Burlington, MA 01803

    /s/ William David Sarratt
William David Sarratt