Exhibit B

EXECUTION COPY

# VOTING AGREEMENT

THIS VOTING AGREEMENT (this "**Agreement**") is entered into as of March 21, 2005 by and among CTC COMMUNICATIONS GROUP, INC., a Delaware corporation ("**CTC**"), CTC COMMUNICATIONS ACQUISITION CORP., a Delaware corporation and a wholly-owned Subsidiary of CTC ("**Merger Sub**"), LIGHTSHIP HOLDING, INC., a Delaware corporation ("**Holding**"), and each of the holders of capital stock of Holding set forth on **Schedule I** attached hereto (each, a "**Holding Stockholder**" and collectively, the "**Holding Stockholders**"). CTC, Merger Sub, Holding and the Holding Stockholders are sometimes referred to individually herein as a "**Party**" and collectively as the "**Parties**." Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Merger Agreement (as defined below).

WHEREAS, CTC, Merger Sub and Holding have entered into an Agreement and Plan of Merger, dated as of the date hereof (the "**Merger Agreement**"), which provides, among other things, for the merger (the "**Merger**") of Merger Sub with and into Holding, with the result that Holding, as the surviving corporation in the Merger, will become a wholly-owned subsidiary of CTC;

WHEREAS, the Holding Stockholders are the record and beneficial owners of 2,635,592 shares of Series AA Preferred, 10,679,753 shares of Voting Series BB Preferred, and 13,921,451 shares of Series CC Preferred of Holding, constituting 97.25% of all issued and outstanding Series AA Preferred, 98.49% of all issued and outstanding Voting Series BB Preferred and 99.50% of all issued and outstanding Series CC Preferred, respectively, on a fully diluted basis, as more particularly described on **Schedule I** attached hereto (each, a "**Share**" and collectively, the "**Shares**"); and

WHEREAS, as a condition precedent to execution of the Merger Agreement, the Holding Stockholders have agreed to execute and deliver this Agreement.

NOW, THEREFORE, in consideration of the premises contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1. **Restrictions on Disposition of Shares; Exclusivity.**

(a)    From and after the date hereof until the earlier to occur of the termination of the Merger Agreement in accordance with **Section 9** thereof or the Effective Time, each of the Holding Stockholders agrees not to sell, transfer, pledge, assign, encumber or dispose of, or to enter into any Contract, option or other agreement with respect to the sale, transfer, pledge, assignment, encumbrance or disposition of, or permit a Lien to exist on or grant any proxy with respect to (each, a "**Transfer**") any interest in any of the Shares, now owned or hereafter acquired, beneficially or of record by such Holding Stockholder, including without limitation, a disposition effected through dividend, liquidation, distribution or otherwise, except for the conversion of Shares in accordance with the terms of the Merger Agreement. Notwithstanding anything to the contrary contained herein, the Parties acknowledge and agree that to the extent any of the provisions of this Agreement violates or otherwise conflicts with any provisions of the

Shareholders' Agreement, the provisions of this Agreement shall control, and Holding and the Holding Stockholders shall be deemed to have waived their rights with respect to such conflicting provisions under the Shareholders' Agreement.

(b)    From and after the date hereof and until the earlier to occur of the termination of the Merger Agreement in accordance with **Section 9** thereof or the Effective Time, each Holding Stockholder agrees to immediately cease and terminate any existing solicitation, initiation, encouragement, activity, discussion or negotiation with any Persons, including such Person's Affiliates, officers, directors, managers, employees, financial advisors, agents and representatives, other than CTC and its representatives, with respect to any potential or contemplated acquisition proposal. Without limiting the foregoing, during such time period, no Holding Stockholder shall, directly or indirectly (i) solicit, initiate or encourage any inquiries or proposals that constitute, or could reasonably be expected to lead to, the submission of any proposal or offer from any Person relating to the acquisition of any Shares, or any substantial portion of the assets of Lightship (including any acquisition structured as a merger, consolidation or share exchange), (ii) participate in any discussions or negotiations regarding, furnish any information with respect to, assist or participate in, or facilitate in any other manner any effort or attempt by any Person to do or seek any of the foregoing, or (iii) enter into any letter of intent, agreement in principle or any acquisition agreement or other similar agreement with respect to any of the foregoing. Each Holding Stockholder agrees to promptly notify CTC of the receipt by such Holding Stockholder or any of its Affiliates, advisors or representatives of any of the foregoing proposals or any request for information regarding Lightship. Such notice shall be made orally and in writing and shall disclose the identity of the offeror and the terms and conditions of such proposal, inquiry or contact.

