Exhibit D

EXECUTION COPY

## CONFIDENTIALITY, NON-COMPETITION

## AND

## NON-SOLICITATION AGREEMENT

THIS CONFIDENTIALITY, NON-COMPETITION AND NON-SOLICITATION, AGREEMENT is made as of the 20th day of May, 2005 (this "Agreement"), by and among The Megunticook Fund II, L.P. ("Megunticook Fund"), The Megunticook Side Fund II, L.P. ("Megunticook Side Fund"), Megunticook Partners II, LLC ("Megunticook Fund GP"), Megunticook Side Fund Partners II, LLC ("Megunticook Side Fund GP", and together with Megunticook Fund, Megunticook Side Fund and Megunticook Fund GP, "Megunticook"), CTC Communications Group, Inc. ("CTC") and Lightship Holding, Inc. ("Holding," and together with Megunticook and CTC, the "Parties"). Capitalized terms used herein but not defined herein shall have the meanings given such terms in the Merger Agreement (as defined below).

### RECITALS

WHEREAS, CTC, Holding and CTC Communications Acquisition Corp. ("Merger Sub") have entered into that certain Agreement and Plan of Merger dated, March 21, 2005 (the "Merger Agreement") pursuant to which Merger Sub shall merge with and into Holding and Holding shall become a wholly-owned subsidiary of CTC; and

WHEREAS, the Megunticook Fund and the Megunticook Side Fund hold a substantial equity interest in Holding and will benefit financially from the transactions contemplated by the Merger Agreement; and

WHEREAS, it is a condition precedent to the Closing that Megunticook enter into this Agreement.

NOW THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Megunticook, intending to be legally bound hereby agrees with CTC and Holding as follows:

1. **Confidentiality**.

    (a) Megunticook agrees that, for a period of 36 months after the Effective Time, it will not disclose any Confidential Information (as hereinafter defined) in any manner whatsoever; provided, however that Megunticook may disclose Confidential Information as follows: (i) as expressly permitted by this Agreement; (ii) to its limited partners as necessary to fulfill its reporting obligations in connection with the Merger under the partnership agreements of the Megunticook Fund and the Megunticook Side Fund, provided that such limited partners are bound by confidentiality obligations to Megunticook; or (iii) if CTC or Holding give prior written consent to such disclosure. Megunticook agrees to maintain and protect in the strictest confidence all Confidential Information with the same degree of care to avoid disclosure thereof as it employs with respect to its own confidential information, but not less than a reasonable degree of care. "Confidential Information" means any and all information, in any form, means or

medium, including, without limitation, written, oral, graphic or electronic, concerning or relating to CTC, Merger Sub (together, the "CTC Entities"), Holding, Lightship Telecom LLC ("Lightship Telecom", and together with Holding, the "Lightship Companies"), the Business or the business of the CTC Entities (whether prepared by CTC, Merger Sub, the Lightship Companies, Megunticook or otherwise) that was furnished to Megunticook or any of their employees or officers (together, "Representatives") prior to or following the date hereof; *provided, however*, that in order for any such information provided by Lightship or the CTC Entities subsequent to the date hereof to be considered "Confidential Information," such information must be labeled or otherwise identified as confidential. The term "Confidential Information" shall not include information that: (a) is or becomes available to the public generally, other than as a result of disclosure by Megunticook or any of its employees, agents, officers, representatives or limited partners in breach of the terms of this Agreement; (b) becomes available to Megunticook from a source other than the Lightship Companies or the CTC Entities which, to Megunticook's knowledge, has no duty of confidentiality with respect to a CTC Entity or a Lightship Company; (c) has been independently acquired or developed by Megunticook, as established by contemporaneous written records; or (d) discloses the financial results of Megunticook's investment in the Lightship Companies.

(b)     If Megunticook is requested or required to disclose any Confidential Information by oral questions, interrogatories, requests for information or other documents in legal proceedings, subpoena, civil investigative demand or any other similar process, Megunticook shall provide CTC and the Surviving Corporation, if Megunticook is not legally prohibited therefrom, with prompt notice of any such request or requirement so that CTC and/or the Surviving Corporation has an opportunity to seek a protective order or other appropriate remedy at its sole expense or waive compliance with the provisions of this Agreement. If CTC or the Surviving Corporation has not secured a protective order or other appropriate remedy, and Megunticook is nonetheless then legally compelled to disclose any Confidential Information, Megunticook may, without liability hereunder, disclose that portion of the Confidential Information that it reasonably believes is necessary to be disclosed based on the advice of counsel.

