UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| IN RE ONE COMMUNICATIONS CORP. | : | MASTER FILE |
|  | : | 07 Civ. 3905 (LTS)(AJP) |
|  | : | ECF |
| This Document Relates To:  07 Civ. 3905 | : |  |
|  | : |  |
| One Communications Corp., Plaintiff | : |  |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


# MOVANTS' JOINT REPLY TO OPPOSITIONS TO
## MOTIONS TO DISMISS WITH RESPECT TO JURISDICTION

ROBINSON & McDONALD LLP
61 Broadway, Suite 1415
New York, New York 10006
Tel.: 212 953-3400
Fax.: 212 953-3690

Attorneys for Defendants
JP Morgan SBIC LLC and
Sixty Wall Street SBIC Fund, L.P.

DREIER LLP
499 Park Avenue
New York, New York 10022
Tel.: 212 328-6100
Fax.: 212 895-2900

Attorneys for Defendants
Kevin O'Hare and Jeffrey Koester

SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
Tel.: 617 338-2800
Fax: 617 338-2880

Attorneys for Defendants
The Megunticook Fund II, L.P., and
The Megunticook Side Fund II, L.P.

O'CONNOR, CARNATHAN
AND MACK LLD
8 New England Executive Park, Suite 310
Burlington, Massachusetts 01803
Tel.: 781 359-9005
Fax: 781 359-9001

Attorneys for Defendants
Kevin O'Hare and Jeffrey Koester

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT....................................................................................................... 3

    I.    THIS COURT HAS NO JURISDICTION OVER
         THE ICA CLAIMS UNTIL THE STATE COMMISSIONS
         MAKE AN INITIAL DETERMINATION ........................................... 3

        A.   No 28 U.S.C.A. § 1331 Jurisdiction Exists Over The ICA Claims ............... 3

        B.   No Supplemental Jurisdiction Exists Over ICA Claims ................................ 7

    II.   PLAINTIFF'S AND VERIZON'S CLAIMS
        SHOULD BE DISMISSED ................................................................... 10

    III.  IN THE ALTERNATIVE, THE COURT SHOULD
        DISMISS THE ICA CLAIMS UNDER THE PRIMARY JURISDICTION
        DOCTRINE ........................................................................................... 12

    IV.  AT A MINIMUM, ALL CLAIMS SHOULD BE
        STAYED UNTIL THE ICA CLAIMS ARE RESOLVED ................................. 14

CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**Cases**

Accord Ricci v. Chicago Mercantile Exch.,
    409 U.S. 289 (1973) ...................................................................................................... 15

Arbaugh v. Y&H Corp., 546 U.S. 500 (2006) ............................................................................ 10

AT&T Commc'ns of Illinois v. Illinois Bell Tel. Co.,
    1998 U.S. Dist. LEXIS 12925, *14 (N.D. Ill. 1998) ................................................... 7

AT&T Commc'ns of Ohio, Inc. v. Ohio Bell Tel. Co.,
    29 F. Supp.2d 855 (S.D. Ohio 1998) ......................................................................... 7

Atlantic Alliance Telecomms. v. Bell Atlantic,
    2000 U.S. Dist. LEXIS 19649 (E.D.N.Y. 2000) ....................................................... 7

Azby Brokerage, Inc. v. Allstate Ins. Co.,
    637 F.Supp. 382 (S.D.N.Y. 1986) ............................................................................. 15

Bankers Trust Co. v. Rhoades,
    859 F.2d 1096 (2d Cir. 1988) ..................................................................................... 11

Bay Shore Union Free Sch. Dist. v. Kain,
    485 F.3d 730 (2d Cir. 2007) ....................................................................................... 3

Bell Atl.-Virginia, Inc. v. WorldCom Techs. of Virginia, Inc.,
    70 F.Supp.2d 620 (E.D. Va. 1999) ............................................................................. 3

Bell Atlantic-Virginia v. WorldCom Techs. of Virginia, Inc.,
    70 F. Supp.2d 620 (E.D. Va. 1999) ............................................................................ 7

BellSouth Telecom., Inc. v. MCImetro Access Transmission Servs., Inc.,
    317 F.3d 1270 (11th Cir. 2003) .............................................................................. 5, 7

Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.,
    369 F.3d 385 (4th Cir. 2004) ..................................................................................... 6

Contact Commc'ns v. Qwest Corp.,
    246 F. Supp.2d 1184 (D. Wyo. 2003) ........................................................................ 7

Core Commc'ns, Inc. v. Verizon Pa. Inc.,
    493 F.3d 333 (3d Cir. 2007) .......................................................................... 1, 3, 6, 7, 8, 9

Core Commc'ns, Inc. v. Verizon Pa. Inc.,
    E.D. Pa. 04-cv-4513 (TJS) .......................................................................................... 4

Core Commc'ns, Inc. v. Verizon Pa., Inc.,
  423 F.Supp.2d 493 (E.D. Pa. 2006) ................................................................. 5, 9

Davel Commc'ns, Inc. v. Qwest Corp.,
  460 F.3d 1075 (9th Cir. 2006) ................................................................. 13

Ellis v. Tribune Television Co.,
  443 F.3d 71 (2d Cir. 2006).............................................................. 12

Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.,
  84 F.3d 91 (2d Cir. 1996)................................................................... 12

Global Naps, Inc. v. Mass Dept. of Telecomm.,
  427 F.3d 34, 46 (1st Cir. 2005)........................................................ 4, 8

Grimes v. Vitalink Comm'ns Corp.,
  17 F.3d 1553 (3d Cir. 1994)...................................................... 10

Hansen v. Norfolk and W. Ry. Co.,
  689 F.2d 707 (7th Cir. 1982) ...................................................... 15

Higgins v. New York Stock Exch., Inc.,
  942 F.2d 829 (2d Cir.1991).................................................. 11

Illinois Bell Tel. Co., Inc. v. Global NAPS Ill., Inc.,
  2007 WL 4531790, *5 (N.D. Ill. Dec. 17, 2007)........................................ 3, 5, 6, 8

In re United Telecomm., Inc., Securities Litigation,
  No. 90-2251-EEO, 1993 WL 100202, *3 (D. Kan. Mar. 4, 1993) ........................... 11

Indiana Bell Tel. Co. v. McCarty,
  30 F. Supp.2d 1100 (S.D. Ind. 1998) ................................................ 7

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
  456 U.S. 694 (1982)............................................................. 3

Intermedia Commc'ns v. BellSouth Telecomms., Inc.,
  173 F. Supp.2d 1282 (M.D. Fla. 2000) ............................................ 7

Johnson v. Nyack Hosp.,
  86 F.3d 8 (2d Cir. 1996)................................................... 11

Bowers v. Transp. Maritima Mexicana, S.A.,
  901 F.2d 258 (2d Cir.1990).............................................. 11

Lyndonville Sav. Bank & Trust Co.,
  211 F.3d 697 (2d Cir. 2000)............................................... 10

Nat'l Cable & Telecomm. Ass'n. v. Brand X Internet Serv.,
    545 U.S. 967 (2005)...................................................................................................... 14

National Commc'ns Ass'n v. AT&T,
    46 F.3d 220 (2d Cir. 1995)........................................................................................... 12

Oscar Gruss & Son, Inc. v. Hollander,
    337 F.3d 186 (2d Cir. 2003) ......................................................................................... 10

Pac. Bell Tel. Co., v. Global NAPS Ca., Inc.,
    CV 05-7734 ODW, Order 7 n. 5 (PJWx) (C.D. Cal. Oct. 3, 2007) ......................... 3, 5

Pall v. KPMG, LLP, Civ. No. 3:03CV00842(AWT),
    2006 WL 2800064, *3 (D. Conn. Sept. 29, 2006) ....................................................... 11

Puerto Rico Tel. Co. v. Telecomms. Regulatory Bd.,
    189 F.3d 1(1st Cir. 1999).............................................................................................. 8

Southern New England Tel. Co. v. Global NAPs, Inc.,
    520 F. Supp.2d 351 (D. Conn. Oct. 19, 2007) ........................................................... 9

United States v. Cotton,
    535 U.S. 625 (2002)....................................................................................................... 10