2.    **Voting**.

(a)    From and after the date hereof and until the earlier to occur of the termination of the Merger Agreement in accordance with **Section 9** thereof or the Effective Time, each Holding Stockholder hereby agrees that at any meeting of the stockholders of Holding, however called, and in any action by written consent of the stockholders of Holding, however taken, each Holding Stockholder shall cause its Shares to be present for quorum purposes and to vote or cause to be voted all of its Shares at such meeting or by such consent, and in any case, shall: (i) vote or cause to be voted all of its Shares in favor of the adoption of the Merger Agreement and approval of all transactions contemplated thereby; (ii) vote or cause to be voted all of its Shares against any action or agreement that would, or could reasonably be expected to, impede, interfere with, delay, postpone or attempt to discourage the Merger, including but not limited to (A) any extraordinary or significant corporate transaction (other than the Merger), such as a merger, other business combination, recapitalization, reorganization or liquidation involving Holding or its Affiliates and Subsidiaries, and any solicitations of, or participation in or negotiations with respect to, any such transaction or the furnishing of any information or access to the books, properties or records of Holding, its Affiliates and Subsidiaries, to any Person in connection with any such transaction, (B) a sale, transfer or disposition of a material amount of assets of Holding or any of its Subsidiaries, (C) any change in the board of directors of Holding, except as otherwise agreed to in writing by CTC, (D) any material change in the present capitalization of Holding, (E) any other material change in the corporate structure or Business of Holding; and (iii) not vote or cause to be

voted any of its Shares in a manner inconsistent with or otherwise prohibited by the Merger Agreement.

(b)     In furtherance of this **Section 2**, each Holding Stockholder hereby irrevocably grants to and appoints CTC and any Person designated in writing by CTC (and each of them individually), as its proxy and attorney-in-fact (with full power of substitution), for and in its name, place and stead, to vote the Shares at any meeting of the stockholders of Holding called with respect to any of the matters specified in or contemplated by this Agreement and the Merger Agreement. Each Holding Stockholder understands and acknowledges that CTC and Merger Sub are entering into the Merger Agreement in reliance on each Holding Stockholder's execution and delivery of this Agreement. Each Holding Stockholder hereby affirms that the irrevocable proxy set forth in this **Section 2** is given in connection with the execution of the Merger Agreement, and that such irrevocable proxy is given to secure the performance of the duties of each Holding Stockholder under this Agreement. Except as otherwise provided for herein, each Holding Stockholder hereby: (i) affirms that the irrevocable proxy is coupled with an interest and may under no circumstances be revoked, (ii) ratifies and confirms all that the proxies appointed hereunder may lawfully do or cause to be done by virtue hereof, and (iii) affirms that this irrevocable proxy is executed and intended to be irrevocable in accordance with the provisions of the DGCL. Notwithstanding any other provision of this Agreement to the contrary, the irrevocable proxy granted hereunder shall automatically terminate on the termination of this Agreement pursuant to **Section 15** hereof.

(c)     To the extent inconsistent with the foregoing provisions of this Section 2, each of the Holding Stockholders hereby revokes any and all previous proxies with respect to the Shares owned beneficially or of record by such Holding Stockholder. Each of the Holding Stockholders hereby irrevocably waives any rights of appraisal or rights to dissent from the Merger that such Holding Stockholder might have under the DGCL or otherwise.