(c)     Nothing herein shall be deemed to limit or restrict Megunticook from disclosing any information in any action or proceeding by Megunticook to enforce any rights that Megunticook may have against CTC or Holding.

2.    **Non-Solicitation.**  For a period of 12 months after the Effective Time, Megunticook shall not solicit, divert, take away, or induce any employee of a CTC Entity or the Lightship Companies to leave their employ with such company, nor shall Megunticook solicit, induce or influence any other employee to do so; provided, however, that the foregoing shall not apply to (i) an advertisement made in a newspaper of general circulation, (ii) any person who has not been an employee of a CTC Entity and/or the Lightship Companies for a period of 90 days immediately preceding such solicitation; or (iii) the consideration of unsolicited inquiries of employment not specifically directed at employees a CTC Entity, and/or the Lightship Companies. Megunticook further agrees that for a period of 12 months after the Effective Time, Megunticook shall not solicit, induce or influence any current customer or supplier of a CTC Entity and/or the Lightship Companies to cease doing business with, or to reduce the amount of business done with, the CTC Entity and/or the Lightship Companies.

3. **Non-Competition.** Megunticook agrees for a period of 12 months after the Effective Time not to own or have any interest in, participate in, manage or control (whether as an officer, director, employee, partner, member, manager, agent, consultant, contractor, shareholder, investor or otherwise), consult with or advise in any capacity, render services for, or in any manner engage in a Competing Business anywhere within the Commonwealth of Massachusetts or the States of Connecticut, New York, New Jersey, Delaware, Pennsylvania, Maine, New Hampshire, Rhode Island or Vermont or any other territory in which the Lightship Companies maintained a facility or marketed, distributed or sold services at any time prior to the Effective Time. "Competing Business" means any business activity that competes with the business of the Lightship Companies as such business is conducted during the 24 month period ending on the Effective Date.

4. **Non-Disparagement.** Megunticook shall not, and will not permit any of its Representatives to make any remarks or take any action that would demean, disparage or criticize: (a) the Lightship Companies, the Surviving Corporation, any CTC Entity or any of their current and former officers or directors; or (b) any product or service sold, marketed or distributed by the Lightship Companies, a CTC Entity or the Surviving Corporation.

5. **Remedies.** The Parties agree that money damages would not be a sufficient remedy for any breach or threatened breach of this Agreement by any Party hereto, that any such breach or threatened breach will cause irreparable harm and that the non-breaching Party shall be entitled to equitable relief, including injunction and specific performance, as a remedy of any such breach. Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement, but shall be in addition to all other remedies available at law or equity to the non-breaching Party.

6. **Entire Agreement.** This Agreement, the Merger Agreement and the other Transaction Documents (including the exhibits, schedules and documents referred to herein and therein) constitute the entire agreement among the Parties and supersede any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they relate in any way to the subject matter hereof.

7. **Succession and Assignment.** This Agreement shall be binding upon, and inure to the benefit of, the Parties named herein and their respective successors and permitted assigns. No Party may assign or delegate either this Agreement or any of its rights, interests or obligations hereunder without the prior written approval of the other Party. Any purported assignment or delegation in violation of this **Section 7** shall be null and void.

8. **Counterparts.** This Agreement may be executed in counterparts (including by means of facsimile), each of which shall be deemed an original but all of which together shall constitute but one and the same instrument.

9. **Headings.** The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

10. **Notices.** All demands, notices, requests, consents and other communications required or permitted under this Agreement shall be in writing and shall be personally delivered

3

against receipt or sent by facsimile machine, nationally recognized commercial carrier (including FedEx and UPS) or U.S. Postal Service overnight delivery service, or, deposited with the U.S. Postal Service mailed first class, registered or certified mail, postage prepaid, return receipt requested, as set forth beneath each Party's signature to this Agreement. Notices shall be deemed given upon the earlier to occur of (i) receipt by the Party to whom such notice is directed; (ii) if sent by facsimile machine, on the Business Day such notice is sent if sent (as evidenced by the facsimile confirmed receipt) prior to 5:00 p.m. Eastern Time and, if sent after 5:00 p.m. Eastern Time, on the Business Day after which such notice is sent; (iii) on the first Business Day following the day the same is deposited with the commercial carrier or U.S. Postal Service if sent by commercial overnight delivery' service; or (iv) the fifth Business Day following deposit thereof with the U.S. Postal Service as aforesaid. Each Party by notice duly given in accordance therewith may specify a different address for the giving of any notice hereunder.