United States v. W. Pac. R.R. Co., 352 U.S. 59, 63 (1956) ………………………….......... 12

Verizon Md., Inc. v. Global NAPS, Inc.,
    377 F.3d 355 (4th Cir. 2004) ........................................................................................ 4

Verizon Md., Inc. v. Public Service Comm'n of Md.,
    535 U.S. 635 (2002)....................................................................................................... 4, 5

Verizon New York Inc. v. Choice One Commc'ns of New York, Inc.,
    499 F.Supp.2d 326, at fn 11 (S.D.N.Y. 2007) ........................................................... 4

Waudby v. Verizon Wireless Services, LLC, 2007 WL 1560295, *6 (D.N.J. May 25, 2007) .... 15

**Statutes and Rules**

§ 252(e)(6) ............................................................................................................ 5, 9

28 U.S.C.A. § 1331 ............................................................................................. 3, 4, 7

28 U.S.C.A. § 1367 ................................................................................................... 7

47 U.S.C.A. § 252(e) ................................................................................................. 1

47 U.S.C.A. § 252(e)(6) ............................................................................................ 5

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 3, 8, 9

## MOVANTS' JOINT REPLY TO OPPOSITIONS TO
## MOTIONS TO DISMISS WITH RESPECT TO JURISDICTION

Defendants JP Morgan SBIC LLC, Sixty Wall Street SBIC Fund, L.P., The Megunticook

Fund II, L.P. and The Megunticook Side Fund II, L.P., and Kevin O'Hare and Jeffrey Koester

(collectively, "Movants") hereby reply to the oppositions to motions to dismiss on jurisdictional

grounds filed by plaintiff One Communications Corp. ("Plaintiff") and counterclaim-plaintiff

Verizon New England Inc. ("Verizon").[1]

## PRELIMINARY STATEMENT

Plaintiff and Verizon make three arguments in opposition to dismissing this action for

want of jurisdiction, all of which are meritless.  First, they argue that this Court has either federal

question or supplemental jurisdiction over the "Billing Practices" claims, which are really

dressed-up claims for breach of interconnection agreements ("ICAs").[2]  This argument fails

because, among other reasons, the cooperative federalism regime of the Communications Act, as

amended, 47 U.S.C.A. §§ 151 et seq., (the "Act") and binding FCC precedent require that a

dispute over the interpretation and enforcement of an ICA must first be brought to the state

commission statutorily responsible for reviewing, approving, and administering ICAs.  47

U.S.C.A. § 252(e).  Second, Verizon argues the requirement that ICA disputes be litigated first

before a state commission is not a jurisdictional requirement but rather an exhaustion

requirement, which has been waived here.  This is contrary a decade of uniform caselaw and the

Third Circuit's recent decision in Core Commc'ns, Inc. v. Verizon Pa. Inc., 493 F.3d 333, 344

(3d Cir. 2007), which holds that the remedial system established by the Act and the FCC

---

[1]  Even though no motion to dismiss was filed against Verizon, it nonetheless filed an opposition on December 17, 2007 (Doc. No. 71).
[2]  These claims include Plaintiff's claim for declaratory judgment (Cplt., Count V) and Verizon's counterclaims for breach of the interconnection agreements (Verizon Ans., Count I).

mandates that ICA disputes "must be litigated in the first instance before the relevant state commission." The "must" language in <u>Core</u> is jurisdictional and completely refutes Verizon's "exhaustion" argument. Third, they argue that the primary jurisdiction doctrine does not apply because the ICA claims involve simple contract interpretation issues. Nothing is further from the truth. The designation (and application) of local calling areas for intercarrier compensation purposes implicates state policy considerations and expressly falls to the state commissions under the Act and FCC implementing regulations. This Court should decline Plaintiff's and Verizon's invitation to determine what the applicable local calling areas are in Maine, New Hampshire, and Vermont. Because this ICA dispute turns on policy issues inherently within the province of the state commissions, a dismissal under the primary jurisdiction doctrine would be required if the Court even had subject matter jurisdiction, which it does not.

The non-ICA claims are wholly contingent on the alleged breach of the ICAs. Without a predicate breach of ICA finding, the purported fraud, negligence, and breach of contract claims simply are not ripe. Under the facts pleaded here, no injury could possibly manifest for securities law violations or common law fraud unless the state commissions first determine that the ICAs were breached. The Court should dismiss Plaintiff's and Verizon's obvious efforts to short circuit the well-established, mandatory administrative process. Plaintiff and Verizon can obtain all the relief they seek by following the statutorily-prescribed process for ICA disputes.

For the foregoing reasons, and as fully set forth below, in the case any claims otherwise survive, this Court should dismiss them in their entirety. In the alternative, the Court should dismiss the ICA claims (<u>i.e.,</u> the "Billing Practices" claims) for refiling with the appropriate state commissions and stay any claims that otherwise survive until the state commissions have determined whether the ICAs have been breached in the manner alleged.

**ARGUMENT**

## I.    THIS COURT HAS NO JURISDICTION OVER THE ICA CLAIMS UNTIL THE STATE COMMISSIONS MAKE AN INITIAL DETERMINATION

Plaintiff and Verizon cannot escape the consequences of Verizon's success in Core Commc'ns, Inc. v. Verizon Pa. Inc., 493 F.3d 333 (3d Cir. 2007). There, at Verizon's very urging, the Third Circuit: (i) held that "interpretation and enforcement actions that arise after a state commission has approved an interconnection agreement ['ICA'] must be litigated in the first instance before the relevant state commission"; and (ii) affirmed the district court's Rule 12(b)(1) dismissal of the ICA claim for want of subject matter jurisdiction. Id., 344. Here, both Plaintiff's claims and Verizon's counterclaims undeniably stem from Lightship's allegedly improper "Billing Practices," which are simply ICA breach claims. Under Core, Plaintiff's and Verizon's breach of ICA claims must be dismissed for lack of subject matter jurisdiction.[3]

### A.    No 28 U.S.C.A. § 1331 Jurisdiction Exists Over The ICA Claims

Core makes clear that there is no jurisdiction under 28 U.S.C.A. § 1331 in the absence of a predicate state commission ICA determination. This is why the Third Circuit affirmed the district court's dismissal of the breach of ICA claim under Rule 12(b)(1) for lack of subject

---

[3]  In addition to their 1331 and 1367 claims, Plaintiff and Verizon seem to believe that their desire to litigate before this Court is sufficient to confer Article III subject matter jurisdiction over the ICA claims. Pl. Mem. 87. This assertion is scarcely worth addressing. Private parties may not confer jurisdiction on Article III courts. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("no action of the parties can confer subject-matter jurisdiction upon a federal court ... the consent of the parties is irrelevant."); Bay Shore Union Free Sch. Dist. v. Kain, 485 F.3d 730, 733 (2d Cir. 2007) ("the parties consent alone cannot confer subject matter jurisdiction on the court"). Numerous courts examining this issue have found as such in the ICA context. Bell Atl.-Virginia, Inc. v. WorldCom Techs. of Virginia, Inc., 70 F.Supp.2d 620, 626 (E.D. Va. 1999) ("the parties cannot contract for judicial review in direct contravention to the Telecommunications Act") (footnote omitted); See Pac. Bell Tel. Co., v. Global NAPS Ca., Inc., CV 05-7734 ODW, Order at 7-8 (PJWx) (C.D. Cal. Oct. 3, 2007) (holding parties cannot bargain for court review) (attached as Exhibit 1); Illinois Bell Tel., 2007 WL 4531790, at *6 (same). This Court lacks subject matter jurisdiction over the ICA claims at this time, and the parties' preference to litigate before this Court cannot overcome this defect.