3.     **Representations and Warranties of the Holding Stockholders.** Each of the Holding Stockholders hereby represents and warrants to CTC and Merger Sub as follows:

(a)     Such Holding Stockholder has the power and authority to enter into this Agreement, to perform such stockholder's obligations hereunder and to consummate the transactions contemplated hereby. This Agreement has been duly executed and delivered by such Holding Stockholder and, assuming the due authorization, execution and delivery hereof by each other Holding Stockholder, CTC and Merger Sub, constitutes a legal, valid and binding obligation of such Holding Stockholder, enforceable against such Holding Stockholder in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium and other similar Laws of general applicability relating to or affecting creditors' rights generally and by the application of general principles of equity.

(b)     Except with respect to any conflicting provisions of the Shareholders' Agreement, which are being waived in connection herewith, the execution and delivery of this Agreement and the consummation of the transactions herein contemplated will not conflict with or violate any Law applicable to such Holding Stockholder or by which the property of the Holding Stockholder is bound or affected, violate or conflict with or result in any breach of

or constitute a default under any Contract to which such Holding Stockholder is a party or by which such Holding Stockholder or such Holding Stockholder's properties are bound or affected, which conflict, violation, breach or default would adversely affect such Holding Stockholder's ability to perform such Holding Stockholder's obligation under this Agreement.

(c)    The Shares set forth opposite such Holding Stockholder's name on **Schedule I** attached hereto constitute the only Shares owned beneficially or of record by such Holding Stockholder or in which such Holding Stockholder has any legal or beneficial interest. Such Holding Stockholder has the sole power with respect to voting and Transfer of the Shares set forth opposite its name on such Schedule. The Shares set forth opposite such Holding Stockholder's name on such Schedule and the certificates representing such Shares are now, and at all times during the term hereof will be, owned beneficially and of record by such Holding Stockholder free and clear of all Liens and all agreements with respect to voting of such Shares, other than encumbrances created by this Agreement, federal and state securities laws and the Shareholders' Agreement.

(d)    None of the execution, delivery or performance of this Agreement by such Holding Stockholder will require any consent or approval of or filing with any third party, including any governmental or other regulatory body, other than consents or waivers that have been obtained.

(e)    Such Holding Stockholder has received and reviewed a copy of this Agreement and the Merger Agreement, and has sufficient knowledge and experience in financial and business matters to be capable of evaluating the merits and risks of this Agreement and the Merger Agreement and the transactions contemplated hereby and thereby, and he, she or it fully understands the significance and effects of this Agreement and the Merger Agreement, and understands and consents to the transactions contemplated hereby and thereby. Such Holding Stockholder acknowledges having had an opportunity to consult with and has been advised by counsel of its choice with respect to this Agreement and the Merger Agreement and the transactions contemplated hereby and thereby.

(f)    Such Holding Stockholder acknowledges that CTC and Merger Sub would not have entered into the Merger Agreement without such Holding Stockholder's agreement to be bound by the terms and provisions of this Agreement and that CTC and Merger Sub are relying upon the truth and accuracy of the representations and warranties set forth herein in executing the Merger Agreement.

(g)    Except for the commission or finder's fees payable to Q Advisors LLC pursuant to the Merger Agreement, no Person or entity is, or will be, entitled to any commission or finder's fee from such Holding Stockholder in connection with this Agreement or the transactions contemplated by this Agreement.

4.    **Equitable Relief**. Each of the Holding Stockholders acknowledges and agrees that CTC would be irreparably damaged in the event any of the provisions of this Agreement were not performed by such Holding Stockholder in accordance with their respective terms. Accordingly, CTC shall be entitled to an injunction or injunctions to prevent breaches of this Agreement, to enforce specifically the terms and provisions hereof or to seek other equitable

relief, without the necessity of posting any bond or other security, in any court of competent jurisdiction. Each Holding Stockholder agrees to waive the defense in any such Action that CTC has an adequate remedy at law, and not oppose, legally or otherwise, the propriety of equitable performance as a remedy.

5.     **Further Assurances**. Each of the Holding Stockholders shall execute and deliver such additional instruments and other documents and shall take such further actions as may be reasonably necessary to effectuate, carry out and comply with all of such Holding Stockholder's obligations under this Agreement. Without limiting the generality of the foregoing, none of the Parties hereto shall enter into any Contract (or alter, amend or terminate any existing Contract) or transaction if such action would reasonably be expected to interfere with the ability of any Party to effectuate, carry out and comply with all of the terms of this Agreement.