11. **Governing Law**. This Agreement shall be governed by, and construed in accordance with, the substantive Laws of the State of New York without giving effect to any choice or conflict of Law provision (whether of the State of New York or any other jurisdiction) that would cause the application of the Laws of any jurisdiction other than the State of New York.

12. **Waivers and Amendments**. No amendment of any provision of this Agreement shall be valid unless the same shall be in writing and signed by the Parties to be charged therewith. No waiver by any Party of any provision of this Agreement or any default, misrepresentation, or breach of warranty or covenant hereunder, whether intentional or not, shall be valid unless the same shall be in writing and signed by the Party making such waiver, nor shall such waiver be deemed to extend to any prior or subsequent default, misrepresentation, or breach of warranty or covenant hereunder or affect in any way any rights arising by virtue of any prior or subsequent such default, misrepresentation, or breach of warranty or covenant.

13. **Severability**. Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

14. **Expenses**. Each of the Parties will bear its own costs and expenses (including legal fees and expenses) incurred in connection with the preparation of this Agreement.

15. **Computation of Days**. Whenever this Agreement provides for a date, day or period of time on or prior to which actions or events are to occur or not occur, and if such date, day or last day of such period of time falls on a day other than a Business Day, then the same shall be deemed to fall on the immediately following Business Day.

16. **Submission to Jurisdiction**. Each of the Parties irrevocably submits to the jurisdiction of any state or federal court sitting in New York, New York, in any Action arising out of or relating to this Agreement and agrees that all claims in respect of the Action may be heard and determined in any such court. Each Party also agrees not to bring any Action arising out of or relating to this Agreement in any other court. Each of the Parties waives any defense or objection of improper venue or inconvenient forum to the maintenance of any Action so brought and waives any bond, surety, or other security that might be required of any other Party with respect thereto.

*[Signature page follows]*

\* \* \* \*

*[Signature page follows]*

EXECUTION COPY

IN WITNESS WHEREOF, the Parties hereto have executed or caused this Agreement to be executed by their duly authorized representatives as of the day and year first written above.

THE MEGUNTICOOK FUND II, L.P.

By: Megunticook Partners II, LLC, its general partner

By: _____
Name: Thomas N. Matlack
Title: Managing Director

THE MEGUNTICOOK SIDE FUND II, L.P.

By: Megunticook Side Fund Partners II, LLC, its general partner

By: _____
Name: Thomas N. Matlack
Title: Managing Director

MEGUNTICOOK PARTNERS II, LLC

By: _____
Name: Thomas N. Matlack
Title: Managing Director

MEGUNTICOOK SIDE FUND PARTNERS II, LLC

By: _____
Name: Thomas N. Matlack
Title: Managing Director

137 Newbury Street, 2nd Floor
Boston, MA 02116
Attn: Thomas N. Matlack

With a copy to:

Edwards & Angell, LLP
2800 Financial Plaza
Providence, RI 02903
Attn.: Elizabeth S. Small, Esq.

IN WITNESS WHEREOF, the Parties hereto have executed or caused this Agreement to be executed by their duly authorized representatives as of the day and year first written above.

CTC COMMUNICATIONS GROUP, INC.

By: _____
Name: James Prenetta Jr.
Title: Secretary & General Counsel

220 Bear Hill Road
Waltham, MA 02451
Attention: James P. Prenetta, Jr.

With a copy to:

Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Attention: Jacob J. Miles, Esq.

LIGHTSHIP HOLDING, INC.

By: _____
Name: Kevin M. O'Hare
Title: President

c/o James P. Prenetta, Jr
220 Bear Hill Road
Waltham, MA 02451

With a copy to:
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Attention: Jacob J. Miles, Esq.

IN WITNESS WHEREOF, the Parties hereto have executed or caused this Agreement to be executed by their duly authorized representatives as of the day and year first written above.

CTC COMMUNICATIONS GROUP, INC.

By: _____
Name: _____
Title: _____

220 Bear Hill Road
Waltham, MA 02451
Attention: James P. Prenetta, Jr.

With a copy to:

Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Attention: Jacob J. Miles, Esq.

LIGHTSHIP HOLDING, INC.

By: /s/ Kevin M. O'Hare, as President & CEO
Name: Kevin M. O'Hare
Title: President + CEO

c/o James P. Prenetta, Jr
220 Bear Hill Road
Waltham, MA 02451

With a copy to:
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178
Attention: Jacob J. Miles, Esq.