3

matter jurisdiction. Plaintiff and Verizon rest much of their oppositions on the Fourth Circuit's decision in Verizon Md., Inc. v. Global NAPS, Inc. ("Global NAPS"), 377 F.3d 355 (4th Cir. 2004), Verizon Mem. 5-8, and the Supreme Court's decision in Verizon Md., Inc. v. Public Service Comm'n of Md. ("Verizon Md."), 535 U.S. 635 (2002), Pl. Mem. 82; Verizon Mem. 8-9. These cases, however, are inapposite: Each one involved a breach of ICA claim that was *resolved on the merits in the first instance* by the state public service commission *prior* to the federal court's exercise of subject matter jurisdiction. Neither the Fourth Circuit nor the Supreme Court has ever held that a district court may hear an ICA dispute in the first instance. The Court should reject Plaintiff's and Verizon's invitation to embrace an unsupported expansion of Article III subject matter jurisdiction based on cases that did *not* address the question at bar here – a question addressed squarely by the Third Circuit in Core.[4]

In Global NAPS, the "main question" the Fourth Circuit resolved was "whether a federal district court has jurisdiction over a local carrier's claim that a *state utility commission* misinterpreted interconnection agreement provisions on reciprocal compensation that are based on federal law." 377 F.3d at 358 (emphasis added). The Fourth Circuit found jurisdiction under 28 U.S.C.A. § 1331 "[b]ecause the agreement and the specific duty (reciprocal compensation) it incorporates have a direct connection to the Act, the purpose of the Act is best served by subjecting *the PSC's contract interpretation decision* to federal review in the district court." Id. at 365 (emphasis added). This case supports Movants, not Plaintiff or Verizon.

---

[4] Plaintiff's and Verizon's argument is contrary to their prior position in similar cases. See Verizon New York Inc. v. Choice One Commc'ns of New York, Inc., 499 F.Supp.2d 326, at n.11 (S.D.N.Y. 2007) (Scheindlin, J.) (noting Plaintiff's Choice One subsidiary argued that "federal courts have made clear that claims concerning the terms of an [ICA] ... must first be ruled on by the appropriate administrative agency before being heard by a federal court...."). In Core Commc'ns, Inc. v. Verizon Pa. Inc., E.D. Pa. 04-cv-4513 (TJS), Verizon argued that the district court did "not have jurisdiction over Count III [for breach of ICA] unless and until the Pennsylvania PUC has ruled upon it."

Verizon Md. likewise is predicated on an initial breach of ICA determination made by a state commission. Within that context, the Supreme Court stated that § 252(e)(6) does not divest a district court of jurisdiction under § 1331 to review a state commission determination. Verizon Md., 535 U.S. at 642. The Supreme Court nowhere addressed the question of whether breach of ICA claims may brought in a district court in the first instance. Indeed, that question was not before the Court. As other courts have recognized, "nothing in Verizon [Md.] indicates or suggests that a federal district court has jurisdiction to decide such issues without prior review by the state commission." Illinois Bell Tel. Co., Inc. v. Global NAPS Ill., Inc., 2007 WL 4531790, *5 (N.D. Ill. Dec. 17, 2007); Pac. Bell Tel. Co., v. Global NAPS Ca., Inc., CV 05-7734 ODW, Order 7 n.5 (PJWx) (C.D. Cal. Oct. 3, 2007) (attached as Exhibit 1) (stating Verizon Md. did not hold that federal courts have jurisdiction in the first instance, prior to consideration and decision by a state commission); Core Commc'ns, Inc. v. Verizon Pa., Inc., 423 F.Supp.2d 493, 497 (E.D. Pa. 2006) ("The posture of [Verizon Md.] was distinctly different ... because there the state commission had already made a determination which was under judicial review.").

Neither Plaintiff nor Verizon has offered any basis for this Court of limited jurisdiction to disrupt the comprehensive enforcement structure set forth in the Act and undermine the authority of state commissions to adjudicate in the first instance disputes arising under ICAs that they are statutorily charged with reviewing, approving, and administering. BellSouth Telecom., Inc. v. MCImetro Access Transmission Servs., Inc., 317 F.3d 1270, 1278 n. 9 (11th Cir. 2003) (en banc) ("To deprive the state commission of authority to interpret the agreement that it has approved would thus subvert the role that Congress prescribed for state commissions.").[5]

---

[5] This is not a question of a "divestment" of jurisdiction by 47 U.S.C.A. § 252(e)(6). Rather, the Court simply has no subject matter jurisdiction until a state commission decision exists. Core Commc'ns, 423 F.Supp.2d at 500 ("although initial review lies with the state commissions,

Plaintiff's arguments that "this case simply is *not* 'a pure claim for breach of an interconnection agreement,'" Pl. Mem. 84, does not in any way address <u>Core</u>'s mandatory language – "interpretation and enforcement actions that arise after a state commission has approved an interconnection agreement *must* be litigated in the first instance before the relevant state commission." 493 F.3d at 344 (emphasis added). Further, the "precise question at issue" in <u>Core</u> was "the proper procedure for the interpretation and enforcement of previously approved interconnection agreements." <u>Id.</u> at 339. Nothing in <u>Core</u> suggests only "pure" claims should be submitted to state commissions in the first instance. The plaintiff in <u>Core</u> brought other federal and state law claims properly before a federal court, as well as a breach of ICA claim. 493 F.3d. at 337. The mere presence of federal law claims in <u>Core</u> did not mandate that all claims be heard in federal court. On remand, the district court stayed <u>Core</u>'s statutory claims pending state commission review of the ICA claim.

Plaintiff and Verizon attempt to suggest <u>Core</u> is an anomaly and that the district court cases cited in the motion to dismiss are distinguishable. This is not the case. As recently as December 17, 2007, district courts have followed <u>Core</u> and its holding that ICA disputes must be first presented to the state commission before a court has jurisdiction. <u>Illinois Bell Tel.</u>, 2007 WL 4531790, at *5 ("AT&T Illinois did not seek enforcement of the Agreement through the [Illinois Commerce Commission]; and, thus…, *this Court lacks subject-matter jurisdiction* over these claims.") (emphasis added); <u>see also</u>, Ex. 1, <u>Pac. Bell Tel. Co.</u>, at 7 ("[ICAs] are the tools through which the Act is enforced and we find it entirely consistent with the Act to have the

---

federal courts are not divested of jurisdiction, but only removed from initial consideration."). This is similar to an appellate court, which has jurisdiction over a case or issue, but not until a trial court has acted. <u>Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.</u>, 369 F.3d 385, 393 (4th Cir. 2004) ("Broadly speaking, district courts have subject-matter jurisdiction over the first round of litigation proceedings, and the courts of appeal have jurisdiction over the second round.").

6

[state utility commission] interpret the parties' Agreement in the first instance, and then subject

their interpretations to federal review) (citing BellSouth Telecomms., 317 F.3d at 1278).[6]

## B.    No Supplemental Jurisdiction Exists Over ICA Claims

Plaintiff and Verizon contend that because this Court has federal question jurisdiction

over the securities law claims under 28 U.S.C.A. § 1331, it necessarily has supplemental

jurisdiction over the ICA "Billing Practices" disputes pursuant to 28 U.S.C.A. § 1367.  They so

contend because the ICA claims arise from same facts as the securities claims over which the

Court has original jurisdiction.  Pl. Mem. 93; Verizon Mem. 5-6.  Far from demonstrating that

supplemental jurisdiction exists, Plaintiff's and Verizon's admission that the ICA claims arise

from the same facts as the other claims simply underscores that this is an ICA case, not a fraud

case.  In any event, the statutory scheme of the federal Act, not state law, mandates that ICA

disputes be litigated before state commissions in the first instance.  No supplemental jurisdiction

exists over the administrative remedial process established by the Act and the FCC.