6.     **Governing Law**. This Agreement shall be governed by and construed in accordance with the substantive Laws of the State of New York without giving effect to any choice or conflict of Law provision (whether of the State of New York or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of New York.

7.     **Submission to Jurisdiction**. Each of the Parties irrevocably submits to the jurisdiction of any state or federal court sitting in New York, New York, in any Action arising out of or relating to this Agreement and agrees that all claims in respect of the Action may be heard and determined in any such court. Each Party also agrees not to bring any Action arising out of or relating to this Agreement in any other court. Each of the Parties waives any defense or objection of improper venue or inconvenient forum to the maintenance of any Action so brought and waives any bond, surety, or other security that might be required of any other Party with respect thereto.

8.     **Succession and Assignment**. This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors, heirs and legal representatives and permitted assigns. Nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any rights, benefits or remedies of any nature whatsoever under or by reason of this Agreement. No Party may assign or delegate either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Party.

9.     **Counterparts**. This Agreement may be executed in counterparts (including by means of facsimile), each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

10.     **Headings**. The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

11.     **Notices**. All demands, notices, requests, consents and other communications required or permitted under this Agreement shall be given in the manner set forth in Section 10 of the Merger Agreement.

12.    **Amendments and Waivers.**  No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the Parties to be charged therewith.  No waiver by any Party of any provision of this Agreement or any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such default, misrepresentation, or breach of warranty or covenant.

13.    **Severability.**  Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

14.    **Entire Agreement.**  This Agreement together with the Merger Agreement and the other Transaction Documents constitute the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

15.    **Termination.**  This Agreement shall terminate upon the earlier to occur of: (a) the Effective Time or (b) the date on which the Merger Agreement is terminated in accordance with **Section 9** thereof its terms; *provided, however,* that nothing herein shall relieve any Party for any breach of this Agreement prior to termination of this Agreement.

*[signature pages follow]*

**SCHEDULE I**

Holding Stockholders

| Lightship Holding Stockholder | Number of Shares of Series CC Preferred | Number of Shares of Voting Series BB Preferred* | Number of Shares of Voting Series AA Preferred | Total Voting Shares | % of Total Fully-Diluted Shares | Series AA Options held by Shareholder |
|---|---|---|---|---|---|---|
| J.P. Morgan SBIC LLC | 4,112,698 | 7,518,666 | | 11,631,364 | 42.23% | - |
| Sixty Wall Street SBIC Fund, L.P. | 887,302 | 2,496,839 | | 3,384,141 | 12.29% | - |
| The Megunticook Fund II, L.P. | 6,052,697 | | | 6,052,697 | 21.97% | - |
| The Megunticook Side Fund II, L.P. | 1,447,303 | | | 1,447,303 | 5.25% | - |
| Kevin O'Hare | 729,167 | 22,581 | 962,500 | 1,714,248 | 6.22% | - |
| Jeff Koester | 444,444 | | 444,444 | 888,888 | 3.23% | - |
| Rich Kendall | | | 398,444 | 398,444 | 1.45% | 101,556 |
| Elizabeth Downey | | | 25,000 | 25,000 | 0.09% | 50,000 |
| Richard Girardin | | | 195,694 | 195,694 | 0.71% | - |
| Rick Royer | | | 179,186 | 179,186 | 0.65% | - |
| David Jorgensen | 127,840 | | 180,324 | 308,164 | 1.12% | - |
| James D. Houghton | 90,000 | | | 90,000 | 0.33% | - |
| Nick Zeitvogel | | | 250,000 | 250,000 | 0.91% | - |
| Osprey Partners | | 641,667 | | 641,667 | 2.33% | - |
| Alta Associates | 30,000 | | | 30,000 | 0.11% | - |
| Total | 13,921,451 | 10,679,753 | 2,635,592 | 27,236,796 | 98.88% | 151,556 |
| Total O/S Voting | 13,991,451 | 10,843,463 | 002,710,157 | 27,545,070 | 100.00% | |
| | 99.50% | 98.49% | 97.25% | 98.88% | | |