---

[6] Long before Core, district courts uniformly found that they lacked subject matter jurisdiction
to hear interconnection agreement claims absent a prior state commission determination.  See,
e.g., Contact Commc'ns v. Qwest Corp., 246 F. Supp.2d 1184, 1189 (D. Wyo. 2003) (holding
that "absent a prior determination of the issue by the state PSC, no federal court jurisdiction
exists" over ICA claims); Intermedia Commc'ns v. BellSouth Telecomms., Inc., 173 F. Supp.2d
1282, 1287 (M.D. Fla. 2000) (holding that parties "must first bring their claims of violations of §
251 to the state PSC before a federal court has jurisdiction over the matter"); Atlantic Alliance
Telecomms. v. Bell Atlantic, 2000 U.S. Dist. LEXIS 19649 (E.D.N.Y. 2000) (finding that the
federal statutory scheme under section 252(e) limited the role of federal court to appellate review
of state commission decisions interpreting ICAs); Bell Atlantic-Virginia v. WorldCom Techs. of
Virginia, Inc., 70 F. Supp.2d 620, 625-26 (E.D. Va. 1999) (dismissing breach of contract claim
based on ICA because Virginia State Corporation Commission had not made a determination
interpreting agreement); AT&T Commc'ns of Ohio, Inc. v. Ohio Bell Tel. Co., 29 F. Supp.2d
855, 856 (S.D. Ohio 1998) (holding that the court lacked jurisdiction over claims because "the
statutory scheme [of the Act] does not permit [a federal district court] to review disputes arising
out of interconnection agreements not previously subject to action by a state commission");
AT&T Commc'ns of Illinois v. Illinois Bell Tel. Co., 1998 U.S. Dist. LEXIS 12925, *14 (N.D.
Ill. 1998) (refusing to review issues not first submitted to state commission); Indiana Bell Tel.
Co. v. McCarty, 30 F. Supp.2d 1100, 1104 (S.D. Ind. 1998) (holding that the Act "was designed
to allow the state commission to make the first determination on issues prior to judicial review").

The breach of ICA claims are not state law breach of contract claims over which this Court could exercise supplemental jurisdiction. As Verizon concedes, "the contracts between Verizon and Lightship are not ordinary, privately negotiated, state law contracts." Verizon Mem. 5. Rather, they are creatures of the federal Act and fall within its comprehensive administrative remedial regime,[7] which charges state commissions with evaluating and approving ICAs. To preserve that authority, ICA disputes must be submitted to those commissions first. Core, 493 F.3d at 343 ("to allow parties to circumvent the state commissions in post-formation disputes would undermine the Act's sense of cooperative federalism, under which the states were given primary responsibility over interconnection agreements."). No subject matter jurisdiction – supplemental or otherwise – to hear the ICA-related claims exists until after those claims are first presented to the appropriate state commissions. See Illinois Bell Tel., 2007 WL 4531790, *6 (refusing supplemental jurisdiction under § 1367 over ICA-related claims not first presented to the state commission); see also Ex. 1, Pac. Bell Tel. Co., at 8 (refusing to allow AT&T California to "back-door" claims not first presented to a state commission through supplemental jurisdiction). Neither Plaintiff nor Verizon cites any case law for their novel supplemental jurisdiction proposition because no court has adopted it.

### C.  Core Presents A Jurisdictional Bar, Not An Exhaustion Requirement

Despite the affirmation of a dismissal for lack of subject-matter jurisdiction under Rule 12(b)(1) in Core, Verizon urges this Court to conclude that Core did not identify a jurisdictional bar, but instead an exhaustion requirement, which has been "waived." In support, Verizon points

---

[7]  Puerto Rico Tel. Co. v. Telecomms. Regulatory Bd., 189 F.3d 1, 8 (1st Cir. 1999) (the Act operates in a manner that has been termed "cooperative federalism"). The Act "enlist[s] the aid of state public utility commissions to ensure that local competition was implemented ... with due regard to ... the particular historical circumstances of local regulation under the prior regime." Global Naps, Inc. v. Mass Dept. of Telecomm., 427 F.3d 34, 46 (1st Cir. 2005) (citation omitted).

to a single case, <u>Southern New England Tel. Co. v. Global NAPs, Inc.</u>, 520 F. Supp.2d 351 (D.

Conn. Oct. 19, 2007). <u>Southern New England's</u> exhaustion requirement is fundamentally

flawed, as it <u>ignores</u> the mandatory language of <u>Core</u> – that ICA claims "*must* be litigated in the

first instance" in the state commission, 493 F.3d at 344 – and the Eastern District of

Pennsylvania's Rule 12(b)(1) dismissal of the ICA claim for lack of subject matter jurisdiction.[8]

This exhaustion argument also is contrary to a legion of cases dismissing ICA-related claims for

lack of subject matter jurisdiction. <u>See supra</u> n.6.

    The <u>Southern New England</u> court ignored the fact that the Eastern District of

Pennsylvania granted Verizon Pa.'s motion to dismiss Core's breach of ICA complaint for *lack*

*of subject matter jurisdiction*. <u>Core Commc'ns, Inc. v. Verizon Pa.</u>, 423 F.Supp.2d 493, 495

(E.D. Pa. 2006). In place of the holding, the <u>Southern New England</u> court relied on dicta from

the district court's decision in <u>Core</u>: § 252(e)(6) "only imposes an intermediate step before

getting to the federal court, not unlike an exhaustion requirement." 520 F. Supp.2d at 353,

quoting <u>Core</u>, 423 F.Supp.2d at 500. The "not unlike an exhaustion requirement" is an analogy,

not the district court's holding. The complete discussion of the district court's order

demonstrates that a federal court does not have jurisdiction until a state commission makes an

initial determination: "[A]lthough *initial review* lies with the state commissions, federal courts

are not divested of jurisdiction, but only removed from initial consideration." <u>Id.</u> (emphasis

added). The "must be litigated in the first instance" holding in <u>Core</u> is mandatory and

jurisdictional, not temporal and prudential. Contrary to Verizon's claim, parties cannot waive

---

[8]  Before the Eastern District of Pennsylvania, Verizon argued that the court lacked subject
matter jurisdiction over the breach of ICA claim. Verizon's Motion to Dismiss at 3, Case No.
04-cv-4513 (TJS) (E.D. Pa.) ("federal district courts have consistently and repeatedly held that
they have no subject matter jurisdiction to entertain direct action seeking interpretation and
enforcement of interconnection agreement terms, when those issues have not been submitted first
to the appropriate state commissions"). The district court agreed, and the Third Circuit affirmed.

subject matter jurisdiction by a party filing suit in a judicial forum rather than in a state commission.[9]  Otherwise, the Act's cooperative federalism (and the entire body of case law upholding it), would be turned on its head.

## II.    PLAINTIFF'S AND VERIZON'S CLAIMS SHOULD BE DISMISSED

Plaintiff's Complaint (to the extent claims remain after the motions to dismiss) and Verizon counterclaims should be dismissed without prejudice until after the state commissions have ruled on ICA interpretation and related local policy issues concerning local calling areas. Where, as here, a plaintiff has brought contingent claims and the predicate claims must be heard elsewhere in the first instance, courts have declined to hear the contingent claims pending the resolution of the independent claim before the proper tribunal.  There is no reason Plaintiff's and Verizon's contingent claims should proceed without prior state commission determinations on the ICA claims and issues.  Neither Plaintiff nor Verizon will be prejudiced by dismissal because (i) their securities law and fraud claims are not ripe, and (ii) even if they were ripe, the Second Circuit's long-established doctrine of equitable tolling preserves those claims.

---

[9]  See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) ("First, 'subject matter jurisdiction', because it involves the court's power to hear a case, can never be forfeited or waived.'") (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)); see also Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 193 (2d Cir. 2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court sua sponte.") (citing Lyndonville Sav. Bank & Trust Co., 211 F.3d 697, 700 (2d Cir. 2000)).  Even were this waivable, no wavier has occurred.  The Stockholder Representative Committee ("SRC") filed a suit in state court regarding the indemnification escrow.  At the time of this suit, no §10b claim existed.  Indeed, had there been a §10b claim at the time, the state court could not have adjudicated that claim since there is exclusive jurisdiction in federal court. Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1556 (3d Cir. 1994) ("Federal courts have exclusive jurisdiction over suits alleging violations of these security law provisions.").  At the time of the SRC suit, Verizon had never made any claim for breach of the ICAs, and Verizon was not a party to the SRC suit.  A waiver based on the notion that a state court would have had to resolve non-existent claims over which it lacked either jurisdiction or a necessary party is nonsensical.  Also, the Meguniticook defendants are not parties to the Stockholder Representative Agreement or the Escrow Agreement.