\* Excludes 3,156,538 Non-Voting Shares held by JP Morgan SBIC, LLC

P.02/03

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

**CTC COMMUNICATIONS GROUP, INC.**

By: _Kenneth D. Peterson_

Name: _Kenneth D. Peterson, Jr._

Title: _President_

**CTC COMMUNICATIONS ACQUISITION CORP.**

By: _____

Name:

Title:

19:25 FAX 781 522 8711          CTC COMMUNICATION

# SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

**CTC COMMUNICATIONS GROUP, INC.**

By:_____
Name:
Title:

**CTC COMMUNICATIONS ACQUISITION CORP.**

By: _____
Name:
Title:

## SIGNATURE PAGE TO VOTING AGREEMENT

**IN WITNESS WHEREOF,** the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

**LIGHTSHIP HOLDING, INC.**

By: _Lee M. O'Hare, of President + CEO_

Name: _Kevin M. O'Hare_

Title: _President + CEO_

(FRI) 3. 18' 05 17:59/ST. 17:57/NO. 4860589229 P 2

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

**J.P. MORGAN SBIC LLC**

By:
Name:
Title:
      Michael R. Hannon
      Managing Director


**SIXTY WALL STREET SBIC FUND, L.P.**
By:    Sixty Wall Street SBIC Corporation
Its:    General Partner

By:
Name:
Title:
      Michael R. Hannon
      Managing Director

## SIGNATURE PAGE TO VOTING AGREEMENT

**IN WITNESS WHEREOF,** the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

THE MEGUNTICOOK FUND II, L.P.
By:    Megunticook Partners II, LLC
Its:    General Partner

By: _____
Name: _James Bek. Haughton_
Title: _Managing Director_

THE MEGUNTICOOK SIDE FUND II, L.P.
By:    Megunticook Side Fund Partners II, LLC
Its:    General Partner

By: _____
Name: _James Bek. Haughton_
Title: _Managing Director_

16:37        LIGHTSHIPTELECOM                    215 641 9790      P.05

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

Kevin O'Hare

15:32    LIGHTSHIPTELECOM    215 641 9790    P.02

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

Jeff Koester

TOTAL P.02

JUL 18. 2005  8:10PM                          No.4701    P. 3

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

_____
James D. Houghton

16:37          LIGHTSHIPTELECOM                    215 641 9790     P.06

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

Dave Jorgensen

By Kevin McHare, as Attorney in Fact

JUN. 18. 2005  8:09PM                              No.4701   P. 2

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

ALTA ASSOCIATES

By: _____

Name: James Bill Haughton

Title: Partner

11:21 FAX 781 255 7723        STAPLES NORWOOD                    002
15:32        LIGHTSHIPTELECOM                    215 641 9790    P.02

## SIGNATURE PAGE TO VOTING AGREEMENT

**IN WITNESS WHEREOF,** the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

Rich Kendall

From

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement and as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

Elizabeth Downey

16:37    LIGHTSHIPTELECOM    215 641 9790    P.07

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

Richard Girardin

By Kevin McHare, as Attorney in Fact

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

Rick Royer

By Kevin McMahon, as Attorney in fact

FRI 16:28 FAX     LIGHTSHIPTELECOM     4'29     215 641 9790     @001/001
18-2005   15:43                                                          P.02

MAR 18 2005

## SIGNATURE PAGE TO VOTING AGREEMENT

IN WITNESS WHEREOF, the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

_Nick Zeitvogel_

MAR 10. 2005  8:09PM                                     No.4701   P. 1

# SIGNATURE PAGE TO VOTING AGREEMENT

**IN WITNESS WHEREOF,** the undersigned hereby executes the Voting Agreement dated as of the date thereof and authorizes this signature page to be attached to a counterpart of the Agreement.

OSPREY PARTNERS

By: _____

Name: Irwin Deb. Haughton

Title: Managing Member