Even assuming without conceding that Plaintiff's and Verizon's claims are ripe (which they are not),[10] dismissing the Complaint will not prejudice Plaintiff's or Verizon's ability to bring those claims later if the state commissions find a breach of the ICAs. Plaintiff's statute of limitations concerns are meritless. Pl. Mem. 86. The Second Circuit's long-recognized equitable tolling doctrine "allows courts to extend the statute of limitations beyond the time of expiration as necessary to avoid inequitable circumstances." Johnson v. Nyack Hosp., 86 F.3d 8, 12 (2d Cir. 1996) (citing Bowers v. Transp. Maritima Mexicana, S.A., 901 F.2d 258, 264 (2d Cir.1990)). The Second Circuit "has also recognized the applicability of equitable tolling where 'resort to an agency is a jurisdictional prerequisite to seeking review in federal court.'" Id. (quoting Higgins v. New York Stock Exch., Inc., 942 F.2d 829, 833 (2d Cir.1991). Thus, the Complaint should be dismissed. Plaintiff and Verizon may bring their claims at a later date if the state commissions determine that Lightship's billing practices breached the ICAs – indeed, the ripeness of the other claims is dependent on such a determination.[11]

---

[10]  That Plaintiff's claims are not ripe is evident. Plaintiff's alleged injuries due to securities fraud are necessarily dependent on a predicate finding of a breach of the ICAs. Plaintiff's damages are fundamentally predicated on the state commission's finding that the alleged "Billing Practices" constitute breaches of the ICAs. "Where, as here, the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed." In re United Telecomm., Inc., Securities Litigation, No. 90-2251-EEO, 1993 WL 100202, *3 (D. Kan. Mar. 4, 1993); see also Pall v. KPMG, LLP, Civ. No. 3:03CV00842(AWT), 2006 WL 2800064, *3 (D. Conn. Sept. 29, 2006) ("Here, because the plaintiff is attempting to bring a contribution claim which is contingent upon a finding of liability in the related actions, the injury (and availability of a contribution claim) depends upon the results in the related actions, making the contribution claim not ripe."); Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir. 1988) (holding no cause of action had accrued because damages were too speculative when plaintiff's claim overlapped ongoing proceedings in the bankruptcy court). Plaintiff's securities and fraud claims are expressly predicated on alleged breaches of the ICAs, Cplt. ¶¶ 111, 117, 119-121, and, therefore, are not ripe until a breach has actually been found by the relevant state commissions.
[11]  Even if this Court decides to refer the ICA claims under a primary jurisdiction analysis, the Complaint may be dismissed and equitable tolling would allow Plaintiff to refile its action after resolution by the state commissions.

### III.    IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE ICA CLAIMS UNDER THE PRIMARY JURISDICTION DOCTRINE

In the <u>unlikely</u> event this Court decides not to dismiss the Complaint in its entirety for lack of jurisdiction over claims dependent on prior state commission rulings, it should at a minimum (i) dismiss the ICA issues under the doctrine of primary jurisdiction, and (ii) stay the action pending such administrative resolutions.  Here, a primary jurisdiction dismissal is appropriate because the ICA issues are complex and implicate the state commissions' inherent authority to set local calling areas.

"The doctrine of primary jurisdiction is concerned with 'promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.'" <u>Ellis v. Tribune Television Co.</u>, 443 F.3d 71, 81 (2d Cir. 2006), quoting <u>United States v. W. Pac. R.R. Co.</u>, 352 U.S. 59, 63 (1956); <u>Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.</u>, 84 F.3d 91, 97 (2d Cir. 1996).  "Overall, the 'doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime.'"  <u>Id.</u> at 82 (citation omitted).  The Second Circuit generally focuses on four factors to determine whether a primary jurisdiction dismissal is appropriate:  "(1) whether the question at issue is within the conventional experience of judges [or] within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made."  <u>National Commc'ns Ass'n v. AT&T</u>, 46 F.3d 220, 222 (2d Cir. 1995).  Here, a weighing these factors demonstrates that a primary jurisdiction dismissal is not only warranted, it is required.

Under the first factor, the ICA claims implicate a complex administrative regime, not garden variety breach of contract claims.  Further, as outlined in the JP Morgan Defendants'

primary brief on the motion, the ICA claims implicate policy concerns and ICA interpretation issues that fall squarely within the province (and expertise) of the state commissions. Article III courts are of limited jurisdiction. The establishment of local calling areas for intercarrier compensation purposes is inherently the concern of state commissions.[12] The need for state commission expertise to resolve the myriad and complex ICA issues cannot seriously be disputed.[13] This is precisely why, under the Act and FCC precedent, state commissions make ICA determinations in the first instance.

The second factor – issues particularly within an agency's discretion – is dispositive. The meaning and effect of requiring Verizon to change its local calling areas, and the impact, if any, of that change on the Maine ICA that it approved, are threshold issues that fall within the sole discretion of the Maine PUC. As the entity responsible both for setting local calling areas and approving, administering, and enforcing ICAs, the Maine PUC is duty-bound and best positioned to resolve these issues. See, e.g., Davel Commc'ns, Inc. v. Qwest Corp., 460 F.3d 1075, 1089 (9th Cir. 2006) ("We agree that the primary jurisdiction doctrine requires referral of the threshold issue.... [T]he interpretation of an agency order issued pursuant to the agency's congressionally granted regulatory authority falls within the agency primary jurisdiction where the order reflects

---

[12]  Here, moreover, even Plaintiff and Verizon disagree on which local calling areas they claim apply under the Maine PUCs regulations and the terms of the ICA. Plaintiff asserts that Lightship was required to conform to Verizon's *premium* local calling areas. Cplt. ¶¶40-41. Verizon asserts that Lightship was required to follow only Verizon's *economy* local calling areas. Verizon's Ans. at 21, ¶18. Neither addresses whether Lightship was required to change its local calling areas whenever Verizon changed its calling areas. Moreover, the entire support for both of their positions is an out of context phrase in a glossary definition on a topic to which the glossary expressly is said not to apply. JPM Mem. 43-48; see also Pl. Mem. 8; Verizon Mem. 19-21. On the "VNXX" issue, Plaintiff and Verizon are even more at odds. Verizon agrees with Lightship that the ICA permitted Lightship to assign VNXX telephone numbers. Plaintiff incorrectly maintains that VNXX was illegal in Maine. Verizon argues that the use of VNXX service meant that *Verizon could charge Lightship* for VNXX calls. Plaintiff asserts the opposite: use of VNXX affected how much *Lightship could charge Verizon*.
[13]  The ICA issues are discussed at pages 43-53 of the JP Morgan Defendants' primary brief.

13

policy concerns or issues requiring uniform resolution."). Here, the designation of local calling areas is clearly within the primary jurisdiction of the Maine PUC.[14]

As for the third factor – substantial danger of inconsistent rulings – there is certainly a risk of this Court and the Maine PUC reaching inconsistent rulings. And, this danger exists notwithstanding that that no prior application to the Maine PUC has been made – the fourth factor. This Court should look to the Maine PUC for the definitive interpretations of its local calling area regulations and the ICAs the Maine PUC is statutorily charged with approving, administering, and enforcing. Thus, even if the Court finds a source of jurisdiction absent a prior state determination, the Court should still dismiss the ICA claims so that the state commissions may resolve them as a matter of primary jurisdiction.

## IV.    AT A MINIMUM, ALL CLAIMS SHOULD BE STAYED UNTIL THE ICA CLAIMS ARE RESOLVED

Whether this Court finds the ICA claims to be unreviewable in the first instance under Core or dismissed for refiling with the state commissions under primary jurisdiction, this Court should not litigate the merits of claims that depend on how the state commissions ultimately rule. At the very least, the claims should be stayed while the state commissions interpret the ICAs. See Ex. 1, Pac. Bell Tel. Co., at 8 (staying federal tariff claims while state commission made initial determination on breach of ICA claims).

Courts have not hesitated to stay claims when other related claims belong in another forum in the first instance. See, e.g., In Hansen v. Norfolk and W. Ry. Co., 689 F.2d 707, 711

---

[14] Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Memorandum Opinion and Order, 11 F.C.C.R. 15,499, 16,013-14 (1996) (subsequent history omitted) ("state commissions have the authority to determine what geographic areas should be considered 'local areas' for the purpose of applying reciprocal compensation … consistent with the state commission's historical practice of defining local service for [telephone companies]."). The Court is obligated to defer to this FCC finding. Nat'l Cable & Telecomm. Ass'n. v. Brand X Internet Serv., 545 U.S. 967, 980 (2005).

14

(7th Cir. 1982) (affirming the "able district judge['s]" decision to "decline[] the invitation" of a party to continue with antitrust claims while other matters were referred under the primary jurisdiction doctrine because the count "pose[d] difficult transportation policy problems" such that "judicial consideration of this cause must await proceedings by the specialized agency created by Congress to deal with transportation policy – the ICC.").[15]  Here, resolution of all Plaintiff's claims and Verizon's counterclaims necessarily turns on state-specific policy and ICA issues left to state commissions under the Act and FCC regulations.  Thus, this Court should either dismiss or stay the Complaint pending resolution of the policy and ICA-related claims. Accord Ricci v. Chicago Mercantile Exch., 409 U.S. 289, 305-08 (1973) (staying proceedings while agency determined whether there was a violation of agency rules, which would inform the judicial resolution of antitrust claims); Azby Brokerage, Inc. v. Allstate Ins. Co., 637 F.Supp. 382, 388 (S.D.N.Y. 1986) (staying action under primary jurisdiction because "both the parties and the Court will be better served if plaintiffs are required to pursue all state administrative remedies reasonably available to them before returning to this forum for judicial relief).

## CONCLUSION

As set forth herein and in Movants' memoranda, all claims should be dismissed.

Respectfully submitted,

Dated:  New York, New York
      February 15, 2008

Jayne S. Robinson (JSR-5981)
K. Ann McDonald (KAM-2876)
ROBINSON & McDONALD LLP
61 Broadway, Suite 1415
New York, New York  10006
Tel.: 212-953-3400
Fax.: 212-953-3690

---

[15]  The same holds true for state law claims.  See Waudby v. Verizon Wireless Services, LLC, 2007 WL 1560295, *6 (D.N.J. May 25, 2007).

15

*Attorneys for Defendants*
*JP Morgan SBIC LLC and*
*Sixty Wall Street SBIC Fund, L.P.*

Ira K. Gross (IG-6834)
Paul E. Summit (PS-6263)
SULLIVAN & WORCESTER
One Post Office Square
Boston, Massachusetts 02109
Tel.: 617-338-2800
Fax.: 617-338-2880
*Attorneys for Defendants*
*The Megunticook Fund II, L.P. and*
*The Megunticook Side Fund II, L.P.*

Dave Mack (*admitted pro hac vice*)
O'CONNOR, CARNATHAN AND
MACK, LLC
8 New England Executive Park, Suite 310
Burlington, Massachusetts 01803
Tel.: 781 359-9005
Fax.: 781 359-9001

-and-

Joseph M. Pastore, III (JP-1717)
DREIER LLP
499 Park Avenue
New York, New York 10178
Tel.: 212-328-6100
Fax.: 212-895-2900
*Attorneys for Defendants Kevin O'Hare*
*and Jeffrey Koester*

Exhibit 1



SEND / ENTER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY, d/b/a AT&T CALIFORNIA, | CV 05 - 7734 ODW (PJWx) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |
| vs. | |
| GLOBAL NAPS CALIFORNIA, INC., et al., | |
| Defendants. | |

I.   BACKGROUND

    This matter comes before the Court on Defendants Global NAPs California, Inc., Global NAPs, Inc., Global NAPs Networks, Inc., and Global NAPs Realty, Inc.'s (collectively, "Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction.[1] Having been fully briefed, and after hearing oral argument, the Court rules as follows.

    The Federal Telecommunications Act of 1996 (the "Act") requires competing carriers to interconnect their networks to enable customers of one network to call customers of another. 47 U.S.C. § 251. Pursuant to the Act, competing local telephone companies must make arrangements to pay each other reciprocal compensation for telecommunications. Reciprocal compensation is the arrangement between two carriers in which each receives compensation from the other carrier

---

[1] Joining in this Motion are Specially Appearing Defendants Ferrous Miner Holdings, Ltd. and Global NAPs New Hampshire, Inc.

1    for the transport and termination on each carrier's network of local telecommunications traffic that

2    originates on the network of the other carrier. Reciprocal compensation arrangements are given

3    effect through interconnection agreements. These interconnection agreements can be arrived at

4    through negotiation or arbitration. However, any agreement adopted by such means must then be

5    submitted for approval to the relevant state commission. *Id.* at § 252(e).

6       Plaintiff AT&T California ("Plaintiff") and Defendant Global California are

7    telecommunications carriers that entered into an "Interconnection Agreement" (the "Agreement"),

8    as required by the Act. (SAC ¶ 1.) The Agreement specifies the rates, terms, and conditions upon

9    which AT&T California and Global California interconnect their networks and exchange certain

10   communication traffic. (*Id.*) Issues not initially agreed upon by the parties were submitted to the

11   California Public Utilities Commission ("CPUC") for arbitration, pursuant to § 252(b) of the Act.

12   (SAC ¶ 18.) After arbitrating the open issues, CPUC approved the parties' Agreement. (*Id.*)

13   Neither party sought review of the CPUC's determination and, as a result, the Agreement became

14   effective on August 11, 2003. (*Id.*)

15       In accordance with the Agreement, from March 2004 to the present, AT&T California has

16   provided a number of services to Global California, including: (1) using AT&T California's local

17   network to complete local and long distance calls that Global California delivers to AT&T

18   California, and (2) acting as a middleman to transport and route traffic destined to a third party

19   carrier where Global California delivers the traffic to AT&T California rather than a third party

20   carrier. (SAC ¶ 2.) Global California allegedly failed to pay for these services . (*Id.*)

21       On September 23, 2006, Plaintiff filed suit against Defendants in state court seeking

22   payment of amounts due them under the Agreement. On October 28, 2006, Defendants removed

23   the case to federal court. Plaintiff then amended its complaint to add a quasi-contract/unjust

24   enrichment claim. On February 20, 2007, Plaintiff filed a Second Amended Complaint which

25   added five additional defendants: Global NAPS, Inc. ("Global Inc."), Global NAPS Networks,

26   Inc. ("Global Networks"), Global NAPS Realty, Inc. ("Global Realty"), Global NH, and Ferrous

27   Miner.

28

1    Presently pending before the Court is Defendants' Motion to Dismiss for Lack of Subject

2    Matter Jurisdiction. Defendants assert that this Court lacks jurisdiction over Plaintiff's first cause

3    of action for breach of contract (reciprocal compensation and intralata toll charges), second cause

4    of action for breach of contract (transiting charges), and fourth cause of action for unjust

5    enrichment.

6

7    II.    LEGAL STANDARD

8         It is well established that Federal courts are courts of limited jurisdiction without general

9    subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

10   They can adjudicate only those cases which the Constitution and Congress authorize them to

11   adjudicate. *See id.* As such, Federal courts are presumptively without jurisdiction over civil

12   actions and the burden of establishing the contrary rests upon the party asserting jurisdiction.

13   *KVOS v. Associated Press*, 299 U.S. 269, 278 (1936). Because of this, "[w]henever it appears by

14   suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the

15   court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). And in order to sustain federal

16   jurisdiction, the complaint must allege a claim under the Constitution or relevant federal statute

17   and must not be made solely for the purpose of obtaining federal jurisdiction. *Bell v. Hood*, 327

18   U.S. 678, 682-83 (1946).

19        A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either

20   a facial attack or a factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial

21   attack is one where "the challenger asserts that the allegations contained in a complaint are

22   insufficient on their face to invoke jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035,

23   1039 (9th Cir. 2004). In evaluating a facial attack to jurisdiction, the Court must accept the factual

24   allegations in plaintiff's complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n. 1 (9th

25   Cir. 2001). For a factual attack, in contrast, the Court may consider extrinsic evidence. *See*

26   *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Further, the court does not have to

27   assume the truthfulness of the allegations, and may resolve any factual disputes. *See White*, 227

28

3

1   F.3d at 1242. Thus, "[o]nce the moving party has converted the motion to dismiss into a factual

2   motion by presenting affidavits or evidence properly before the court, the party opposing the

3   motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing

4   subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th

5   Cir. 2003).

6

7   III.   DISCUSSION

8          In support of their Motion, Defendants' primary contention is that this Court has no subject

9   matter jurisdiction over Plaintiff's first, second and fourth causes of action because "federal courts

10  do not have jurisdiction to hear disputes arising out of the interpretation and enforcement of

11  interconnection agreements unless they have been addressed in the first instance by the State

12  commission that approved the [Agreement]." (Mot. at 5.) Rather than address this argument head

13  on, Plaintiff's opposition is rife with creativity. Specifically, Plaintiff's arguments, among others,

14  are: (1) that this Court has supplemental jurisdiction over the claims Defendants seek to dismiss;

15  (2) that Defendants have waived any lack of subject matter jurisdiction argument; and (3) that

16  Defendants have contracted for § 1331 jurisdiction.

17         A.     The Court Lacks Subject Matter Jurisdiction Over Plaintiffs Breach Of Contract
                  Claims.
18
           As a threshold matter, Plaintiff's assertion that Defendants have waived their "theory" for
19
    lack of subject matter jurisdiction "by waiting so inordinately long to raise it," is without merit.
20
    (Opp'n at 12). The Federal Rules clearly permit any party to address a court's subject matter
21
    jurisdiction "[w]henever it appears . . . that the court lacks jurisdiction of the subject matter." Fed.
22
    R. Civ. P. 12(h)(3). Accordingly, "challenges to subject matter jurisdiction cannot be waived and
23
    may be raised at any point in the proceeding." *Miguel v. Country Funding Corp.*, 309 F.3d 1161,
24
    1163-64 (9th Cir. 2002).
25
           Proceeding now to the merits of the underlying Motion, Defendants argue that § 252(e)(6)
26
    deprives this Court of jurisdiction over Plaintiff's breach of contract claims.[2] That section reads:
27

28
    _____
    [2]  In arguing to the contrary Plaintiff states the following: "Defendants have relied on cases that discuss
    jurisdiction under § 252(e)(6) of the Act, but those cases have no bearing here. Plaintiff didn't file any § 252(e)(6)

1    In a case in which a State fails to act as described in paragraph (5), the proceeding
2    by the Commission under such paragraph and any judicial review of the
     Commission's actions shall be the exclusive remedies for a State commission's
3    failure to act. In any case in which a State commission makes a determination under
     this section, any party aggrieved by such determination may bring an action in an
4    appropriate Federal district court to determine whether the agreement or statement
     meets the requirements of section 251 of this title and this section.

5    47 U.S.C. § 252(e)(6).

6         In finding that this section illustrates Congressional intent to deprive this Court of

7    jurisdiction over disputes arising from the Agreement, at least in the first instance, the Court

8    follows the reasoning behind the Third Circuit's recent decision, *Core Communications, Inc. v.*

9    *Verizon Pa., Inc.*, 493 F.3d 333 (3d Cir. 2007).

10        There, proceeding under the deferential standard espoused in *Chevron v. Natural Res. Def.*

11   *Council*, 467 U.S. 837 (1984)[3], the Third Circuit found that Congress has not yet spoken on the

12   proper interpretation and enforcement procedure of disputes arising from already approved

13   interconnection agreements. *Core*, 493 F.3d at 340-41. Because the Act did not set out an

14   enforcement scheme for a pure claim for breach of an interconnection agreement, the court turned

15   to the Acts implementing agency, the Federal Communications Commission's ("FCC"), and its

16   opinion and order in *In the Matter of Starpower Communications, LLC*, 15 F.C.C.R. 11277

17   (F.C.C. 2000) to fill the "gap" left by the Act's silence. *Core*, 493 F.3d at 341. In *Starpower*, the

18   FCC stated, "[i]n applying Section 252(e)(5), we must first determine whether a dispute arising

19   from interconnection agreements and seeking interpretation and enforcement of those agreements

20   is within the states' 'responsibility' under section 252. We conclude that it is." 15 F.C.C.R. at

21   11279. This "responsibility" of a state commission, *Core* noted, was subject to two different

22   interpretations. *Core*, 493 F.3d at 341-43. On the one hand, a narrow interpretation of

23

24   appeal in this case. We've never asserted that § 252(e)(6) is the bases for this Court's jurisdiction." (Tr. Sep. 24,
25   2007.) For lack of a better word, the Court's response is: Exactly! Our opinion follows that reached in *Core, infra*.
     Accordingly, our position is that federal courts may only review matters which have first been presented to the
     appropriate state commission. Because it is undisputed that Plaintiff does not bring an "appeal" from a
26   determination made by the CPUC, we do not have jurisdiction over their breach of contract claims.

27        [3] Under *Chevron*, federal courts must defer to an implementing agency's (here, the FCC) interpretation
28   of a statute within its jurisdiction if (1) "the statute is silent or ambiguous with respect to the specific issue" at
     hand, and (2) "the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at
     843.

1    "responsibility" would suggest that state commissions have, at a minimum, the non-exclusive

2    authority to hear post-formation disputes involving approved interconnection agreements. *Id.* at

3    342. On the other, however, a state's "responsibility" under § 252 suggests that there is not a

4    shared role for the federal courts. *Id.* Looking at the structure of the statutory scheme as a whole,

5    and finding no indication in other FCC decisions that the state commissions' jurisdiction over

6    post-formation disputes is shared with the federal courts, *Core* followed the latter, more broad

7    interpretation. *Id.* Specifically, *Core* stated, "a 'symmetrical and coherent regulatory scheme'

8    is one where the bodies that considered formation problems also resolve interpretation difficulties.

9    As with formation problems, federal court jurisdiction over state commission interpretation and

10   enforcement decisions should be limited to appellate review." *Id.* at 342-43.

11          Though this precise question has not been heavily litigated, the Court finds no reason to

12   stray from *Core's* conclusions. In so holding, we recognize that at the heart of the Act is a scheme

13   of "cooperative federalism" whereby states were given primary responsibility over interconnection

14   agreements. As noted, "[r]ather than placing the entire scope of regulatory authority in the federal

15   government, 'Congress enlisted the aid of state public utility commissions to ensure that local

16   competition was implemented fairly and with due regard to the local conditions and the particular

17   historical circumstances of local regulation under the prior regime.'" *Global Naps, Inc. v. Mass.*

18   *Dep't of Telecomm. and Energy*, 427 F.3d 34, 46 (1st Cir. 2005) (citation omitted). Permitting

19   parties to proceed straight to federal court would therefore circumvent the role of the relevant state

20   commission and would jeopardize the entire system of review established by the Act. *Ind. Bell*

21   *Tel. Co., Inc. v. McCarty*, 30 F.Supp.2d 1100, 1104 (S.D. Ind. 1998); *accord BellSouth*

22   *Telecomms., Inc. v. MCImetro Access Transmission Servs., Inc.* 317 F.3d 1270, 1278 n. 9 (11th

23   Cir. 2003) (noting, "[a] court could ascribe to the agreement a meaning that differs from what the

24   state commission believed it was approving . . . . To deprive the state commission of authority to

25   interpret the agreement that it has approved would thus subvert the role that Congress prescribed

26   for state commissions."); *accord Sw. Bell Tel. Co. v. PUC*, 208 F.3d 475, 479-80 (5th Cir. 2000)

27

28
---
[4] Indeed, it is this view Plaintiff relies upon in its Opposition. (Opp'n at 11) (*"Starpower* . . . merely "graft[ed]" onto the [1996] Act an exhaustion requirement.").

1    ("the Act's grant to the state commissions of plenary authority to approve or disapprove these

2    interconnection agreements necessarily carries with it the authority to interpret and enforce the

3    provisions of agreements that state commissions have approved.").

4        Here, Plaintiff's first and second causes of action allege pure claims for breach of their

5    Agreement.    In particular, Plaintiff seeks recovery of certain (large) sums of money for

6    Defendants' failure to pay reciprocal compensation and transiting charges.  Though cognizant of

7    Plaintiff's plight, the Court, at this time, cannot provide any redress.  Without delving into the

8    merits of Plaintiff's claims, the Court notes that enforcement of the parties' Agreement necessarily

9    entails interpretation of the terms and conditions contained therein - determinations which, the

10    Court is persuaded, ought to be addressed, in the first instance, by the CPUC.  To the extent a

11    select minority of cases hold otherwise, the Court declines to follow them.  Interconnection

12    agreements are the tools through which the Act is enforced and we find it entirely consistent with

13    the Act to have the CPUC interpret the parties' Agreement in the first instance, and then subject

14    their interpretations to federal review.[5]  *See BellSouth Telecomms.*, 317 F.3d. at 1278.

15        B.    The Parties Cannot Invoke This Court's Jurisdiction By Agreement

16        In further support of their position that this Court has subject matter jurisdiction over their

17    breach of contract claims, Plaintiff's point to language in the parties' Agreement which provides

18    that any party may pursue "any remedy available to it pursuant to law, equity or agency

19    mechanism." (Opp'n at 10.)  Plaintiff's argument fails for two reasons.  First, because the Court

20    is of the opinion that Plaintiff's breach of contract claims must first be presented to the CPUC,

21

22        [5] At this point the Court finds it appropriate to address the Supreme Court's decision in *Verizon Md Inc.*

23    *v. Pub Serv. Comm'n of Md* , 535 U S. 635 (2002).  Plaintiff argues, both in their papers and at the September 24,

24    2007 hearing, that the Court's position is inconsistent with *Verizon Md*.  The Court, however, finds that no
inconsistency exists.  The Supreme Court held only that § 252(e)(6) does not divest the district courts of their
authority under 28 U.S.C. § 1331 to review a state commission's order for compliance with federal law. *Verizon*

25    *Md.*, 535 U.S. at 642.  In other words, the Supreme Court merely settled the question of whether federal courts
could review a state commission's "interpretation or enforcement of an [existing] interconnection agreement"

26    because only arbitration and approval are expressly mentioned in § 252. *Id.*  The court concluded that nothing in

27    either § 252(e)(6) or in the rest of the Act limited federal jurisdiction that would otherwise exist under § 1331 over
rulings that were allegedly violative of federal law. *Id.*  It did *not*, however, hold that federal district courts have

28    jurisdiction to decide such questions in the first instance, prior to consideration and decision by a state commission.
Indeed, the Supreme Court's holding actually *presupposes* a determination made by the appropriate state
commission in the first instance; a determination which we do not have here.

1    bringing those claims to this Court is not an "available" remedy. Second, and more pointedly, in

2    foreclosing this exact argument the Eastern District of Virginia, when faced with much more

3    unambiguous contractual language, stated, "parties cannot contract for judicial review in direct

4    contravention to the Telecommunications Act." *Bell Atl. Va., Inc. v. Worldcom Techs. of Va.*, 70

5    F.Supp.2d 620, 626 (E.D. Va. 1999); *accord AT&T Commc'ns of Ohio v. Ohio Bell Tel. Co.*, 29

6    F.Supp.2d 855, 856-57 (S.D. Ohio 1998).[6]  Accordingly, Plaintiff cannot seek refuge in the

7    parties' dispute resolution clause.

8        C.    The Court Will Not Exercise Supplemental Jurisdiction

9        Finally, as alluded to above, the thrust of Plaintiff's argument is that this Court's

10   jurisdiction over Plaintiff's third cause of action for failure to pay federal tariff rates permits the

11   exercise of supplemental jurisdiction over its breach of contract claims. Plaintiff is incorrect. As

12   already discussed, bringing to the federal courts, in the first instance, claims for breach of an

13   interconnection agreement would undermine the role Congress has prescribed for state

14   commissions.  For those same reasons, Plaintiff's attempt to "back-door" it's claims as

15   supplemental must fail as well.[7]

16       To be clear, the Court recognizes that judicial efficiency could best be served by hearing

17   all of Plaintiff's claims at the same time. Therefore, it is at this point where we pick up where

18   *Core* left off and find that a stay of Plaintiff's federal tariff claim would be appropriate pending

19   refiling, if any, of Plaintiff's first and second causes of action once CPUC has made its

20   determination. And because we find, and both parties agree, that Plaintiff's fourth cause of action

---

22       [6]  The relevant contractual language in *Bell Atl Va., Inc* stated, "[a]ny dispute between the Parties

23   regarding the *interpretation or enforcement* of this Agreement or any of its terms shall be addressed by good faith
     negotiation between the Parties, in the first instance   Should such negotiations fail to resolve the dispute in a

24   reasonable time, *either Party may initiate an appropriate action in any regulatory or judicial forum of competent
     jurisdiction.*" *Bell Atl. Va., Inc.*, 70 F.Supp.2d at 626 (emphasis in original).

25       [7]  In arguing to the contrary, Plaintiff relies on *Mich Bell Tel. Co  v  MCIMetro Access Transmission

26   Servs., Inc.*, 323 F.3d 348, 355-56 (6th Cir. 2003), *Connect Comms  Corp. v. Sw Bell Tel* , 467 F 3d 703, 707-09
     (8th Cir. 2006), and *Sw. Bell Tel. Co. v. Brooks Fiber Comms. of Okla., Inc.*, 235 F.3d 493, 498 (10th Cir. 2000).

27   Plaintiff drastically misstates the conclusions reached in these cases regarding supplemental jurisdiction.  These
     cases do not, as Plaintiff contends, stand for the proposition that federal courts may hear, pursuant to § 1367, claims

28   for breaches of interconnection agreements that were not first presented to the appropriate state commission.
     Rather, these cases merely asserted that federal courts may invoke supplemental jurisdiction over a state
     commission's state law determinations.

for damages in quasi-contract cannot be presented before the CPUC, and to the extent that it is directly intertwined with Plaintiff's other breach of contract claims, that claim is dismissed without prejudice.

IV.    CONCLUSION

For the forgoing reasons the Court finds that the Act makes only a limited grant of jurisdiction to the federal district courts to review only those disputes that have been first presented to the appropriate state utilities commission. We find especially persuasive the reasoning adopted by the Third and Eleventh Circuits and conclude that the statutory scheme set forth in the Act makes the state regulatory commissions the initial decision-makers in disputes involving interconnection agreements. Accordingly, Plaintiff's first and second causes of action are hereby DISMISSED without prejudice, pending any refiling once CPUC has made its determinations. Plaintiff's third cause of action is hereby STAYED and Plaintiff's fourth cause of action is DISMISSED without prejudice.[8]

IT IS SO ORDERED.

DATE:        October 1, 2007

OTIS D. WRIGHT II
UNITED STATES DISTRICT JUDGE

---

[8] Though the Court appreciates Plaintiff's concerns, dismissal at this stage in the proceedings will not be exceptionally prejudicial. Undoubtedly, all discovery already completed will be invaluable in proceedings before the CPUC and to any future litigation in this Court.

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, a copy of the foregoing Movants' Joint Reply To Plaintiff's And Verizon New England Inc.'s Oppositions To Motions To Dismiss With Respect To Jurisdiction was filed electronically.  Notice of this filing will be sent by e-mail to the following by operation of the Court's electronic filing system, who may access this filing through the Court's system:

John Michael Teitler, Esq.
Nicholas W. Lobethal, Esq.
Teitler & Teitler
1114 Avenue of the Americas
New York, New York 10036
*Attorneys for One Communications Corp.*

Mark S. Resnick, Esq.
The Resnick Law Group, P.C.
Old City Hall
45 School Street
Boston, Massachusetts 02108
*Attorneys for One Communications Corp.*

Scott H. Angstreich, Esq.
Joseph Solomon Hall, Esq.
William David Sarratt, Esq.
Kellogg, Huber, Hansen, Todd & Evans PLLC
1615 M Street, NW, Suite 400
Washington, DC 20036
*Attorneys for Verizon New England Inc.*

Nicholas J. Panarella, Esq.
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
*Attorneys for Mellon Investor Services LLC*

Jayne S. Robinson (JSR 5981)